1   David M. Arbogast (SBN 167571)
    David@SpiroMoss.com
2   Ira Spiro (SBN 67641)
    Ira@SpiroMoss.com
3   **SPIRO MOSS BARNESS LLP**
    11377 W. Olympic Boulevard, Fifth Floor
4   Los Angeles, CA 90064-1683
    Phone: (310) 235-2468; Fax: (310) 235-2456
5
6   Paul R. Kiesel, Esq. (SBN 119854)
    kiesel@kbla.com
    Patrick DeBlase, Esq. (SBN 167138)
7   deblase@kbla.com
    Michael C. Eyerly, Esq. (SBN 178693)
8   eyerly@kbla.com
    **KIESEL BOUCHER LARSON LLP**
9   8648 Wilshire Boulevard
    Beverly Hills, California 90211
10  Phone: (310) 854-4444; Fax: (310) 854-0812

    Jonathan Shub (SBN 237708)
    jshub@seegerweiss.com
    **SEEGER WEISS LLP**
    1515 Market Street, Suite 1380
    Philadelphia, PA 19107
    Phone: (215) 564-2300; Fax (215) 851-8029

    Jeffrey K. Berns, Esq. (SBN 131351)
    jberns@jeffbernslaw.com
    **LAW OFFICES OF JEFFREY K. BERNS**
    19510 Ventura Boulevard, Suite 200
    Tarzana, California 91356
    Phone: (818) 961-2000; Fax: (818) 867-4820

11
12   Attorneys for Plaintiffs and all others Similarly Situated

13

14                **UNITED STATES DISTRICT COURT**

15   **NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

16   BRIAN O'DONNELL, MICHAEL VAN          )   **CASE NO. C-07-04500 RMW**
     BELLEGHEM, PATRICIA VAN               )
17                                         )   **FIRST AMENDED CLASS ACTION**
     BELLEGHEM, individually and on behalf of all )   **COMPLAINT FOR:**
18   others similarly situated,            )
                                           )
19              Plaintiffs,                )   **(1)  Violations of the Truth in Lending Act, 15**
                                           )        **U.S.C. §1601, *et seq*;**
20                                         )
         v.                               )   **(2)  Violation of Bus. & Prof. Code §17200, *et***
21                                         )        ***seq*. - "Unlawful" Business Practices**
                                           )        **(TILA);**
22   BANK OF AMERICA CORPORATION,          )
     BANK OF AMERICA, NATIONAL             )   **(3)  Violation of Bus. & Prof. Code §17200, *et***
23   ASSOCIATION a.k.a. BANK OF AMERICA,   )        ***seq*. – "Unfair" and "Fraudulent" Business**
     N.A., and DOES 1 through 10 inclusive, )       **Practices;**
24                                         )
              Defendants.                  )   **(4)  Breach of Contract;**
25                                         )
                                           )   **(5)  Breach of the Covenant of Good Faith and**
26                                         )        **Fair Dealing; and**
                                           )
27                                         )   **(6)  Violation of Bus. & Prof. Code  §17200, *et***
     _____        )        ***seq*. – "Unlawful" Business Practices (Fin.**
                                           )        **Code § 22302).**
28
                                               **<u>JURY TRIAL DEMANDED</u>**

1    Plaintiffs, BRIAN O'DONNELL, MICHAEL VAN BELLEGHEM, PATRICIA VAN

2    BELLEGHEM ("Plaintiffs"), individually and on behalf of all others similarly situated allege as

3    follows:

4

5                                              **I.**

6                                      **INTRODUCTION**

7        1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et*

8    *seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other

9    statutory and common law in effect.  Plaintiffs BRIAN O'DONNELL,  MICHAEL VAN

10   BELLEGHEM, and PATRICIA VAN  BELLEGHEM ("Plaintiffs"), individually, and on behalf of all

11   others similarly situated, bring this action against BANK OF AMERICA CORPORATION, BANK OF

12   AMERICA, N.A., and DOES 1-10 (collectively "Defendants"), based, in part, on Defendants' failure to

13   clearly and conspicuously disclose to Plaintiffs and the Class Members, in Defendants Option

14   Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements,

15   accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that

16   payments on the notes at the teaser rate will result in negative amortization and that the principal

17   balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted

18   and does not reflect the actual interest that Plaintiffs and Class members would be paying on the

19   Note(s).

20

21                                             **II.**

22                                     **THE PARTIES**

23       2.    Plaintiff, BRIAN O'DONNELL ("O'DONNELL") is, and at all times relevant to this

24   Complaint, was an individual residing in San Jose, California.  On or about June 8, 2005, Plaintiff

25   refinanced his existing home loan and entered into an Option ARM loan agreement with Defendants.

26   The Option ARM loan was secured by Plaintiff's primary residence.  Attached hereto as <u>Exhibit 1</u> is a

27   true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action.

28   / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1       3.    Plaintiffs, MICHAEL VAN BELLEGHEM and PATRICIA VAN BELLEGHEM

2 ("BELLEGHEM") are, and at all times relevant to this Complaint were, individuals residing in Arroyo

3 Grande, California.  On or about May 25, 2006, Plaintiffs refinanced their existing home loan and

4 entered into an Option ARM loan agreement with Defendants.  The Option ARM loan was secured by

5 Plaintiffs' primary residence.  Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Note and

6 Truth and Lending Disclosure Form pertinent to this action.

7       4.    Defendant BANK OF AMERICA CORPORATION is a Delaware corporation licensed

8 to do, and is doing business in California.  At all relevant times hereto, BANK OF AMERICA

9 CORPORATION, through its wholly owned subsidiary BANK OF AMERICA, NATIONAL

10 ASSOCIATION a.k.a BANK OF AMERICA, N.A., was and is engaged in the business of promoting,

11 marketing, distributing and selling the Option Arm loans that are the subject of this Complaint.   BANK

12 OF AMERICA CORPORATION transacts business in Santa Clara County, California and at all relevant

13 times promoted, marketed, distributed, and sold Option Arm loans throughout the United States,

14 including Santa Clara County, California.  BANK OF AMERICA CORPORATION has significant

15 contacts with Santa Clara County, California, and the activities complained of herein occurred, in whole

16 or in part, in Santa Clara County, California.

17       5.    Defendant, BANK OF AMERICA, NATIONAL ASSOCIATION a.k.a. BANK OF

18 AMERICA, N.A. ("BANK OF AMERICA, N.A."), is a United States corporation licensed to do, and is

19 doing business in California.   At all relevant times hereto BANK OF AMERICA, N.A was and is

20 engaged in the business of promoting, marketing, distributing and selling the Option Arm loans that are

21 the subject of this Complaint.   BANK OF AMERICA, N.A. transacts business in Santa Clara County,

22 California and at all relevant times promoted, marketed, distributed, and sold Option Arm loans

23 throughout the United States, including Santa Clara County, California.  BANK OF AMERICA, N.A.

24 has significant contacts with Santa Clara County, California, and the activities complained of herein

25 occurred, in whole or in part, in Santa Clara County, California.

26       6.    Defendants, BANK OF AMERICA CORPORATION and BANK OF AMERICA, N.A.,

27 shall hereinafter be referred to collectively as "BANK OF AMERICA."

28 / / /

7. Defendants, BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., and DOES 1 through 10, shall hereinafter be referred to collectively as "Defendants."

8. At all times mentioned herein, Defendants, and each of them, were engaged in the business of promoting, marketing, distributing, and selling the Option Arm loans that are the subject of this Complaint, throughout the United States, including Santa Clara County, California.

9. Plaintiffs are informed and believe, and thereon allege that each and all of the aforementioned Defendants are responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by the conduct of Defendants.

10. Plaintiffs are informed and believe, and thereon allege, that at all times material hereto and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

11. At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

12. Plaintiffs are informed and believe, and thereon allege, that Defendants, BANK OF AMERICA and DOES 1-10, and each of them, are, and at all material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted business in California. Defendants, and each of them, are corporations or other business entities, form unknown, have, and are doing business in this judicial district.

13. Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 10, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters,

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1  CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are

2  assignees to the loans which are the subject of this action.  Plaintiffs will seek leave of Court to replace

3  the fictitious names of these entities with their true names when they are discovered by Plaintiffs herein.

4        14.    The true names and capacities, whether individual, corporate, associate or otherwise, of

5  Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and

6  Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs allege, on information and

7  belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of

8  Court to amend this Complaint when the names of said Doe defendants have been ascertained.

9        15.    Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein,

10  Defendants, and each of them, including without limitation those Defendants herein sued as DOES,

11  were acting in concert or participation with each other, or were joint participants and collaborators in the

12  acts complained of, and were the agents or employees of the others in doing the acts complained of

13  herein, each and all of them acting within the course and scope of said agency and/or employment by the

14  others, each and all of them acting in concert one with the other and all together.

15

16  **III.**

17  **JURISDICTION AND VENUE**

18        16.    This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28

19  U.S.C. § 1331.

20        17.    This Court has personal jurisdiction over the parties in this action by the fact that

21  Defendants are either individuals who reside in this District within California or are corporations duly

22  licenced to do business in California.

23        18.    Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because

24  a substantial part of the events and omissions giving rise to the claims occurred in this district, and

25  because there is personal jurisdiction in this district over the named Defendant because it regularly

26  conducts business in this judicial district.

27  / / /

28  / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1

#### IV.

2

#### FACTS COMMON TO ALL CAUSES OF ACTION

3       19.     BANK OF AMERICA is one of the world's largest financial institutions, serving

4   individual consumers, small and middle market businesses and large corporations with a full range of

5   banking, investing, asset management and other financial and risk-management products and services.

6       20.     The instant action arises out of residential mortgage loan transactions in which

7   Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs and

8   the Class members, in writing, as required by law.

9       21.     This action also concerns Defendants' unlawful, fraudulent and unfair business acts or

10  practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at

11  maximizing the number of consumers who would accept this type of loan in order to maximize

12  Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to

13  lose their homes through foreclosure.

14      22.     Plaintiffs, along with thousands of other similarly situated consumers, were sold an

15  Option ARM home loan by Defendants.  The Option ARM loan sold to  is a deceptively devised

16  financial product.  The loan has a variable rate feature with payment caps.  The product was sold based

17  on the promise of a low, fixed interest rate, when in fact  were charged a different, much greater interest

18  rate than promised.  Further, Defendants disguised from  the fact that Defendants' Option ARM loan

19  was designed to, and did, cause negative amortization to occur.  Further still, once lured into these loans,

20  consumers cannot easily extricate themselves from these loans.  For a substantial number of Defendants'

21  Option ARM loans, Defendants included a stiff and onerous prepayment penalty making it extremely

22  difficult to extricate themselves from the loans.

23      23.     The Option ARM loan Defendants sold to Plaintiffs violates the Truth In Lending Act

24  (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to

25  borrowers concerning the terms and conditions of their home loans.  Defendants failed to make these

26  disclosures in connection with the Option ARM loan sold to .

27      24.     At all times relevant, Defendants marketed their Option ARM loan product to consumers,

28  including Plaintiffs, in a false or deceptive manner.  Defendants marketed and advertised to the general

1   public through brochures, flyers and other substantially identical marketing material, a loan which

2   appeared to have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative

3   amortization.  Defendants used this "teaser" rate to lure Plaintiffs into purchasing Defendants' Option

4   ARM loan product.  However, the low fixed rate was illusory, a false promise.  Plaintiffs and others

5   similarly situated did not receive the benefit of the low rate promised to them.  Once signed on to

6   Defendants' loan, the interest rate applied to Plaintiffs' and Class members' loans were immediately and

7   significantly increased.

8           25.    Plaintiffs and others similarly situated were consumers who applied for a mortgage loan

9   through Defendants.  During the loan application process, in each case, Defendants promoted,

10  advertised, and informed Plaintiffs and the Class members that in accepting these loan terms, Plaintiffs

11  would be able to lower their mortgage payment and save money.  Defendants initiated this scheme in

12  order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

13          26.    Based on the Defendants' representations, and the conduct alleged herein, Plaintiffs and

14  Class members agreed to finance their primary residence through Defendants' Option ARM loan.

15  Plaintiffs and Class members were told they were being sold a home loan with a low interest rate of

16  between 1% and 3.0% interest rate (the "teaser" rate), and that the interest rate was fixed for the first

17  three (3) to five (5) years of the loan.  Defendants also informed Plaintiffs, and Plaintiffs were lead to

18  believe, that if they made payments based on the promised low interest rate, which were the payments

19  reflected in the written payment schedule provided to them by Defendants, the loan was a no negative

20  amortization home loan.  Plaintiffs' payments were to be applied to their principal loan balances as well

21  as to interest.

22          27.    After, the purported three (3) - five (5) year fixed interest period, Plaintiffs and the Class

23  members reasonably believed, based on the representations contained in the documents Defendant

24  provided to Plaintiffs and the Class members, that they would be able to refinance their loan and get a

25  new loan before their scheduled payments increased.  However, the payment schedule provided by

26  Defendants failed to disclose and by omission failed to inform these consumers that due to the negative

27  amortization that was purposefully built into these loans, Plaintiffs and the Class members would be

28  unable to refinance their homes as their would be little or no equity left to refinance.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    28.    Plaintiffs believed these facts to be true because that is what the Defendants wanted

2    consumers to believe.  Defendants aggressively marketed their product as a fixed, low interest home

3    loan.  Defendants knew that if marketed in such a manner, their Option ARM loan product would be a

4    hugely popular and profitable product for them.  Defendants also knew, however, that they were

5    marketing their product in a false and deceptive manner.  While Defendants trumpeted their low, fixed

6    rate loans to the public, Defendants knew their promise of low, fixed interest was a mirage.

7    29.    In fact, Defendants' Option ARM loan possessed a low, fixed interest **payment** but not a

8    low, fixed interest rate.  Unbeknownst to Plaintiffs and Class members, the actual interest rate they were

9    charged on their loans was not fixed (and was in fact considerably higher than going market rates.)

10   And, after purchasing Defendants' Option ARM loan product, Plaintiffs and Class members did not

11   actually receive the benefit of the low, teaser rate at all in some cases, or at best, received that rate for

12   only a single month.  Immediately, thereafter, Defendants in every instance and for every loan, increased

13   the interest rate they charged consumers.  The now-increased interest charges incurred by Plaintiffs and

14   Class members over and above the fixed interest payment rate were added to the principal balance on

15   their home loans in ever increasing increments, substantially reducing the equity in these borrowers'

16   homes.

17   30.    In stark contrast to this reality, Defendants, through the standardized loan contracts they

18   created and supplied to Plaintiffs and the Class, Defendants stated that negative amortization was only a

19   possibility and would occur only if the payments were not sufficient.  Defendants concealed and failed

20   to disclose the fact that the loan as presented and designed, in fact, *guaranteed* negative amortization.

21   Defendants failed to disclose and omitted the objectively material fact that negative amortization would

22   occur if the consumer followed the payment schedule set forth by Defendants in the loan documents.

23   This information was objectively material and necessary for consumers to make an informed decision

24   because this would have revealed that the loan's principal balance would increase if the payment

25   schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the

26   prepayment penalty expired and/or by the time the interest and payment rates re-set.   In this respect,

27   Defendants utterly failed to place any warning on the Truth and Lending Disclosure Form about

28   negative amortization.

31.     At all times relevant, once Plaintiffs and the Class members accepted Defendants' Option ARM loan, they had no viable option by which to extricate themselves because a substantial majority of these Option ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

32.     The Option ARM loans sold by Defendants all have the following uniform characteristics:

(a)     There is an initial low interest rate or "teaser" rate that was used to entice the Plaintiffs into entering into the loan.  The rate offered was typically 1%-3%;

(b)     The loan has with it a corresponding low payment schedule.  The marketing of the loan with the above teaser was intended to misleadingly portray to consumers that the low payments for the first three (3) to five (5) years were a direct result of the low interest rate being offered;

(c)     The initial payments in the required disclosures were equal to the low interest rate being offered.  The purpose was to assure that if someone were to calculate what the payment would be at the low offered interest rate, it corresponded to the payment schedule.  This portrayal was intended to further mislead consumers into believing that the payments were enough to cover all principal and interest;

(d)     The payment has a capped annual increase on the payment amount; and

(e)     And for a substantial number of the loans, the loans included a prepayment penalty preventing consumers from securing a new loan for a period of up to three (3) years.

33.     Defendants uniformly failed to disclose and by omission failed inform consumers, including Plaintiffs and the Class members, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty (30) days.  Thereafter, the true interest charged on the loans was significantly higher than the promised, advertised rate.

34.     Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiffs and the Class members, that the payments set forth in Defendants' schedule of

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1   payments were insufficient to cover the actual charges and that this was, in fact, a loan that would cause

2   the Plaintiffs and Class members to lose the equity they have in their home.

3        35.    Defendants uniformly failed to disclose and by omission failed to inform consumers,

4   including Plaintiffs and the Class members, that when the principal balance increased to a certain level,

5   they would no longer have the option of making the fixed interest payment amount.

6        36.    Disclosing whether a payment will result in negative amortization is of critical

7   importance to consumers.  If the disclosed payment rate is insufficient to pay both principle and interest,

8   one of the consequences of negative amortization is a loss of equity.  Defendants are and at all times

9   relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a

10  payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely

11  important material information.

12       37.    At all times relevant, Defendants, and each of them, knew or should have known, or were

13  reckless in not knowing, that: (i) the payment rate provided to Plaintiffs and the Class members was

14  insufficient to pay both interest and principle; (ii) that negative amortization was substantially certain to

15  occur if Plaintiffs and the Class members made payments according to the payment schedule provided

16  by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class members residence

17  was substantially certain to occur if Plaintiffs and the Class members made payments according to the

18  payment schedule provided by Defendants.

19       38.    In spite of its knowledge, Defendants marketed its ARM loans as product that would

20  provide Plaintiffs and the Class members with a low interest rate for the first three (3) to five (5) years

21  of the loan, and at all times relevant, failed to disclose and/or concealed by making partial

22  representations of material facts when Defendants had exclusive knowledge of material facts that

23  negative amortization was certain to occur.  This concealed and omitted information was not known to

24  Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or

25  actively concealed by making such statements and partial, misleading representations to Plaintiffs and

26  all others similarly situated.  Because the ARM loans did not provide a low interest rate for the first

27  three (3) to five (5) years of the Note and the payment rate disclosed by Defendants was insufficient to

28  pay both principle and interest, negative amortization occurred.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    39.    The true facts about Defendants' ARM loans is that they do not provide the low interest

2    rate promised, and are certain to result in negative amortization.

3    40.    Disclosure of a payment rate that is sufficient to pay both principle and interest on the

4    loans is of critical importance consumers.  If the disclosed payment rate is insufficient to pay both

5    principle and interest, one of the consequences is that negative amortization or loss of equity will occur.

6    Defendants are and at all times relevant hereto have been aware that the ability of the disclosed payment

7    rate to pay both principle and interest so as to avoid negative amortization is one of the most important

8    terms of a loan.

9    41.    To this day, Defendants continue to conceal material information from consumers, and

10    the public, that: (i) the payment rate provided to Plaintiffs and Class members is and was insufficient to

11    pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiffs and the

12    Class members will suffer negative amortization; and (ii) loss of equity and/or possession of the

13    property is substantially certain to occur if the disclosed payment schedule is followed.  Nevertheless,

14    Defendants have refused to clearly and conspicuously disclose to Plaintiffs and the Class members the

15    existence of this important material information and the injury caused thereby, including but not limited

16    to the loss of equity.

17    42.    In the end, the harm caused by Defendants failures to disclose and omissions grossly

18    outweighs any benefit that could be attributed to them.

19    43.    Knowing the truth and motivated by profit and market share, Defendants have knowingly

20    and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others

21    similarly situated.

22    44.    The ARM loans have resulted and will continue to result in significant loss and damage

23    to the Class Members, including but not limited to the loss of equity these consumers have or had in

24    their homes.

25    45.    The facts which Defendants misrepresented and concealed, as alleged in the preceding

26    paragraphs, were material to the decisions about whether to purchase the ARM loans in that Plaintiffs

27    and others similarly situated would not have purchased these loans but for Defendants' unlawful, unfair,

28    fraudulent and/or deceptive acts and/or practices as alleged herein.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    46.    Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive

2  marketing scheme to induce consumers to purchase their ARM loans.

3    47.    Defendants unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices

4  were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly

5  situated would, in fact, receive a home loan that would actually provide the low interest and payment

6  rate, as promised, for the first three (3) to five (5) years of the loan that is sufficient to pay both principle

7  and interest.

8    48.    Upon information and belief and at all times relevant, Defendants possessed full

9  knowledge and information concerning the above facts about the ARM loans, and otherwise marketed

10  and sold these ARM loans throughout the United States, including the State of California.

11

12                                **V.**

13                **CLASS ACTION ALLEGATIONS**

14    49.    Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly

15  situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b),  and the case

16  law thereunder.  The classes Plaintiffs seek to represent are defined as follows:

17

18        **The California Class**:  All individuals who, within the four year period
         preceding the filing of Plaintiffs' Complaint through the date notice is
19        mailed to the Class, received an Option ARM loan through Defendants on
         their primary residence located in the State of California.  Excluded from
20        the California Class are Defendants' employees, officers, directors, agents,
         representatives, and their family members; and

21        **The National Class**: All individuals in the United States of America who,
         within the four year period preceding the filing of Plaintiffs' complaint
22        through the date notice is mailed to the Class, received an Option ARM
         loan through Defendants on their primary residence located in the United
23        States of America.  Excluded from the National Class are Defendants'
         employees, officers, directors, agents, representatives, and their family
24        members.

25        An appropriate sub-Class exists for the following Class Members:

26        All individuals in the United States of America who, within the three year
         period preceding the filing of Plaintiffs' complaint through the date notice
27        is mailed to the Class, received an Option ARM loan through Defendants
         on their primary residence located in the United States of America.
28        Excluded from the National sub-Class are Defendants' employees,

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

officers, directors, agents, representatives, and their family members.

Plaintiffs reserve the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

50.    <u>Numerosity</u>:  The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that the entire Class or Classes consist of approximately tens of thousands of members.

51.    <u>Commonality</u>: Common questions of law or fact are shared by the Class members.  This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following:

(1)    Whether Defendants' acts and practices violate the Truth in Lending Act;

(2)    Whether Defendants' conduct violated 12 C.F.R. § 226.17;

(3)    Whether Defendants' conduct violated 12 C.F.R. § 226.19;

(4)    Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiffs and the Class members before and during the loan application process;

(5)    Whether Defendants, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiffs and the Class members;

(6)    Whether Defendants, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under TILA;

(7)    Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8)    Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

(9)    Whether Defendants' failure to apply Plaintiffs' and the Class members'
payments to principal as promised in the form Notes constitutes a breach of
contract, including a breach of the covenant of good faith and fair dealing;

(10)   Whether Defendants' conduct in immediately raising the interest rate on
consumers' loans so that no payments were made to the principal balance
constitutes breach of the covenant of good faith and fair dealing;

(11)   Whether Defendants' marketing plan and scheme misleadingly portrayed or
implied that these loans were fixed rate loans, when Defendants knew that only
the periodic payments were fixed (for a time) but that interest rates were not, in
fact, "fixed;"

(12)   Whether the terms and conditions of Defendants' Option ARM home loan are
unconscionable;

(13)   Whether Plaintiffs and the Class are entitled to damages;

(14)   Whether Plaintiffs and the Class members are entitled to punitive damages; and

(15)   Whether Plaintiffs and the Class members are entitled to rescission.

52.    Typicality:  Plaintiffs' claims are typical of the claims of the Class members.  Plaintiffs and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the other Class members are based on the same legal theories.

53.    Adequacy:  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other members of the Class Plaintiffs seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend on prosecuting this action vigorously.   The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

54.    Ascertainable Class:  The proposed Classes are ascertainable in that the members can be identified and located using information contained in Defendants' mortgage lending records.

55.    This case is brought and can be maintained as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3):

(a)    Risk of Inconsistent Judgments:  The unlawful acts and practices of Defendants, as

1  alleged herein, constitute a course of conduct common to Plaintiffs and each Class

2  member.  Prosecution of separate actions by individual Class members would create a

3  risk of inconsistent or varying adjudications which would establish incompatible

4  standards of conduct for Defendants and/or substantially impair or impede the ability of

5  individual Class members to protect their interests;

6  (b)  <u>Injunctive and/or Declaratory Relief to the Class is Appropriate</u>:  Defendants, and each of

7  them, have acted or refused to act on grounds generally applicable to the Class, thereby

8  making final injunctive relief or corresponding declaratory relief with respect to the Class

9  as a whole appropriate; and

10  (c)  <u>Predominant Questions of Law or Fact</u>:  Questions of law or fact common to the Class

11  members, including those identified above, predominate over questions affecting only

12  individual Class members (if any), and a class action is superior to other available

13  methods for the fair and efficient adjudication of the controversy.  Class action treatment

14  will allow a large number of similarly situated consumers to prosecute their common

15  claims in a single forum, simultaneously, efficiently, and without the unnecessary

16  duplication of effort and expense that numerous individual actions would require.

17  Further, an important public interest will be served by addressing the matter as a class

18  action.  The cost to the court system of adjudicating each such individual lawsuit would

19  be substantial.

20

21  **VI.**

22  **<u>FIRST CAUSE OF ACTION</u>**

23  **(Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*,**

24  **(Against All Defendants)**

25  56.  Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

26  57.  15 U.S.C.A. §1601, *et seq*., is the Federal Truth in Lending Act ('TILA').  The Federal

27  Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12

28  C.F.R. §226 ) and its Official Staff Commentary.  Compliance by lenders with Regulation Z became

-15-

1    mandatory October 1, 1982.  Likewise, Official Staff Commentary issued by the Federal Reserve Board
2    is also binding on all lenders.
3        58.    The purpose of TILA is to protect consumers.  This is stated in 12 C.F.R. § 226.1, which
4    reads:
5            **§226.1 Authority, purpose, coverage, organization, enforcement and**
6            **liability. . .**
7            (b)    Purpose.  The purpose of this regulation is to promote the informed
8            use of consumer credit by requiring disclosures about its terms and costs.
9            The regulation also gives consumers the right to cancel certain credit
10           transactions that involve a lien on a consumer's principal dwelling . . .
11       59.    Reg. Z also mandates very specific disclosure requirements regarding home loans with
12   which lenders, including Defendants, must comply:
13           **§ 226.17. General disclosure requirements.**
14           (a)  Form of disclosures. (1) The creditor shall make the disclosures
15           required by this subpart clearly and conspicuously in writing, in a form
16           that the consumer may keep. The disclosures shall be grouped together,
17           shall be segregated from everything else, and shall not contain any
18           information not directly related to the disclosures required under §
19           226.18.
20       60.    The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the
21   borrowers will be able to compare more readily the various credit terms available to them and avoid the
22   uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing
23   practices.
24       61.    Defendants' Option ARM loan violates TILA because Defendants failed to comply with
25   the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the
26   Federal Reserve Board.  Defendants failed in a number of ways to clearly, conspicuously and/or
27   accurately disclose the terms of the Option ARM loan to Plaintiffs as Defendants were required to do
28   under TILA.  These violations are apparent on the face of the TILA Disclosure Forms.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

62.    The TILA violations committed by Defendants are more specifically detailed as follows:

**A.    Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate Violates Truth in Lending Laws**

63.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the interest rate in a clear and conspicuous manner.  Further, a misleading disclosure is as much a violation of TILA as a failure to disclose at all.  Defendants failed to meet the disclosure mandates required of them concerning the interest rate Defendants actually applied to Plaintiffs' and Class members' loans, as well as the interest actually charged to Plaintiffs and the Class members.

64.    Defendants' disclosure in the Promissory Note concerning the interest rate is, at best, unclear and inconspicuous.  At worst, it is intentionally deceptive.  In either instance, it is certainly different than the interest rate set forth by Defendants in the TILA Disclosure Form.  The interest rate information set forth by Defendants in the Note conflicts with the interest rate information set forth by Defendants in the TILA Disclosure Form.

65.    The interest rate set forth in the Note is the teaser rate that Defendants, in fact, apply to the loan for a single month.  However, Defendants do not make clear in the Note or anywhere else that this low promised rate (the same rate upon which Defendants base the written payment schedule provided to Plaintiff) is only offered for the first thirty (30) days of the loan.  Defendants employ the most convoluted, confusing and circuitous methodology in describing the interest rate.  In one part of the Note, Defendants state that the promised low interest rate is the rate until the "change date."  A description of the change date is found in another part of the Note.  The convoluted and disjointed method employed by which Defendants provide this information makes it extremely difficult, if not impossible for anyone to determine that, in fact, that the change date corresponds to the very first monthly payment Plaintiffs and the Class members made on their loans.

66.    The convoluted language used by Defendants to disclose the interest rate on Plaintiffs' and the Class members' loans is not clear and conspicuous.  Rather, the disclosures used by Defendants were purposefully unclear and meant to mislead and confuse Plaintiffs and the Class members.  In particular, it is virtually impossible to discern when Plaintiffs and the Class members would receive the low interest rate they were promised, if, in fact, it can be determined at all.  And, the truth is that

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1  Plaintiffs and the Class members *never* received the low interest rate, or in some cases received it for

2  only thirty days.  Defendants promise of a low interest rate is and was wholly illusory and the deception,

3  as alleged herein, was uniformly practiced on Plaintiffs and Class members by Defendants to facilitate

4  sales of their loans to consumers.

5      67.    The Note also sets forth the amount of Plaintiffs' and Class members' initial monthly

6  payments.  That amount is equal to what the payment would be if the low interest rate promised to

7  Plaintiffs by Defendants was true and was being applied to the principal balance on the loans.  This is a

8  further deception committed by Defendants, because the real interest rate charged on the loans by

9  Defendants is much higher than the low interest rate promised to Plaintiffs and Class members.  Thus,

10  the payment amount provided by Defendants was intended to and did deceive consumers into falsely

11  believing they would, in fact, receive the teaser interest rate promised to them.

12      68.    The TILA Disclosure Form is also confusing and deceptive for much the same reason.  It

13  shows the scheduled payments for the first three (3) to five (5) years of the loan as being based on the

14  low "teaser" rate Plaintiffs and Class members were promised.  In truth, however, this payment schedule

15  has no real relation to the interest rate Defendants actually charged Plaintiffs and the Class members on

16  their loans.

17      69.    Defendants' failure to clearly, conspicuously and accurately disclose the actual interest

18  rate applied to Plaintiffs' and Class members' loans, the Notes expressly state and/or implies that

19  Plaintiffs' and the Class members' payments will pay off principal and interest on the loan.  Based on

20  the payment schedule provided by Defendants in the Note and TILA Disclosure Form, Plaintiffs and the

21  Class members were led to believe that they would be paying off both principal and interest on their

22  loans by making payments according to the payment schedule.  The contractual language in the Note

23  only makes sense, and can only be true, if the promised low interest rate actually applied to Plaintiffs'

24  and the Class members loans was, in fact, the "teaser" rate promised by Defendants.  Thus, Plaintiffs

25  and the Class members reasonably believed that the low rate promised to them would be applied to their

26  loans.  However, the true fact is that the payment schedule provided by Defendants did not pay any

27  principal on the loan at all.  The payment schedule provided by Defendants only covered a portion of the

28  interest Defendants charged Plaintiffs and the Class members for these loans.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

70.     Taken separately and in totality, all of the unclear and contradictory information given to, and representations made by Defendants, to Plaintiffs and the Class members, violated TILA in that it failed to provide the clear and conspicuous disclosures as required under the Act.

**B.     Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

71.     12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19.  Certain residential mortgage and variable-rate transactions.** . . .
>
> (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . .
>
> (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.* (Emphasis added.)

72.     These required disclosures must be made in the TILA Disclosure Form with the other disclosures.  The TILA Disclosure Form must state whether the loan *is* a negative amortizing loan and whether unpaid interest *is* being added to principal.

73.     In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan and it had payment caps, that the disclosure required a definitive statement about negative amortization:

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (such as **negative amortization occurs** and that the **principal balance will increase**)…" (Found at C.F.R. § 226.19)

74.     At all times relevant, statutory and common law in effect make it unlawful for a lender, such as Defendants, to fail to comply the Federal Reserve Board's Official Staff Commentary as well as Regulation Z and TILA.

75.     Defendants sold Plaintiffs and the Class members an Option ARM loan which has a variable rate feature with payment caps. Defendants failed to include any reference on the TILA Disclosure Form that there was negative amortization. There is nothing that would indicate to anyone that the loan schedule had negative amortization. The payment schedule makes no reference to negative amortization and makes it appear that the payments cover both principal and interest.

76.     In fact, the only place where Defendants even inferentially reference negative amortization is in the Note. However, they mention it in such a way as to make a reasonable person believe that negative amortization is only a possibility, rather than a certainty. And, these loans are, in fact, designed in such a manner so as to make negative amortization an absolute certainty.

77.     This attempt at a disclosure did not actually serve to alert or inform the borrowers of anything, much less clearly and conspicuously disclose that the payment schedule provided by Defendants absolutely would not pay both principal and interest, and therefore would guarantee that negative amortization was to occur on these loans. Rather, Defendants made it appear that as long as the payment schedule provided by Defendants was followed, there would be no negative amortization.

78.     So, even where any language is found describing negative amortization, the language is misleading and deceptive. In fact, Defendants' Option ARM loan was designed in such a way as to guarantee negative amortization. TILA demands more than a statement that the payment <u>could</u> be less

1    when Defendants were well aware that the payment is less, and would always be less, than the full

2    interest and principal.

3

4    **C.    Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest**

5         **Rate is Discounted Violates Truth in Lending Laws**

6        79.    As previously stated, the informed use of credit means being able to make decisions, as

7    well as being able to plan an individual's finances.  Every month consumers look at their income and

8    budget where their funds must be paid.  The biggest investment in one's life is generally that person's

9    home.  In fact, it is often referred to as "the American Dream" to own a home.

10       80.    Variable rate loans are based on a "margin" and an "index."  The index is often the Prime

11   Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over that rate, basically

12   it is the lender's profit on the loan.

13       81.    TILA and Regulation Z require disclosures to be clear and conspicuous so people

14   understand what their obligations are.  In particular, when the payment is not based on that index and

15   margin a separate disclosure is required.  Further, the disclosure must inform the borrower that the

16   payment they are making is not based on what the index and margin really should be in order to avoid

17   negative amortization.  The disclosure must also inform that interest rate and payment may go up and

18   clearly and conspicuously provide  the circumstances under which the rate and payment will increase.

19       82.    The Federal Reserve Board established disclosure requirements for variable rate loans.

20   26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments

21   to borrowers.  If interest rate changes will be imposed more frequently or at different intervals than

22   payment changes, a creditor must disclose the frequency and timing of both types of changes.

23       83.    The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because

24   Plaintiffs and other consumers similarly situated need this information in order to budget their money.

25   They need to know if their house payments are going to go up so that they can plan for it.  If the change

26   comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their

27   homes.

28       84.    Defendants, and each of them, state only that the interest rate *may* increase in the future.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

However, an interest rate increase was in fact far more certain than this disclosure led Plaintiffs and the Class members to believe. If Defendants had given the Plaintiffs and the Class members the promised low interest rate for any initial period of time, the interest rate was guaranteed to go up even without any change in the index. Thus, the increase in the interest rate on these loans was not just a possibility; it was an absolute certainty and Defendants failed and omitted this material information in their disclosures to Plaintiffs and the Class members.

85. Defendants disclosure statement provided that, the interest rate may increase during the term of this transaction if the index increases. This, however, was not the only circumstance that could cause an increase in the interest rate. The Defendants, and each of them, failed to disclose that the initial interest rate is discounted, creating the possibility of an increase even when the index did not rise. Due to the initial discounted interest rate, the annual interest rate would increase if the index remained constant, or even if the index declined. Because Defendants' disclosure failed to provide this extremely important, material information, Defendants disclosure failed to meet the clear and conspicuous standard mandated under TILA.

86. Defendants failed to disclose to Plaintiffs and the Class members that their rate was, with 100% certainty, going to increase, regardless of whether or not the index upon which their loans are based changed. As such, Defendants violated TILA and Regulation Z with unclear, deceptive and poorly drafted or intentionally misleading disclosure.

**D.    Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in Lending Laws**

87. Defendants provided Plaintiffs and Class members with multiple, conflicting interest rates when describing the costs of this loan. On the TILA Disclosure Form Defendants set forth one interest rate, while on the Note, Defendants set forth two other, different interest rates.

88. The official staff commentary to 226 C.F.R. § 17(C)(8) states:

> *Basis of disclosures in variable-rate transactions*. The disclosures for a
> variable-rate transaction must be given for the full term of the transaction
> and must be based on the terms in effect at the time of consummation.
> Creditors should base the disclosures only on the initial rate and should

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    not assume that this rate will increase. For example, in a loan with an

2    initial rate of 10 percent and a 5 percentage points rate cap, creditors

3    should base the disclosures on the initial rate and should not assume that

4    this rate will increase 5 percentage points. **However, in a variable-rate**

5    **transaction with a** seller buydown that is reflected in the credit contract,

6    a consumer buydown, or **a discounted or premium rate, disclosures**

7    **should not be based solely on the initial terms. In those transactions,**

8    **the disclosed annual percentage rate should be a composite rate based**

9    **on the rate in effect during the initial period and the rate that is the**

10   **basis of the variable-rate feature for the remainder of the term.** (See

11   the commentary to section 226.17(c) for a discussion of buydown,

12   discounted, and premium transactions and the commentary to section

13   226.19(a)(2) for a discussion of the redisclosure in certain residential

14   mortgage transactions with a variable-rate feature.)

15   89.    The reason for this requirement is clear.  Consumers cannot make informed decisions

16   when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon

17   Defendants to show the composite interest rate in effect so that the borrowers can understand exactly

18   what they are paying for the loan.

19   90.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite

20   rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiffs and Class

21   members by Defendants is a discounted variable-rate loan.  Because Defendants failed to properly,

22   clearly and conspicuously, disclose a composite annual percentage rate on these loans Defendants

23   violated TILA and Regulation Z.

24   91.    As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiffs

25   and Class members have suffered injury in an amount to be determined at time of trial.  If Defendants

26   had not violated TILA and had instead properly disclosed the material terms of Defendants' Option

27   ARM loan product, as alleged herein, Plaintiffs and Class members would not have entered into the

28   home loan agreements which are the subject of this action.  Because Defendants failed to make proper

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1  disclosures in violation of TILA, Plaintiffs and Class members now seek redress in an amount and/or

2  type as proven at time of trial.

3      92.    WHEREFORE, Plaintiffs and the Class members are entitled to an order declaring that

4  Defendants violated TILA, 15 U.S.C. §1601, *et seq.*, that Plaintiffs and the Class have the right to

5  rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, damages pursuant to 15 U.S.C. § 1640,

6  attorneys fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiffs'

7  individual mortgage and those of any class member desirous of such relief, and for an order awarding

8  other relief as the Court deems just and proper.

9

10                                         **VII.**

11                          **SECOND CAUSE OF ACTION**

12    **Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* -**

13      **"Unlawful" Business Acts or Practices Predicated on Violations of TILA**

14                          **(Against all Defendants)**

15      93.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

16      94.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in

17  their capacity as private attorney generals against all Defendants for their unlawful business acts and/or

18  practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits

19  all unlawful business acts and/or practices.

20      95.    Plaintiffs assert these claims as they is a representative of an aggrieved group and as a

21  private attorney general on behalf of the general public and other persons who have expended funds that

22  the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies

23  provided by California Business and Professions Code Sections 17200 *et seq.*

24      96.    The unlawful acts and practices of Defendants alleged above constitute unlawful business

25  acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

26  seq.

27      97.    By engaging in the above-described acts and practices, Defendants have

28  committed one or more acts of unfair competition within the meaning of Business and Professions Code

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1   Sections 17200, et seq.

2       98.    Defendants' unlawful business acts and/or practice as alleged herein have violated

3   numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et*

4   *seq.*  These predicate unlawful business acts and/or practices include Defendants failure to comply with

5   the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.,* Regulation Z and Official

6   Staff Commentary issued by the Federal Reserve Board.  And, as described in more detail above,

7   Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loan

8   to Plaintiffs and the Class members as required under TILA.

9       99.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive

10  advantage over their competitors.

11      100.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

12  them, received monies and continues to hold the monies expended by Plaintiffs and others similarly

13  situated who purchased the ARM loans as described herein.

14      101.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a

15  constructive trust over, and restitution of, the monies collected and realized by Defendants.

16      102.    The unlawful acts and practices, as fully described herein, present a continuing threat to

17  members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiffs and

18  other members of the general public have no other remedy of law that will prevent Defendants

19  misconduct as alleged herein from occurring and/or reoccurring in the future.

20      103.    As a direct and proximate result of Defendants' unlawful conduct alleged herein,

21  Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.

22  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, as herein alleged,

23  and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair

24  competition.

25      104.    WHEREFORE, Plaintiffs and members of the Classes are entitled to equitable relief,

26  including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

27  unlawful and deceptive acts and practices, attorneys fees and costs, declaratory relief, and a permanent

28  injunction enjoining Defendants from their unlawful activity.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

# VIII.

## THIRD CAUSE OF ACTION

**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*.,**

**"Unfair" and "Fraudulent" Business Acts or Practices,**

**(Against All Defendants)**

105.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

106.    Plaintiffs bring this cause of action on behalf of himself, on behalf of the Class, and in her capacity as a private attorney general against all Defendants for their unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business and Professions Code Sections 17200 et seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

107.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as private attorney generals on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 et seq.

108.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices. The Plaintiffs and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct. The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

109.    At all times relevant, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan. Defendants, and each of them, marketed and sold Plaintiffs and the Class members a deceptively devised financial product. Defendants marketed and sold their Option ARM loan product to consumers, including Plaintiffs, in a false or deceptive manner. Defendants marketed and advertised to the general public through brochures, flyers and other substantially identical marketing material, a loan which appeared to have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization. Further, Defendants disguised from Plaintiffs and the Class members the fact that

-26-

1   Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.

2       110.    Defendants lured Plaintiffs and the Class members into the Option ARM loan with

3   promises of low fixed interest.  Once Plaintiffs and the Class members entered into these loans,

4   Defendants switched the interest rate charged on the loans to a much higher rate than the one they

5   advertised and promised to Plaintiffs and the Class members.  After entering these loans, Class members

6   could not escape because Defendants purposefully placed into these loans an extremely onerous

7   prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from

8   these loans.  Thus, once on the hook, consumers could not escape from Defendants loans.

9       111.    Plaintiffs and Class members were consumers who applied for a mortgage loan through

10  Defendants.  During the loan application process, in each case, Defendants uniformly promoted,

11  advertised, and informed Plaintiffs and Class members that in accepting these loan terms, Plaintiffs and

12  Class members would be able to lower their mortgage payment and save money.

13      112.    Defendants promoted their Option ARM loan as having a low fixed interest rate, i.e.,

14  typically between 1% and 3%.  However, Defendants did not disclose that this was just a "teaser" rate,

15  the purpose of which was to get consumers to enter into loan agreements with Defendants.  Defendants

16  did not disclose to Plaintiffs and the Class members that the "teaser" rate was not the fixed rate that

17  Defendants would actually charge Plaintiffs and the Class members on their outstanding loan balances.

18      113.    Based on the Defendants' representations and conduct, Plaintiffs and the Class members

19  agreed to finance their primary residence through Defendants' Option ARM loan.  Plaintiffs and the

20  Class members were told they were being sold a home loan with a low interest rate, fixed for the first

21  three (3) to five (5) years of the loan.  Plaintiffs and the Class members were also lead to believe that if

22  they made payments based on this advertised interest rate, and the payment schedule provided to them

23  by Defendants, the loan was a no negative amortization home loan.  After, the fixed interest period,

24  Plaintiffs and the Class members were told their rate "may" change.  And, Plaintiffs believed they would

25  then be able to re-finance to another home loan.  Plaintiffs and the Class members believed these facts to

26  be true because that is what the Defendants wanted consumers to believe, that is what Defendants lead

27  consumers to believe.

28      114.    Defendants aggressively sold their product as a fixed low interest home loan.  Defendants

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1  knew that if marketed in such a manner, their Option ARM loan product would be a hugely popular and

2  profitable product for them.  Defendants also knew, however, that they were marketing their product in a

3  false and deceptive manner.  While Defendants trumpeted their low, fixed rate loans to the public,

4  Defendants knew, however, that this was not entirely true.

5         115.    In fact, Defendants' Option ARM loan possessed a low, fixed ***payment*** but not a low,

6  fixed interest rate.  Unbeknownst to Plaintiffs and Class members, the actual interest rate they were

7  charged on their loans was not fixed.  After purchasing Defendants' Option ARM loan product,

8  Plaintiffs and class members never actually received the benefit of the low advertised interest rate, or, in

9  some cases, consumers received the low rate for just a single month.  Immediately, thereafter,

10 Defendants in every instance and for every loan increased the interest rate they charged Plaintiffs and

11 the Class members.  Once Plaintiffs and Class members accepted Defendants' Option ARM loan, they

12 had no viable option to extricate themselves because of these loan agreements included a draconian pre-

13 payment penalty.

14        116.    Defendants perpetrated a bait and switch scheme on Plaintiffs and Class members.

15 Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe

16 the loan as having a fixed interest rate was deceptive and unfair.  Defendants initiated this scheme in

17 order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

18        117.    The acts, misrepresentations, omissions, and practices of Defendants alleged above

19 constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California

20 Business and Professions Code Sections 17200 et seq.

21        118.    By engaging in the above-described acts and practices, Defendants have

22 committed one or more acts of unfair competition within the meaning of Business and Professions Code

23 Sections 17200, et seq.

24        119.    Defendants' conduct, as fully described above, was likely to deceive members of the

25 consuming public, and at all times, Defendants' failures to disclose and omission of material facts have

26 been and continue to be unfair, fraudulent, untrue and/or deceptive.

27        120.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive

28 advantage over their competitors.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

121.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the ARM loans as described herein.

122.    In addition to the relief requested in the Prayer below, Plaintiffs seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

123.    The harm to Plaintiffs, members of the general public and others similarly situated outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code Sections 17200 et seq.

124.    The unfair, deceptive and/or fraudulent business practices of Defendants, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants ARM loans as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

125.    As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

126.    WHEREFORE, Plaintiffs and members of the Classes are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unfair, fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

/ / /

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

# IX.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Against All Defendants)

127.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

128.    Plaintiffs and Class members entered into a written home loan agreement – the contract or Note – with Defendants.  The Note was drafted by Defendants and could not be modified by Plaintiffs or Class members.  The Note describes terms and respective obligations applicable to the parties herein.

129.    The Note describes Plaintiffs' and Class members' interest rate on the loan as a low interest rate, typically between 1% and 3%.  In addition, as required by federal law, the Defendants provided a Truth In Lending Disclosure concerning the home loan agreement that shows a payment schedule based on that low 1% to 3% interest rate.  For the first three (3) to five (5) years the payment schedule shows that Plaintiffs' and Class members' monthly payment obligations to Defendants are the exact payments necessary to pay off all principal and interest during the terms of the loans if, indeed, the interest rate actually charged by Defendants on the loans was the low interest rate promised.

130.    Defendants drafted the Note and did not allow Plaintiffs or the Class members any opportunity to make changes to the Note and due to Defendants superior bargaining position, the Note was offered on a take it or leave it basis.  As such, the Notes at issue are contracts of adhesion.

131.    Defendants expressly and/or through their conduct and actions agreed that Plaintiffs' and the Class members' monthly payment obligations would be sufficient to pay both the principal and interest owed on the loans.  Defendants breached this agreement and never applied any of Plaintiffs' and the Class members' payments to principal.

132.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and Class members' loans, show that the payment amounts owed by Plaintiffs and Class members to Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised.  If the Defendants did as promised, the payments would have been sufficient to pay both principal and interest amounts.

133.    Instead, Defendants immediately raised Plaintiffs' and Class members' interest rates and

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    applied *no part* of Plaintiffs' and Class members' payments were applied to the principal balances on

2    their loans.  In fact, because Defendants charged more interest than was agreed to and payments, as

3    disclosed by Defendants, were, at all times relevant, insufficient to cover the interest charge and thus

4    principal balances increased (which is the negative amortization built into the loan).

5        134.    Defendants breached the written contractual agreement by failing to apply any portion of

6    Plaintiffs' and the Class members' monthly payments towards their principal loan balances.

7        135.    Plaintiffs and the Class members, on the other hand, did all of those things the contract

8    required of them.  Plaintiffs and the Class members made monthly payments in the amount required by

9    the terms of the Note and reflected in the payment schedule prepared by Defendants.

10       136.    As a result of Defendants' breach of the agreement, Plaintiffs and the Class members

11   have suffered harm.  Plaintiffs and Class members have incurred additional charges to their principal

12   loan balance.  Plaintiffs and Class members have incurred and will continue to incur additional interest

13   charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members'

14   principal loan balance.  Furthermore, Defendants' breach has placed Plaintiffs and Class members in

15   danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and Class

16   members' principal loan balances to increase and limited these consumers' ability to make their future

17   house payments or obtain alternative home loan financing.

18       137.    At all times relevant, there existed a gross inequality of bargaining power between the

19   parties to the ARM loan contracts.  At all times relevant, Defendants unreasonably and unconscionably

20   exploited their superior bargaining position and foisted upon Plaintiffs and the Class members extremely

21   harsh, one-sided provisions in the contract, which Plaintiffs and Class members were not made aware of

22   and did not comprehend (*e.g.* Defendants fraud and failures to clearly and conspicuously disclose as

23   alleged herein), and which attempt to severely limit Defendants obligations under the contracts at the

24   expense of Plaintiffs and Class members, as alleged herein.  As a result of these extremely harsh, one-

25   sided provisions, including but not limited to the provisions which seek to limit the "teaser" interest rate

26   for one month or less, these provisions are unconscionable and therefore unenforceable.

27       138.    WHEREFORE, Plaintiffs and members of the Classes are entitled to declaratory relief,

28   compensatory damages proximately caused by Defendants breach of contract as alleged herein, pre-

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    judgment interest, costs of suit and other relief as the Court deems just and proper.

2

3                                        X.

4                            FIFTH CAUSE OF ACTION

5            Breach of Implied Covenant of Good Faith and Fair Dealing

6                             (Against All Defendants)

7        139.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

8        140.    Defendants entered into written agreements with Plaintiffs and Class members based on

9    representations Defendants made directly and indirectly to Plaintiffs and the Class members about the

10   terms of their loans.

11       140.    Defendants expressly and impliedly represented to Plaintiffs and the Class members that

12   they would provide loans secured by Plaintiffs' and Class members' homes, and that the loans would

13   have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

14       141.    Defendants also represented that if Plaintiffs and the Class members made the monthly

15   payments in the amount prescribed by Defendants that no negative amortization would occur.  The Note

16   expressly states and/or implies that Plaintiffs' and the Class members' monthly payment obligation **will**

17   be applied to pay both principal and interest owed on the loan.  The Note further states that for each

18   monthly payment Plaintiffs and the Class members interest shall be paid before principal.

19       142.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and

20   Class members' loans, show that the payment amounts owed by Plaintiffs and Class members to

21   Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the

22   interest actually charged on the loan was the low interest rate promised.  If the Defendants acted as it

23   promised, the payments would have been sufficient to pay both principal and interest.

24       143.    Instead, Defendants immediately raised Plaintiffs' and Class members' interest rate and

25   applied *no part* of Plaintiffs' and Class members' payment to principal.  In fact, because Defendants

26   charged more interest than was disclosed and agreed to in the loans, Plaintiffs and the Class members'

27   payments were insufficient to cover the interest that Defendants charged resulting in an increase in the

28   amount of principal Plaintiffs and the Class members owed on their homes.

                                        -32-

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

144.    Defendants unfairly interfered with Plaintiffs' and Class members' rights to receive the benefits of the contract.  These loans will cost Plaintiffs and Class members thousands of dollars more than represented by Defendants.  Plaintiffs and Class members did not receive the fixed low interest rate home loan promised them by Defendants.  Defendants have caused Plaintiffs and Class members to lose equity in their homes and therefore have denied Plaintiffs and Class members the enjoyment, security of one of their most important investments.

145.    Plaintiffs and Class members, on the other hand, did all of those things the contract required of them.  Plaintiffs and Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

146.    At all times relevant, Defendants unreasonably denied Plaintiffs and members of the Class the benefits promised to them under the terms of the Note, including but not limited to a low interest rate for the first three (3) to five (5) years of the loan, and clear and conspicuous disclosure of a payment amount sufficient to pay both principle and interest so as to avoid negative amortization and the other failures to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, et seq., Regulation Z and Official Staff Commentary issued by the Federal Reserve Board as alleged herein

147.    Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully breached the implied covenant of good faith and fair dealing by engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated as alleged herein.

148.    Defendants breaches, as alleged herein were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly situated would actually receive a home loan that would provide the promised low interest and payment rate for the first three (3) to five (5) years of the loan sufficient to pay both principle and interest.

149.    Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise sold these ARM loans throughout the United States, including the State of California.

150.    Defendants' placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the

1  advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified

2  said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or

3  conscious disregard for the rights and safety of others, including Plaintiffs and the General Public.

4      151.  At all times relevant, Defendants' conduct, as alleged herein, was malicious, oppressive,

5  and/or fraudulent.

6      152.  As a result of Defendants' conduct, Plaintiffs and Class members have suffered harm.

7  Plaintiffs and the Class members have incurred additional charges to their principal loan balance.

8  Plaintiffs and Class members have incurred and will continue to incur additional interest charges on the

9  principal loan balance and surplus interest added to Plaintiffs' and Class members' principal loan

10 balance.  Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiffs and the Class

11 members in danger of losing their homes through foreclosure and, as a direct and proximate result of

12 said misconduct, caused Plaintiffs' and the Class members' principal loan balances to increase limiting

13 these consumers' ability to make their future house payments or obtain alternative home loan financing.

14     153.  WHEREFORE, Plaintiffs and members of the Classes are entitled to declaratory relief,

15 all damages proximately caused by Defendants breach of the implied covenant of good faith and fair

16 dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the

17 Court deems just and proper.

18

19 **XI.**

20 **SIXTH CAUSE OF ACTION**

21 **Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*., –**

22 **"Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial Code § 22302**

23 **(Against All Defendants)**

24     154.  Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

25     155.  Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in

26 their capacity as a private attorney general against all Defendants for their unlawful business acts and/or

27 practices pursuant to California Business and Professions Code Sections 17200 *et seq*., which prohibits

28 all unlawful business acts and/or practices.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

156.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 *et seq*.

157.    The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

158.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, et seq.

159.    Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et seq*. These predicate unlawful business acts and/or practices include Defendants violation of California Financial Code § 22302.

160.    California Financial Code § 22302 applies to consumer loan contracts. It states that a loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be deemed to be a violation of Financial Code § 22302.

161.    The loan contracts prepared by Defendants and entered into between Plaintiffs and Class members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

162.    The relative bargaining power between Plaintiffs and Class members and Defendants was unequal. Plaintiffs and Class members could not negotiate or change any of the particular terms related to the loan and drafted by Defendants. To secure the loan Plaintiffs and Class members were given no choice but to make payments as described in the payment schedule and to accept and sign all the associating documents numbering over a hundred pages.

163.    The period of time where Defendants offered Plaintiffs and Class members a low interest rate, often was for only one month. Because Defendant Lender packaged the documents in such a manner as to lead Plaintiffs and Class members to believe that they had a low interest rate and therefore low payments for three to five years, Plaintiffs and Class members would end up owing significantly

1  more than before they started and with a significant chance of losing their homes through foreclosure.

2      164.    Defendants drafted these loan documents for use on tens of thousands of individuals.

3  The loan process was such that individual terms could not be modified.  The documents evidencing the

4  loan were delivered to Plaintiffs and Class members at the time of signature.  The loan process offered

5  by Defendants did not permit for any meaningful negotiation of terms or even review of the loan

6  documents at the time of execution.

7      165.    For a substantial number of the loans, Defendants inserted into the loan documents a

8  prepayment penalty that has as it sole purpose to cause consumers to continue under the terms of this

9  loans or lose thousands of dollars if consumers try to refinance the loans.

10     166.    The loans as drafted by Defendants were so "one-sided" that they could only lead

11 Plaintiffs and Class members to one result, which was a significant loss of money.  As a result of

12 Defendants' unconscionable behavior, Plaintiffs and the Class members have suffered direct and actual

13 injury.

14     167.    Because Defendants' Option ARM loan contract is unconscionable pursuant to Section

15 1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and

16 constitutes a violation of the UCL.

17     168.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

18 them, received monies and continues to hold the monies expended by Plaintiffs and others similarly

19 situated who purchased the ARM loans as described herein.

20     169.    In addition to the relief requested in the Prayer below, Plaintiffs seeks the imposition of a

21 constructive trust over, and restitution of, the monies collected and realized by Defendants.

22     170.    The unlawful acts and practices, as fully described herein, present a continuing threat to

23 members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiffs and

24 other members of the general public have no other remedy of law that will prevent Defendants

25 misconduct as alleged herein from occurring and/or reoccurring in the future.

26     171.    As a direct and proximate result of Defendants' unlawful conduct alleged herein,

27 Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.

28 Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, as herein alleged,

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair

2    competition.

3        172.    WHEREFORE, Plaintiffs and members of the Classes are entitled to equitable relief,

4    including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

5    unlawful, unfair and fraudulent, and deceptive practices, attorneys fees and costs, declaratory relief, and

6    a permanent injunction enjoining Defendants from their unlawful activity.

7

8                                  **PRAYER FOR RELIEF**

9        WHEREFORE, Plaintiffs and all Class members pray for judgment against each Defendant,

10    jointly and severally, as follows:

11        A.    An order certifying this case as a class action and appointing Plaintiffs and their counsel

12              to represent the Class;

13        B.    For actual damages according to proof;

14        C.    For compensatory damages as permitted by law;

15        D.    For consequential damages as permitted by law;

16        E.    For statutory damages as permitted by law;

17        F.    For punitive damages as permitted by law;

18        G.    For rescission;

19        H.    For equitable relief, including restitution;

20        I.    For restitutionary disgorgement of all profits Defendants obtained as a result of their

21              unfair competition;

22        J.    For interest as permitted by law;

23        K.    For Declaratory Relief;

24        L.    For a mandatory injunction requiring Defendants to permanently include in every Option

25              ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual

26              interest rate on the Note(s) and disclosure statement(s) as required under 12 C.F.R. §

27              226.17 by; (ii) clear and conspicuous disclosure in the Note(s) and the disclosure

28              statement(s) that payments on the variable interest rate loan during the initial period at

-37-

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    the teaser rate will result in negative amortization and that the principal balance will

2    increase as required under 12 C.F.R. § 226.19; and (iii) clear and conspicuous disclosure

3    that the initial interest rate provided is discounted and does not reflect the actual interest

4    that Plaintiffs and Class members would be paying on the Note(s).

5        M.    For reasonable attorneys' fees and costs; and

6        N.    For such other relief as is just and proper.

7    DATED: October 11, 2007          **SPIRO MOSS BARNESS LLP**

8

                 By:            _/S/_____

9                            David M. Arbogast, Esq.

10                         11377 W. Olympic Boulevard, Fifth Floor
                         Los Angeles, CA 90064-1683

11                         Phone: (310) 235-2468; Fax:  (310) 235-2456

12                         Paul R. Kiesel, Esq.
                         Patrick Deblase, Esq.

13                         Michael C. Eyerly, Esq.
                         **KIESEL BOUCHER LARSON LLP**

14                         8648 Wilshire Boulevard
                         Beverly Hills, California 90210

15                         Phone:  (310) 854-4444; Fax:  (310) 854-0812

16                         Jonathan Shub, Esq.
                         **SEEGER WEISS LLP**

17                         1515 Market Street, Suite 1380
                         Philadelphia, PA 19107

18                         Phone: (215) 564-2300; Fax (215) 851-8029

19                         Jeffrey K. Berns, Esq.
                         **LAW OFFICES OF JEFFREY K. BERNS**

20                         19510 Ventura Blvd, Suite 200
                         Tarzana, California 91356

21                         Phone: (818) 961-2000; Fax:  (818) 867-4820

22                         Attorneys for Plaintiffs and all others Similarly
                         Situated

23   ///

24   ///

25   ///

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

DATED: October 11, 2007                **SPIRO MOSS BARNESS LLP**


By:        _____/S/_____
           David M. Arbogast, Esq.
           11377 W. Olympic Boulevard, Fifth Floor
           Los Angeles, CA 90064-1683
           Phone: (310) 235-2468; Fax: (310) 235-2456

           Paul R. Kiesel, Esq.
           Patrick Deblase, Esq.
           Michael C. Eyerly, Esq.
           **KIESEL BOUCHER LARSON LLP**
           8648 Wilshire Boulevard
           Beverly Hills, California 90210
           Phone: (310) 854-4444; Fax: (310) 854-0812

           Jonathan Shub, Esq.
           **SEEGER WEISS LLP**
           1515 Market Street, Suite 1380
           Philadelphia, PA 19107
           Phone: (215) 564-2300; Fax (215) 851-8029

           Jeffrey K. Berns, Esq.
           **LAW OFFICES OF JEFFREY K. BERNS**
           19510 Ventura Blvd, Suite 200
           Tarzana, California 91356
           Phone: (818) 961-2000; Fax:  (818) 867-4820

           Attorneys for Plaintiffs and all others Similarly
           Situated

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

**Exhibit No. 1**

LOAN # 6900091171

# ADJUSTABLE RATE NOTE

### LIBOR Annual Monthly Average (LAMA) of 1-Month LIBOR Index

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY PAYMENT CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JUNE 08, 2005                     SAN JOSE                          CA
[Date]                                 [City]                               [State]
1271 TERILYN AVENUE, SAN JOSE, CA 95122

[Property Address]

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    468,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    1.000    %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.   PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on   AUGUST 01, 2005                  .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied first to current interest, then to prior unpaid interest, and the remainder to Principal. If, on JULY 01, 2035               , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $    1,505.28    . This amount may change.

**(C) Monthly Payment Changes**

The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of   AUGUST, 2005                  , and on the first day of every month thereafter. Each date on which my interest rate could change is called a "Rate Change Date."

**MULTISTATE ADJUSTABLE RATE NOTE** – Single Family

Page 1 of 5

**BA477N** (0504)                                           VMP Mortgage Solutions, Inc. (800)521-7291
M77N 06/08/05  2:04 PM 6900091171

00001

**(B) The Index**

Beginning with the first Change Date, my adjustable rate will be based on an Index. The "Index" is equal to the LIBOR Annual Monthly Average ("LAMA") of the 1-month London Inter-Bank Offered Rate ("LIBOR"), as made available by Fannie Mae on their website, through electronic transmission or by telephone. The most recent LIBOR Annual Monthly Average ("LAMA") figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculations of Interest Rate Changes**

Before each Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-EIGHTH percentage points ( 2.125 %) to the Current Index. The Note Holder will then round the result of this addition to the NEXT HIGHEST one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Rate Change Date.

**(D) Interest Rate Limit**

My interest rate will never be greater than 9.950 %.

**(E) Payment Changes**

My monthly payment will be adjusted on AUGUST 01, 2006 and on the same date each year thereafter. Each date on which my payment could change is called a "Payment Change Date." My monthly payment will not increase or decrease by more than 7.5% from the payment in effect just prior to the change ("Annual Payment Cap"), except as described in Section 4(G) below. Unless limited by the Annual Payment Cap, my new monthly payment will equal the amount necessary to amortize (pay off) my loan in substantially equal installments over its remaining term based on the interest rate that became effective on the Rate Change Date prior to the Payment Change Date.

**(F) Principal Balance Adjustments - Deferred Interest (Negative Amortization)**

If my monthly payment is less than the amount necessary to pay the full amount of interest for that month, the portion of interest that is unpaid will be added to the principal balance of my loan as of the due date for such payment and will accrue interest at the rate in effect from time to time in accordance with this Note.

**(G) Full Reamortization**

The Payment Change Dates occurring immediately following every fifth year (on the due dates for my 61st, 121st, 181st, 241st and 301st payments) are instead called "Reamortization Dates." In addition, if as of a due date for any payment, the principal balance on this loan would increase to an amount that equals or exceeds 115 % of the original principal balance, that due date will also be a "Reamortization Date."

Effective with the payment due on a Reamortization Date, the Note Holder will adjust my monthly payment in the same manner as provided in Section 4(E) above, except that the Note Holder will not apply the Annual Payment Cap. I will continue making payments at the new level until the next Payment Change Date or Reamortization Date.

I understand that changes in the interest rate that occur during the final five years of my loan term may make my monthly payments insufficient to pay off my loan over the remaining term in equal installments unless I elect to make fully amortizing payments during that period, as provided in Section 4(H) below. As agreed in Section 3(A) above, I will pay off all amounts still owing under this Note on or before the Maturity Date even if this requires a substantially higher payment on the Maturity Date than the immediately preceding payment amounts. Lender is under no obligation to refinance the loan at that time. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be the lender I have this loan with, willing to lend me the money. If I refinance this loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain refinancing from the same lender.

**(H) Payment Options**

I will have up to three monthly payment options for my loan. I may always make the monthly payment required under Sections 3(B), 4(E) or 4(G), as applicable (the "Required Payment"). If the Required Payment is insufficient to fully amortize my loan as a result of the application of the Annual Payment Cap or principal balance adjustments, I will have the option to make a fully amortizing payment, which is an amount sufficient to pay off my loan in substantially

equal payments over its remaining term at its then interest rate. If the Required Payment is not sufficient to pay all of the interest owed for that month, which would result in negative amortization, I also will have the option to make an interest-only payment, which will be sufficient to pay the monthly interest and avoid negative amortization, but will not reduce the principal balance. Even if these options are available, I may still elect to make only the Required Payment.

### (I) Effective Date of Interest Rate Changes
My new interest rate will become effective on each Rate Change Date. I will pay the amount of my new monthly payment beginning on the Payment Change Date or the Reamortization Date, as applicable, until the amount of my monthly payment changes again.

### (J) Notice of Changes
The Note Holder will deliver or mail to me an annual notice of any changes that have occurred to my adjustable interest rate in the preceding year. The Note Holder will also deliver or mail to me a notice of the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    **BORROWER'S RIGHT TO PREPAY**
I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.
I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATE OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES. MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY MONTHLY PAYMENTS AFTER THE FIRST RATE CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. HOWEVER, ANY REDUCTION DUE TO MY PARTIAL PREPAYMENT MAY BE OFFSET BY AN INTEREST RATE INCREASE.

6.    **LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any Required Payment by the end of        15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
     5.0     % of my overdue Required Payment. I will pay this late charge promptly but only once on each
late payment.

**(B) Default**

If I do not pay the full amount of each Required Payment or any other amounts due under this Note on the date the payment or other amount is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
BRIAN D O'DONNELL                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

BA477N (0504)
M77N 06/08/05  2:04 PM 6900091171              Page 5 of 5

**FEDERAL TRUTH IN LENDING
DISCLOSURE STATEMENT
Real Estate Loans**

| Loan Center | CONCORD LOAN CENTER | No. 2627 | Loan No. | 6900091171 |

Principal Amount of Proposed Loan _____ 468,000.00 _____ Expected Funding Date _____ 06/10/05

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br><br>The dollar amount the credit will cost you. | Amount Financed<br><br>The amount of credit provided to you or on your behalf. | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.945 % | $ 1,158,815.30 | $ 462,063.18 | $ 1,620,878.48 |

1.  **Payment Schedule.**
    Your payment schedule will be:

| Number of Payments | Payments Are Due MONTHLY Beginning | Amount of Payments ** | Number of Payments | Payments Are Due MONTHLY Beginning | Amount of Payments ** |
|---|---|---|---|---|---|
| 12 | 08/01/05 | 1505.28 | | | |
| 12 | 08/01/06 | 1618.17 | | | |
| 4 | 08/01/07 | 1739.54 | | | |
| 332 | 12/01/07 | 4748.31 | | | |

2.  **Security and Property Insurance.**
    You are giving a security interest in real estate at:
    1271 TERILYN AVENUE, SAN JOSE, CA 95122
    You may obtain property insurance from anyone you want who is acceptable to the Lender.

3.  **Late Payment.**
    If a payment is not received by the Lender by its first banking day which is at least __15__ days after the payment due date, you will be charged ___5.0___ % of the payment.

4.  **Prepayment.**
    If you pay off early, you ☒ will not ☐ may have to pay a prepayment penalty.
    ☐ If you prepay your loan on other than the regular installment date, you may be assessed interest charges until the end of the month.
    ☐ You may be entitled to a refund of the mortgage insurance premium from HUD.
    You ☒ will not ☐ may be entitled to a refund of part of the finance charge.

☒ 5.  **Assumption Policy.**
    ☐ Someone buying your home cannot assume the remainder of your loan on its original terms.
    ☒ Someone buying your home may be allowed to assume the remainder of your loan on its original terms, subject to certain conditions stated in your loan documents.

☒ 6.  **Variable Rate.**
    Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

☐ 7.  **Required Deposit.**
    The annual percentage rate does not take into account your required deposit.

8.  See your loan documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties.

9.  **Certain Security Interest Charges.** PLEASE SEE THE GOOD FAITH ESTIMATE AND HUD-1 FOR THESE FEES.
    Recording/filing                         $ _____     _____     $ _____
    Lien release recording/filing     $ _____                         $ _____

10. The loan applied for will not be secured by any contractual lien except that resulting from the mortgage or deed of trust covering the security described in the Security and Property Insurance Section.
    ~ THE CURRENT INDEX USED AT THE TIME OF CLOSING WAS 2.280% .
    **The payment amount does not include a tax and insurance reserve.

BANK OF AMERICA, N.A. ("LENDER")    X _R. O'Donnell_    6/8/05

BA222 (0406)                                 VMP Mortgage Solutions, Inc. (800)521-7291

TLD1 06/08/05 2:04 PM 6900091171

PAGE 1 OF 2

00006

**Exhibit No. 2**

LOAN # 6997911521

# ADJUSTABLE RATE NOTE

### LIBOR Annual Monthly Average (LAMA) of 1-Month LIBOR Index

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY PAYMENT CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

MAY 25, 2006                    ARROYO GRANDE                    CA
[Date]                          [City]                          [State]
751 SOUTH ELM, ARROYO GRANDE, CA 93420

[Property Address]

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    300,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    1.125    %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.    PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on    JULY 01, 2006    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied first to current interest, then to prior unpaid interest, and the remainder to Principal. If, on JUNE 01, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $    962.25    . This amount may change.

**(C) Monthly Payment Changes**

The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of    JULY, 2006    , and on the first day of every month thereafter. Each date on which my interest rate could change is called a "Rate Change Date."

**MULTISTATE ADJUSTABLE RATE NOTE** – Single Family

Page 1 of 5

BA477N (0504)                    VMP Mortgage Solutions, Inc. (800)521-7291
M77N 05/25/06  2:18 PM 6997911521

00001

**(B) The Index**

Beginning with the first Change Date, my adjustable rate will be based on an Index. The "Index" is equal to the LIBOR Annual Monthly Average ("LAMA") of the 1-month London Inter-Bank Offered Rate ("LIBOR"), as made available by Fannie Mae on their website, through electronic transmission or by telephone. The most recent LIBOR Annual Monthly Average ("LAMA") figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available or is no longer posted either through electronic transmission or by telephone, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculations of Interest Rate Changes**

Before each Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-QUARTER percentage points (   2.250   %) to the Current Index. The Note Holder will then round the result of this addition to the   NEXT HIGHEST   one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Rate Change Date.

**(D) Interest Rate Limit**

My interest rate will never be greater than   10.075   %.

**(E) Payment Changes**

My monthly payment will be adjusted on   JULY 01, 2007   and on the same date each year thereafter. Each date on which my payment could change is called a "Payment Change Date." My monthly payment will not increase or decrease by more than 7.5% from the payment in effect just prior to the change ("Annual Payment Cap"), except as described in Section 4(G) below. Unless limited by the Annual Payment Cap, my new monthly payment will equal the amount necessary to amortize (pay off) my loan in substantially equal installments over its remaining term based on the interest rate that became effective on the Rate Change Date prior to the Payment Change Date.

**(F) Principal Balance Adjustments - Deferred Interest (Negative Amortization)**

If my monthly payment is less than the amount necessary to pay the full amount of interest for that month, the portion of interest that is unpaid will be added to the principal balance of my loan as of the due date for such payment and will accrue interest at the rate in effect from time to time in accordance with this Note.

**(G) Full Reamortization**

The Payment Change Dates occurring immediately following every fifth year (on the due dates for my 61st, 121st, 181st, 241st and 301st payments) are instead called "Reamortization Dates." In addition, if as of a due date for any payment, the principal balance on this loan would increase to an amount that equals or exceeds   115   % of the original principal balance, that due date will also be a "Reamortization Date."

Effective with the payment due on a Reamortization Date, the Note Holder will adjust my monthly payment in the same manner as provided in Section 4(E) above, except that the Note Holder will not apply the Annual Payment Cap. I will continue making payments at the new level until the next Payment Change Date or Reamortization Date.

I understand that changes in the interest rate that occur during the final five years of my loan term may make my monthly payments insufficient to pay off my loan over the remaining term in equal installments unless I elect to make fully amortizing payments during that period, as provided in Section 4(H) below. As agreed in Section 3(A) above, I will pay off all amounts still owing under this Note on or before the Maturity Date even if this requires a substantially higher payment on the Maturity Date than the immediately preceding payment amounts. Lender is under no obligation to refinance the loan at that time. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be the lender I have this loan with, willing to lend me the money. If I refinance this loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain refinancing from the same lender.

**(H) Payment Options**

I will have up to three monthly payment options for my loan. I may always make the monthly payment required under Sections 3(B), 4(E) or 4(G), as applicable (the "Required Payment"). If the Required Payment is insufficient to fully amortize my loan as a result of the application of the Annual Payment Cap or principal balance adjustments, I will have the option to make a fully amortizing payment, which is an amount sufficient to pay off my loan in substantially

BA477N (0504)
M77N 05/25/06  2:10 PM 6597611521

Page 2 of 5

00002

equal payments over its remaining term at its then interest rate. If the Required Payment is not sufficient to pay all of the interest owed for that month, which would result in negative amortization, I also will have the option to make an interest-only payment, which will be sufficient to pay the monthly interest and avoid negative amortization, but will not reduce the principal balance. Even if these options are available, I may still elect to make only the Required Payment.

**(I) Effective Date of Interest Rate Changes**
My new interest rate will become effective on each Rate Change Date. I will pay the amount of my new monthly payment beginning on the Payment Change Date or the Reamortization Date, as applicable, until the amount of my monthly payment changes again.

**(J) Notice of Changes**
The Note Holder will deliver or mail to me an annual notice of any changes that have occurred to my adjustable interest rate in the preceding year. The Note Holder will also deliver or mail to me a notice of the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**
I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.
I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATE OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES. MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY MONTHLY PAYMENTS AFTER THE FIRST RATE CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. HOWEVER, ANY REDUCTION DUE TO MY PARTIAL PREPAYMENT MAY BE OFFSET BY AN INTEREST RATE INCREASE.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any Required Payment by the end of          15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.0          % of my overdue Required Payment. I will pay this late charge promptly but only once on each late payment.

BA477N (0504)
M77N 05/25/05 2:18 PM 6997911521                    Page 3 of 5

**(B) Default**
If I do not pay the full amount of each Required Payment or any other amounts due under this Note on the date the payment or other amount is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions shall read as follows:
**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

BA477N (0504)
M77N 05/25/06 2:10 PM 6997971521

Page 4 of 5

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHAEL VAN BELLEGHEM                                    -Borrower

_____ (Seal)
PATRICIA VAN BELLEGHEM                                   -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

BA477N (0504)                          Page 5 of 5
M77N 05/25/06  2:10 PM 6997911521

# FEDERAL TRUTH IN LENDING
## DISCLOSURE STATEMENT
### Real Estate Loan

| | | |
|---|---|---|
| Loan Center   **BREA RETAIL LOAN CENTER** | No.   **2829** | Loan No.   **6997911521** |

Principal Amount of Proposed Loan _____ 300,000.00 _____     Expected Funding Date _____ 06/01/06 _____

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| **5.378** % | $ **432,277.24** | $ **298,595.00** | $ **730,872.24** |

**1.   Payment Schedule.**
Your payment schedule will be:

| Number of Payments | Payments Are Due **MONTHLY** Beginning | Amount of Payments ** | Number of Payments | Payments Are Due **MONTHLY** Beginning | Amount of Payments ** |
|---|---|---|---|---|---|
| 12 | 07/01/06 | 982.25 | | | |
| 12 | 07/01/07 | 1056.91 | | | |
| 12 | 07/01/08 | 1136.11 | | | |
| 12 | 07/01/09 | 1220.24 | | | |
| 12 | 07/01/10 | 1311.76 | | | |
| 300 | 07/01/11 | 2208.03 | | | |

**2.   Security and Property Insurance.**
You are giving a security interest in real estate at:
_____ 751 SOUTH ELM, ARROYO GRANDE, CA 93420 _____
You may obtain property insurance from anyone you want who is acceptable to the Lender.

**3.   Late Payment.**
If a payment is not received by the Lender by its first banking day which is at least __15__ days after the payment due date, you will be charged _____ 5.0 _____ % of the payment.

**4.   Prepayment.**
If you pay off early, you [X] will not   [ ] may have to pay a prepayment penalty.
   [ ] If you prepay your loan on other than the regular installment date, you may be assessed interest charges until the end of the month.
   [ ] You may be entitled to a refund of the mortgage insurance premium from HUD.
You [X] will not   [ ] may be entitled to a refund of part of the finance charge.

[X] **5.   Assumption Policy.**
   [ ] Someone buying your home cannot assume the remainder of your loan on its original terms.
   [X] Someone buying your home may be allowed to assume the remainder of your loan on its original terms, subject to certain conditions stated in your loan documents.

[X] **6.   Variable Rate.**
Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

[ ] **7.   Required Deposit.**
The annual percentage rate does not take into account your required deposit.

**8.**   See your loan documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties.

**9.   Certain Security Interest Charges.** PLEASE SEE THE GOOD FAITH ESTIMATE AND HUD-1 FOR THESE FEES.
Recording/filing _____ $ _____     $ _____
Lien release recording/filing _____ $ _____     $ _____

**10.**   The loan applied for will not be secured by any contractual lien except that resulting from the mortgage or deed of trust covering the security described in the Security and Property Insurance Section.
   - THE CURRENT INDEX USED AT THE TIME OF CLOSING WAS 4.111%.
**The payment amount does not include a tax and insurance reserve.

**BANK OF AMERICA, N.A.** ("LENDER")

BA222 (0511)     VMP Mortgage Solutions, Inc. (800)521-7291
   TLD1 05/25/06 2:10 PM 6997911521

PAGE 1 OF 2

00006