# EXHIBIT A

1   Jonathan Shub (SBN 237708)
    jshub@seegerweiss.com
2   **SEEGER WEISS LLP**
    1515 Market Street, Suite 1380
3   Philadelphia, PA 19107
    Phone: (215) 564-2300; Fax (215) 851-8029
4
5   Paul R. Kiesel, Esq. (SBN 119854)          David M. Arbogast (SBN 167571)
    kiesel@kbla.com                            David@SpiroMoss.com
6   Patrick DeBlase, Esq. (SBN 167138)         Ira Spiro (SBN 67641)
    deblase@kbla.com                           Ira@SpiroMoss.com
7   Michael C. Eyerly, Esq. (SBN 178693)       **SPIRO MOSS BARNESS LLP**
    eyerly@kbla.com                            11377 W. Olympic Boulevard, Fifth Floor
8   **KIESEL BOUCHER LARSON LLP**             Los Angeles, CA 90064-1683
    8648 Wilshire Boulevard                    Phone: (310) 235-2468; Fax: (310) 235-2456
9   Beverly Hills, California 90211
    Phone:  (310) 854-4444                     Jeffrey K. Berns, Esq. (SBN 131351)
10  Fax:  (310) 854-0812                       jberns@jeffbernslaw.com
                                               **LAW OFFICES OF JEFFREY K. BERNS**
11                                             19510 Ventura Boulevard, Suite 200
                                               Tarzana, California 91356
12                                             Phone: (818) 961-2000; Fax: (818) 867-4820

    Attorneys for Plaintiffs and all others Similarly Situated

13                  **UNITED STATES DISTRICT COURT**

14          **NORTHER DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

15  BRIAN O'DONNELL, MICHAEL VAN          )   **CASE NO. C-07-04500 RMW**
16  BELLEGHEM, and PATRICIA VAN           )
    BELLEGHEM, individually, and on behalf)   **SECOND AMENDED CLASS ACTION**
17  of all others similarly situated,     )   **COMPLAINT FOR:**
                                          )
18                  Plaintiffs,           )   **(1)   Violations of the Truth in Lending Act, 15**
                                          )         **U.S.C. §1601, *et seq*;**
19                                        )
            v.                            )   **(2)   Fraudulent Omissions;**
20                                        )
                                          )   **(3)   Violation of Bus. & Prof. Code §17200, *et seq*.**
21  BANK OF AMERICA, NATIONAL             )         **– "Unfair" and "Fraudulent" Business**
    ASSOCIATION a.k.a. BANK OF            )         **Practices;**
22  AMERICA, N.A., and DOES 1 through 10  )
    inclusive, and DOES 1 through 10 inclusive, )  **(4)   Breach of Contract; and**
23                                        )
                    Defendants.           )   **(5)   Tortious Breach of the Covenant of Good**
24                                        )         **Faith and Fair Dealing.**
                                          )
25  _____  )   **JURY TRIAL DEMANDED**
                                          )
26
27
28

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

Plaintiffs, BRIAN O'DONNELL, MICHAEL VAN BELLEGHEM, PATRICIA VAN BELLEGHEM ("Plaintiffs"), individually and on behalf of all others similarly situated allege as follows:

## I.

## __INTRODUCTION__

1.      This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other statutory and common law in effect.  Plaintiffs BRIAN O'DONNELL,  MICHAEL VAN BELLEGHEM, and PATRICIA VAN  BELLEGHEM ("Plaintiffs"), individually, and on behalf of all others similarly situated, bring this action against BANK OF AMERICA, N.A., and DOES 1-10 (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose to Plaintiffs and the Class Members, in Defendants Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Plaintiffs and Class members would be paying on the Note(s).

## II.

## __THE PARTIES__

2.      Plaintiff, BRIAN O'DONNELL ("O'DONNELL") is, and at all times relevant to this Complaint, was an individual residing in San Jose, California.  On or about June 8, 2005, Plaintiff refinanced his existing home loan and entered into an Option ARM loan agreement with Defendants. The Option ARM loan was secured by Plaintiff's primary residence.  Attached hereto as Exhibit 1 is a true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action.

3.      Plaintiffs, MICHAEL VAN BELLEGHEM and PATRICIA VAN BELLEGHEM ("BELLEGHEM") are, and at all times relevant to this Complaint were, individuals residing in Arroyo

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1  Grande, California.  On or about May 25, 2006, Plaintiffs refinanced their existing home loan and

2  entered into an Option ARM loan agreement with Defendants.  The Option ARM loan was secured by

3  Plaintiffs' primary residence.  Attached hereto as Exhibit 2 is a true and correct copy of the Note and

4  Truth and Lending Disclosure Form pertinent to this action.

5      4.      Defendant, BANK OF AMERICA, NATIONAL ASSOCIATION a.k.a. BANK OF

6  AMERICA, N.A. ("BANK OF AMERICA, N.A."), is a United States corporation licensed to do, and is

7  doing business in California.   At all relevant times hereto BANK OF AMERICA, N.A was and is

8  engaged in the business of promoting, marketing, distributing and selling the Option Arm loans that are

9  the subject of this Complaint.   BANK OF AMERICA, N.A. transacts business in Santa Clara County,

10  California and at all relevant times promoted, marketed, distributed, and sold Option Arm loans

11  throughout the United States, including Santa Clara County, California.  BANK OF AMERICA, N.A.

12  has significant contacts with Santa Clara County, California, and the activities complained of herein

13  occurred, in whole or in part, in Santa Clara County, California.

14      5.      Defendants, BANK OF AMERICA, N.A., and DOES 1 through 10, shall hereinafter be

15  referred to collectively as "Defendants."

16      6.      At all times mentioned herein, Defendants, and each of them, were engaged in the

17  business of promoting, marketing, distributing, and selling the Option Arm loans that are the subject of

18  this Complaint, throughout the United States, including Santa Clara County, California.

19      7.      Plaintiffs are informed, believe, and thereon allege, that each and all of the

20  aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,

21  fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,

22  for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately

23  caused by the conduct of Defendants.

24      8.      Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and

25  mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the

26  agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-

27  ego of each of the remaining Defendants and were at all times acting within the purpose and scope of

28  such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego,

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

9.     At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

10.     Plaintiffs are informed, believe, and thereon allege that each and all of the aforementioned Defendants are responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by the conduct of Defendants.

11.     Plaintiffs are informed, believe, and thereon allege, that at all times material hereto and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

12.     At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

13.     Plaintiffs are informed, believe, and thereon allege, that Defendants, BANK OF AMERICA and DOES 1-10, and each of them, are, and at all material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted business in California.  Defendants, and each of them, are corporations or other business entities, form unknown, have, and are doing business in this judicial district.

14.     Plaintiffs are informed, believe, and thereon allege, that DOES 1 through 10, inclusive,

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the loans which are the subject of this action. Plaintiffs will seek leave of Court to replace the fictitious names of these entities with their true names when they are discovered by Plaintiffs herein.

15.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs allege, on information and belief, that each Doe defendant is responsible for the actions herein alleged. Plaintiffs will seek leave of Court to amend this Complaint when the names of said Doe defendants have been ascertained.

16.    Plaintiffs are informed, believe, and thereon allege, that at all times mentioned herein, Defendants, and each of them, including without limitation those Defendants herein sued as DOES, were acting in concert or participation with each other, or were joint participants and collaborators in the acts complained of, and were the agents or employees of the others in doing the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert one with the other and all together.

## III.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28 U.S.C. § 1331.

18.    This Court has personal jurisdiction over the parties in this action by the fact that Defendants are either individuals who reside in this District within California or are corporations duly licenced to do business in California.

19.    Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district, and because there is personal jurisdiction in this district over the named Defendant because it regularly conducts business in this judicial district.

/ / /

**IV.**

**FACTS COMMON TO ALL CAUSES OF ACTION**

20.    BANK OF AMERICA is one of the world's largest financial institutions, serving individual consumers, small and middle market businesses and large corporations with a full range of banking, investing, asset management and other financial and risk-management products and services.

21.    The instant action arises out of residential mortgage loan transactions in which Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs and the Class members, in writing, as required by law.

22.    Defendants sold a variety of home loans.   The OPTION ARM or adjustable rate mortgages are the loans that are the subject of this Complaint.

23.    The instant action arises out of residential mortgage loan transactions in which Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiffs and the Class members, in writing, as required by law.

24.    This action also concerns Defendants' fraudulent and unfair business acts or practices. Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to lose their homes through foreclosure.

25.    Plaintiffs, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendant.  The Option ARM loans sold to Plaintiffs and the Class is a deceptively devised financial product.  The loan has a variable rate feature with payment caps.  The product was sold based on the promise of a low fixed payment based on a low listed interest rate, when in fact Plaintiffs and the Class were charged a different, much greater interest rate than promised. Further, Defendants failed to disclose, and by omission, failed to inform Plaintiffs of the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.  And, on information and belief, for a substantial number of the loans sold to the Class members, once lured into these loans, these consumers cannot easily extricate themselves from these loans because Defendants included in these loans a stiff and onerous prepayment penalty making it extremely difficult, if not

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1   impossible, for borrowers to extricate themselves from these loans.

2       26.    The Option ARM loan Defendants sold to Plaintiffs and the Class violates the Truth In

3   Lending Act (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made

4   by lenders to borrowers concerning the terms and conditions of their home loans.  Defendants failed to

5   make these disclosures in connection with the Option ARM loans sold to Plaintiffs and the Class.

6       27.    At all times relevant, Defendants sold their Option ARM loan product to consumers,

7   including Plaintiffs, in a false or deceptive manner.  Defendants' loan documents indicated that the loan

8   would have a very low payment for the first three (3) to five (5) years and there is no indication of

9   negative amortization.  In furtherance of their scheme, Defendants listed a low "teaser" rate in the

10  Note(s) and a low corresponding payment schedule in the TILA Disclosure Statement (hereafter

11  "TILDS") to lure Plaintiffs and the Class members into purchasing Defendants' Option ARM loan

12  product.  However, the low "teaser" rate was illusory, a false promise.  Plaintiffs and others similarly

13  situated did not receive the benefit of the low rate promised to them.  Once signed on to Defendants'

14  loan, the interest rate applied to Plaintiffs' and Class members' loans was immediately and significantly

15  increased.

16      28.    Plaintiffs and others similarly situated were consumers who applied for a mortgage loan

17  through Defendants.  During the loan application process, in each case, Defendants intended Plaintiffs

18  and the Class members to believe that in entering these loan contracts that they would be able to have

19  low mortgage payments.  Defendants initiated this scheme in order to maximize the amount of the loans

20  it sold to consumers and to maximize it's profits.

21      29.    Based on the Defendants' representations in the loan documents, and the misconduct

22  alleged herein, Plaintiffs and the Class members agreed to finance their primary residence through

23  Defendants' Option ARM loan.  Plaintiffs and the Class members were sold a home loan with a low

24  interest rate of between 1% and 3.0% interest rate (the "teaser" rate), and a corresponding payment

25  schedule based on that interest rate for the first three (3) to five (5) years of the loan.  Defendants also

26  represented to Plaintiffs, and Plaintiffs reasonably believed, that if they made payments based on the

27  promised low interest rate, which were the payments reflected in the written payment schedule provided

28  to them by Defendants, that the loans would be no negative amortization home loans and that Plaintiffs'

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1   payments would be applied to both principal and interest.

2       30.     After, the purported three (3) - five (5) year fixed interest period, Plaintiffs and the Class

3   members reasonably believed, based on the representations contained in the documents Defendants

4   provided to Plaintiffs and the Class members, that they would be able to refinance their loan and get a

5   new loan before their scheduled payments increased.  However, the payment schedule provided by

6   Defendants failed to disclose, and by omission, failed to inform these consumers that due to the negative

7   amortization that was purposefully built into these loans, Plaintiffs and the Class members would be

8   unable to refinance their homes as there would be little or no equity left to refinance.

9       31.     Plaintiffs believed these facts to be true because that is what the Defendants intended

10  consumers to believe.  Defendants aggressively marketed their product as a fixed, low interest home

11  loan.  Defendants knew that if marketed and sole in such a manner, their Option ARM loan product

12  would be a hugely popular and profitable product for them.  Defendants also knew, however, that they

13  were selling their product in a false and deceptive manner.  While Defendants trumpeted their low rate

14  loans to the public, Defendants knew their promise of a low interest was a mirage.

15      32.     In fact, Defendants' Option ARM loan possessed a low, fixed ***payment*** but not a low,

16  fixed interest rate.  Unbeknownst to Plaintiffs and the Class members, the actual interest rate they were

17  charged on their loans was not fixed, was not the low teaser interest rate stated in the loan

18  documentation and was in fact considerably higher than going market rates.  And, after purchasing

19  Defendants' Option ARM loan product, Plaintiffs and the Class members did not actually receive the

20  benefit of the low teaser rate at all or in some cases, at best, received that teaser rate for only a single

21  month.  Immediately, thereafter, Defendants in every instance and for every loan, secretly increased the

22  interest rate they charged consumers.  The now-increased interest charges incurred by Plaintiffs and the

23  Class members, over and above the fixed interest payment rate, were added to the principal balance on

24  their home loans in ever increasing increments, substantially reducing the equity in these borrowers'

25  homes.

26      33.     In stark contrast to this reality, Defendants, through the standardized loan documents they

27  created and supplied to Plaintiffs, stated that negative amortization was only a mere possibility.

28  Defendants concealed and failed to disclose the fact that the loan, as presented and designed, in fact,

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

guaranteed negative amortization.  Defendants failed to disclose and omitted the objectively material

fact that negative amortization was absolutely certain to occur if consumers followed the payment

schedule listed by Defendants in the TILDS.  This information was objectively material and necessary

for consumers to make an informed decision because this would have revealed that the loan's principal

balance would increase if the payment schedule was followed, thereby rendering it impossible to

refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest

and payment rates re-set.   In this respect, Defendants utterly failed to place any warning on the Truth

and Lending Disclosure Form about negative amortization.

34.    Plaintiffs are informed, believe, and thereon allege, that for a substantial number of loans,

once these Class members accepted Defendant's Option ARM loan contract, they had no viable option

by which to extricate themselves because these Option ARM loan agreements included a draconian pre-

payment penalty for a period of up to three years.

35.    The Option ARM loans sold by Defendants all have the following uniform

characteristics:

(a)    There is an initial low interest rate or "teaser" rate that was used to entice the

Plaintiffs into entering into the loan.  The rate offered was typically 1%-3%;

(b)    The loan has with it a corresponding low payment schedule.  The documentation

provided intended to misleadingly portray to consumers that the low payments for the first three (3) to

five (5) years were a direct result of the low interest rate being offered;

(c)    The initial payments in the required disclosures were equal to the low interest rate

being offered.  The purpose was to assure that if someone were to calculate what the payment would be

at the low offered interest rate, it corresponded to the payment schedule.  This portrayal was intended to

further mislead consumers into believing that the payments were enough to cover all principal and

interest;

(d)    The payment has a capped annual increase on the payment amount; and

(e)    The loan includes a prepayment penalty preventing consumers from securing a

new loan for a period of up to three (3) years.

36.    Defendants uniformly failed to disclose, and by omission, failed inform consumers,

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

including Plaintiffs and the Class members, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty (30) days.  Thereafter, the true interest charged on the loans was significantly higher than the promised rate.

37.    Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiffs and the Class members, that the payments set forth in Defendants' schedule of payments were insufficient to cover the actual amount they were being charged for the loan, and that these were, in fact, loans that would cause Plaintiffs and the Class members to lose the equity they have in their homes.

38.    Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiffs and the Class members, that when the principal balance increased to a certain level, they would no longer have the option of making the fixed interest payment amount.

39.    Disclosing whether a payment will result in negative amortization is of critical importance to consumers.  If the disclosed payment rate is insufficient to pay both principal and interest, one of the consequences of negative amortization is a loss of equity.  Defendants are and at all times relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely important material information.

40.    At all times relevant, Defendants, and each of them, knew or should have known, or were reckless in not knowing, that: (i) the payment rate provided to Plaintiffs and the Class members were insufficient to pay both interest and principal; (ii) that negative amortization was certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class members' residence was substantially certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendants.

41.    In spite of its knowledge, Defendants sold its Option ARM loans as product that would provide Plaintiffs and the Class members with a low payment and interest rate for the first three (3) to five (5) years of the loan, and at all times relevant, failed to disclose and/or concealed by making partial

representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur.  This concealed and omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial misleading representations to Plaintiffs and all others similarly situated.  Because the Option ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note and the payment disclosed by Defendants was insufficient to pay both principal and interest, negative amortization occurred.

42.    The true facts about Defendants' Option ARM loans is that they do not provide the low interest rate promised, and are certain to result in negative amortization.

43.    Disclosure of a payment rate that is sufficient to pay both principal and interest on the loans is of critical importance consumers.  If the disclosed payment rate is insufficient to pay both principal and interest, one of the consequences is that negative amortization or loss of equity will occur. Defendants are and at all times relevant hereto have been aware that the ability of the disclosed payment amount to pay both principal and interest so as to avoid negative amortization is one of the most important terms of a loan.

44.    To this day, Defendants continue to conceal material information from consumers, and the public, that: (i) the payment schedules provided to Plaintiffs and the Class members are and were insufficient to pay both principal and interest; (ii) if the disclosed payment schedules are followed, Plaintiffs and the Class members will suffer negative amortization; and (iii) loss of equity and/or possession of the property is substantially certain to occur if the disclosed payment schedule is followed. Nevertheless, Defendants have refused to clearly and conspicuously disclose to Plaintiffs and the Class members the existence of this important material information and the injury caused thereby, including but not limited to the loss of equity.

45.    In the end, the harm caused by Defendants' failures to disclose and omissions, as alleged herein, grossly outweighs any benefit that could be attributed to them.

46.    Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

47.     The Option ARM loans have resulted and will continue to result in significant loss and damage to the Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

48.     The facts which Defendants misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the Option ARM loans in that Plaintiffs and others similarly situated would not have purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

49.     Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

50.     Defendants' unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly situated would receive a home loan that would actually provide the low interest and payment rate for the first three (3) to five (5) years of the loan sufficient to pay both principal and interest.

51.     Upon information and belief, and at all times relevant during the liability period, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise sold these ARM loans throughout the United States, including the State of California.

## V.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b), and the case law thereunder.  The classes Plaintiffs seek to represent are defined as follows:

> **The California Class**:  All individuals who, within the four year period preceding the filing of Plaintiffs' Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the State of California.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and

> **The National Class**:  All individuals in the United States of America who, within the four year period preceding the filing of Plaintiffs' complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

States of America.  Excluded from the National Class are Defendant's employees, officers, directors, agents, representatives, and their family members.

An appropriate sub-Class exists for the following Class Members:

All individuals in the United States of America who, within the three year period preceding the filing of Plaintiffs' complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendantson their primary residence located in the United States of America.  Excluded from the National sub-Class are Defendant's employees, officers, directors, agents, representatives, and their family members.

Plaintiffs reserve the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

53.    <u>Numerosity</u>:  The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that the entire Class or Classes consist of approximately tens of thousands of members.

54.    <u>Commonality</u>:  Common questions of law or fact are shared by the Class members.  This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following:

(1)    Whether Defendants' acts and practices violate the Truth in Lending Act, 15 U.S.C. §1601, et seq;

(2)    Whether Defendants' conduct violated 12 C.F.R. § 226.17;

(3)    Whether Defendants' conduct violated 12 C.F.R. § 226.19;

(4)    Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiffs and the Class members before and during the loan application process;

(5)    Whether Defendants, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiffs and the Class members;

(6)    Whether Defendants, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information they were

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

mandated to disclose under TILA;

(7)    Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8)    Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(9)    Whether Defendants' failure to apply Plaintiffs' and the Class members' payments to principal as promised in the form Notes constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(10)    Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were applied to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(11)    Whether Defendants' marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

(12)    Whether the terms and conditions of Defendants' Option ARM home loan are unconscionable;

(13)    Whether Plaintiffs and the Class are entitled to damages;

(14)    Whether Plaintiffs and the Class members are entitled to punitive damages; and

(15)    Whether Plaintiffs and the Class members are entitled to rescission.

55.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class members.  Plaintiffs and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the other Class members are based on the same legal theories.

56.    <u>Adequacy</u>:  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other members of the Class Plaintiffs seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend on prosecuting this action vigorously.   The interests of members of the Class will be fairly and

1    adequately protected by Plaintiffs and their counsel.

2        57.    Ascertainable Class:  The proposed Classes are ascertainable in that the members can be

3    identified and located using information contained in Defendants' mortgage lending records.

4        58.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

5    23(b)(2), and 23(b)(3):

6        (a)    Risk of Inconsistent Judgments:  The unlawful acts and practices of Defendants, as

7            alleged herein, constitute a course of conduct common to Plaintiffs and each Class

8            member.  Prosecution of separate actions by individual Class members would create a

9            risk of inconsistent or varying adjudications which would establish incompatible

10           standards of conduct for Defendants and/or substantially impair or impede the ability of

11           individual Class members to protect their interests;

12       (b)    Injunctive and/or Declaratory Relief to the Class is Appropriate:  Defendants, and each of

13           them, have acted or refused to act on grounds generally applicable to the Class, thereby

14           making final injunctive relief or corresponding declaratory relief with respect to the Class

15           as a whole appropriate; and

16       (c)    Predominant Questions of Law or Fact:  Questions of law or fact common to the Class

17           members, including those identified above, predominate over questions affecting only

18           individual Class members (if any), and a class action is superior to other available

19           methods for the fair and efficient adjudication of the controversy.  Class action treatment

20           will allow a large number of similarly situated consumers to prosecute their common

21           claims in a single forum, simultaneously, efficiently, and without the unnecessary

22           duplication of effort and expense that numerous individual actions would require.

23           Further, an important public interest will be served by addressing the matter as a class

24           action.  The cost to the court system of adjudicating each such individual lawsuit would

25           be substantial.

26   / / /

27   / / /

28   / / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

# VI.

## FIRST CAUSE OF ACTION

**(Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*,**

**(Against All Defendants)**

59.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

60.     15 U.S.C. §1601, *et seq*., is the Federal Truth in Lending Act ('TILA"). The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12 C.F.R. §226 ) and its Official Staff Commentary. Compliance by lenders with Regulation Z became mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

61.     The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1, which reads:

**§226.1 Authority, purpose, coverage, organization, enforcement and**

**liability. . .**

(b)     Purpose. The purpose of this regulation is to promote the informed

use of consumer credit by requiring disclosures about its terms and costs.

The regulation also gives consumers the right to cancel certain credit

transactions that involve a lien on a consumer's principal dwelling . . .

62.     Reg. Z also mandates very specific disclosure requirements regarding home loans with which lenders, including Defendant, must comply:

**§ 226.17. General disclosure requirements.**

(a)  Form of disclosures. (1) The creditor shall make the disclosures

required by this subpart clearly and conspicuously in writing, in a form

that the consumer may keep. The disclosures shall be grouped together,

shall be segregated from everything else, and shall not contain any

information not directly related to the disclosures required under §

226.18.

63.     The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the

borrowers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing practices.

64.    Defendants' Option ARM loan violates TILA because Defendants failed to comply with the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the Federal Reserve Board.  Defendants failed in a number of ways to clearly, conspicuously and/or accurately disclose the terms of the Option ARM loan to Plaintiffs as Defendants were required to do under TILA.  These violations are apparent on the face of the TILA Disclosure Forms.

65.    The TILA violations committed by Defendants are more specifically detailed as follows:

A.    **Defendants' Failure to Clearly and Conspicuously Disclose That the Payment Schedules Are Not Based on the Actual Interest Rate Violates TILA**

66.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the interest rate and payments in a clear and conspicuous manner.  Further, a misleading disclosure is as much a violation of TILA as a failure to disclose at all.

67.    As for Plaintiffs and the Class members Option ARM loans, Defendants violated 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 in that it failed to clearly and conspicuously disclose the interest rate upon which the payments listed in the TILDS are based.

68.    The scheduled payment amounts and interest rate listed in the TILDS for each of the subject loans are unclear and inconspicuous.  In fact, the payment amounts are not based on the interest rate listed but instead, were based upon an interest rate which was neither disclosed nor made conspicuous as required under TILA.

69.    At all times relevant, Defendants knowingly and intentionally included in each of the TILDS a schedule of payments which was not based upon the interest rate listed in these same document.  Defendant's failure to clearly and conspicuously disclose the interest rate upon which the payment amounts were based was, and is, deceptive.

70.    Further, in addition to Defendants' failure to disclose in the TILDS that the payments listed were not based upon the interest rate listed, Defendants knowingly and intentionally represented in the loan documents that the payments would be applied to both principal and interest.  However, in

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    truth, if Plaintiffs followed the payment schedule provided by Defendants, the payments were

2    guaranteed to be insufficient to pay the principal and interest on the loan.

3         71.    At all times relevant, Defendants failed to clearly and conspicuously disclose to Plaintiffs

4    and the Class members that if they made payments according to the payment schedule set forth in the

5    TILDS, that negative amortization was not just a mere possibility, it was an absolute certainty.

6         72.    At all times relevant, Defendants purposefully and intentionally failed to disclose to

7    Plaintiffs, and all others similarly situated, the interest rate upon which the payment schedule was based

8    in order to mislead and deceive Plaintiffs and Class members into believing that they would be getting a

9    loan with a low fixed payment rate that would be sufficient to pay both interest and principal.

10        73.    At all times relevant, the payment amount provided by Defendants was intended to and

11   did deceive consumers into falsely believing they would, in fact, receive the low interest rate upon

12   which the payment schedule is based.  While the Note states the amount of Plaintiffs' initial monthly

13   payment, however, the initial monthly payment amounts stated in the Note and TILDS are not, in

14   anyway related to the interest rate listed in the Note(s) and TILDS.

15        74.    Defendants employed the aforementioned bait-and-switch tactics in a common and

16   uniform class-wide basis.  In particular, had Defendants clearly and conspicuously disclosed a payment

17   amount sufficient to cover both principle and interest, the payment amounts would have to have been

18   almost double the payment amounts listed.

19        75.    The TILDS are also deceptive for much the same reason.  The TILDS list a schedule of

20   payments, yet for up to the five years the listed payment amounts have no relation to, and are also not

21   based on the interest rate listed in the TILDS.

22        76.    At all times relevant, Defendants failed to clearly, conspicuously, and accurately disclose

23   a payment amount that corresponds to the actual interest rate being charged on the loan sufficient to pay

24   the true costs of the loan.  Plaintiffs and the Class members reasonably believed that if they made the

25   payments according to Defendants' payment schedule, the payments would, in fact, be paying off the

26   loan.  However, the true fact is that the payment amounts stated in Defendants' payment schedule did

27   not include any principal on the loans at all and only covered a portion of the interest Defendants were

28   charging on these loans.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

77.     Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states that "this standard requires that disclosures be in a reasonably understandable form.  For example, while the regulation requires no mathematical progression or format, the disclosures must be presented in a way that does not obscure the relationship of the terms to each other…"

78.     At all times relevant, Defendants' Option ARM loans violated 12 C.F.R. § 226.17(a)(1) in that the relationship between the payments, for up to the first five years of the loans, bear no relationship to the interest rate listed in the TILDS.  Therefore, as a direct and proximate result, the form of disclosure used by Defendants obscured the relationship between the interest rate listed in the Note(s) and TILDS and the payment schedule provided.

**B.     Defendants' Failure to Clearly and Conspicuously Disclose The Legal Obligation Violates Truth in Lending Laws**

79.     12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of the legal obligation between the parties."

80.     Official binding staff commentary on 12 C.F.R. § 226.17(c)(1) requires that: "[t]he disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the transaction.  In the case of disclosures required under  § 226.20(c), the disclosures shall reflect the credit terms to which the parties are legally bound when the disclosures are provided."

81.     The Official binding staff commentary further states, at 12 C.F.R. § 226.17(c)(1)(2), that "[t]he legal obligation normally is presumed to be contained in the note or contract that evidences the agreement."

82.     Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures."

83.     At all times relevant during the liability period, Defendant's Option ARM loans violated 12 C.F.R. § 226.17(c) in that the Note(s) and TILDS did not disclose, and by omission, failed to disclose what Plaintiff's and the Class members' were legally obligated to pay.  In particular, the Note(s) charged these borrowers a much higher monthly amount than what Defendants disclosed.  Defendants

accomplished this deception by only listing a partial payment in the TILDS, rather than a payment amount that was sufficient to pay what these  borrowers were being charged for their loans, and were legally obligated to pay.

84.     As a direct and proximate result of Defendant's omissions and failures to clearly and conspicuously disclose Plaintiff's and the Class members' legal obligations under the loans, Defendants took the partial payments and secretly added the deficit, each month, to principal, thereby causing negative amortization to occur.

**C.     Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate Violates Truth in Lending Laws**

85.     12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the interest rate in a clear and conspicuous manner.  Further, a misleading disclosure is as much a violation of TILA as a failure to disclose at all.  Defendants failed to meet the disclosure mandates required of them concerning the interest rate Defendants actually applied to Plaintiffs' and Class members' loans, as well as the interest Defendants actually charged Plaintiff and the Class members.

86.     Defendants' disclosure in the Promissory Note concerning the interest rate is, at best, unclear and inconspicuous.  At worst, it is intentionally deceptive.  In either instance, it is certainly different than the interest rate set forth by Defendants in the TILD.  The interest rate information set forth by Defendants in the Note conflicts with the interest rate information set forth by Defendants in the TILDS.

87.     The interest rate set forth in the Note is the teaser rate that Defendant, in fact, applied to the loan for a single month.  However, at all times relevant during the liability period, Defendants did not make it clear in the Note(s) or TILDS that this low promised rate (the same rate upon which Defendants base the written payment schedule provided to Plaintiffs) is only offered for the first thirty (30) days of the loan.  In furtherance of their scheme, Defendants employed the most convoluted, confusing and circuitous methodology in describing the interest rate.  In particular, Defendants used terms like "may" when discussing potential interest rate increases, when in fact it was an absolute certainty the interest rate listed would only be provided for the first thirty days of the loan, and would be

1  raised when the first payment was due.  In one part of the Note, Defendants state that the promised low

2  interest rate is the rate until the "change date."  A description of the change date is found in another part

3  of the Note.  The convoluted and disjointed method employed by Defendants to provide this information

4  to consumers makes it extremely difficult, if not impossible, for anyone to determine that, in fact, that

5  the change date corresponds to the very first monthly payment Plaintiffs and the Class members made

6  on their loans.

7      88.    The convoluted language used by Defendants to disclose the interest rate on Plaintiffs'

8  and the Class members' loans is not clear and conspicuous.  Rather, the disclosures used by Defendants

9  were purposefully unclear and meant to mislead and deceive Plaintiffs and the Class members.  In

10  particular, it is virtually impossible to discern when Plaintiffs and the Class members would receive the

11  low interest rate they were promised, if, in fact, it can be determined at all.  And, the truth is that

12  Plaintiffs and the Class members never received the low interest rate, or in some cases received it for

13  only thirty days.  Defendants' promise of a low interest rate is and was wholly illusory and the

14  deception, as alleged herein, was uniformly practiced on Plaintiffs and all Class members by Defendants

15  to facilitate sales of their loans to consumers.

16      89.    The Note also sets forth the amount of Plaintiffs' and Class members' initial monthly

17  payments.  The "initial monthly payments" amount figure is exactly equal to what the payments would

18  be if the listed low interest rate promised to Plaintiffs by Defendants was true and was, in fact, applied

19  to the principal balance on the loans.  This is a further deception committed by Defendants, because the

20  real interest rate charged on the loans by Defendants is much higher than the low interest rate promised

21  to Plaintiff and the Class members.  Thus, the "initial monthly payment" amount provided by

22  Defendants was intended to and did deceive consumers into falsely believing that they would, in fact,

23  receive the teaser interest rate promised to them.

24      90.    The TILDS is also unfairly confusing and deceptive for much the same reason.  The

25  scheduled payments for the first three (3) to five (5) years of the loan lists payment amounts based on

26  the low "teaser" rate, with the agreed 7.5% annual increase in the payment amount.  In truth, however,

27  this payment schedule has no real relation to the interest rate Defendants actually charged Plaintiffs and

28  the Class members on their loans.

91.     At all times relevant during the liability period, Defendants failed to clearly, conspicuously and accurately disclose the actual interest rate applied to Plaintiffs' and Class members' loans.  Defendants also failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that the payment amounts listed in the payment schedule did not include any amount towards the principle on the loan and were, in fact, insufficient to pay all of the interest accruing.  Based on the payment schedule listed in the Note and TILDS, Plaintiffs and the Class members reasonably believed that the payments would be sufficient to meet the loan obligations in the Note(s).  However, the true fact is that the payment schedule provided by Defendants did not pay any principal on the loan at all and only included a partial payment towards the interest Defendants charged Plaintiffs and the Class members for these loans.

92.     At all times relevant during the liability period, Defendants failed to clearly, conspicuously and accurately disclose in the Note and TILDS a payment amount that was sufficient to pay both principle and interest.  Plaintiffs reasonably believed that if they made the payments according to Defendants' payment schedule, the payments would, in fact, be paying off both principal and interest.  However, the true fact is that the payment amounts stated in Defendants' payment schedule did not include any principal on the loans at all and were only a partial payment of the interest Defendants were charging on these loans.

93.     At all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform consumers that if they followed the payment schedule provided by Defendants, their payments will not be applied to principle at all and were not sufficient enough to cover all of the interest Defendantscharged on the loan(s).

**D.     Defendant's Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

94.     12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

§ 226.19.  Certain residential mortgage and variable-rate transactions. . . .

(b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's

1    principal dwelling with a term greater than one year, the following

2    disclosures must be provided at the time an application form is provided

3    or before the consumer pays a non-refundable fee, whichever is earlier. . .

4    (vii) Any rules relating to changes in the index, interest rate, payment

5    amount, and outstanding loan balance including, for example, an

6    explanation of interest rate or payment limitations, negative amortization,

7    and interest rate carryover. (Emphasis added.)

8    95.    The negative amortization disclosure is required and must be made clearly and

9    conspicuously, and done in a manner that does not obscure its significance.  The disclosure must state

10   whether the loan and payments established under the terms dictated by the lender is a negative

11   amortizing loan.

12   96.    In 1995, and continuing each time new Official Staff Commentary was issued, the

13   Federal Reserve Board made clear that when the loan was a variable rate loan with payment caps, such

14   as those that are the subject of this lawsuit, that the disclosure requires a definitive statement about

15   negative amortization:

16   12 CFR Part 226

17   [Regulation Z; Docket No. R-0863]

18   Monday, April 3, 1995

19   AGENCY: Board of Governors of the Federal Reserve System.

20   ACTION: Final rule; official staff interpretation.

21   "For the program that gives the borrower an option to cap monthly

22   payments, the creditor must fully disclose the rules relating to the payment

23   cap option, including the effects of exercising it (such as ***negative***

24   ***amortization occurs*** and that ***the principal balance will increase***)…"

25   (See C.F.R. § 226.19) (emphasis added).

26   97.    At all times relevant, statutory and common law in effect make it unlawful for a lender,

27   such as Defendant, to fail to comply with the Federal Reserve Board's Official Staff Commentary as

28   well as Regulation Z and TILA.

98.     Defendants sold Plaintiff and the Class members Option ARM loans which have a variable rate feature with payment caps.  Defendants failed to include any reference in the TILDS or in the Note(s) that negative amortization would occur if Plaintiff and the Class members followed the payment schedule provided by Defendant.

99.     In fact, the only place in the Note where Defendants even inferentially references negative amortization caused Plaintiff and all other similarly situated reasonable persons to believe that negative amortization was only a mere possibility, rather than an absolute certainty.  In fact, these loans were designed in such a way so as to make negative amortization an absolute certainty.  And, even when a separate explanation was provided, Defendants omitted the important material fact that these loans and payment schedules would, in fact, guarantee negative amortization.

100.    Defendant's statement in the Note(s) that "[i]f my monthly payment is less than the amount necessary to pay the full amount of interest for that month, the portion of interest that is unpaid will be added to the principal balance of my loan..." was an artfully contrived half-truth and did not alert or inform Plaintiff that the payment schedule provided by Defendants would absolutely guarantee that negative amortization was going to occur on these loans.  Rather, Defendants made it appear that as long as the payments were made according to the schedule listed in the TILDS, that there would be no negative amortization.

101.    At all times relevant, Defendants' statement in the Note, TILDS, and any other disclosures they provided, described negative amortization as only a mere possibility, and therefore was misleading and deceptive.  In fact, Defendants' Option ARM loan was designed in such a way as to guarantee negative amortization.  TILA demands more than a statement that the payment could be less, or "may" be less, when Defendants knew that the payments were less, and would always be less, than the full amount required to pay both principle and interest.

**E.      Defendant's Failure to Clearly and Conspicuously Disclose that the Initial Interest Rate is Discounted Violates Truth in Lending Laws**

102.    As previously stated, the informed use of credit means being able to make decisions, as well as being able to plan an individual's finances.  Every month consumers look at their income and budget where their funds must be paid.  The biggest investment in one's life is generally that person's

1    home.  In fact, it is often referred to as "the American Dream" to own a home.

2        103.    Variable rate loans are based on a "margin" and an "index."  The index is often the Prime

3    Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over that rate, basically

4    it is the lender's profit on the loan.

5        104.    TILA and Regulation Z require disclosures to be clear and conspicuous so people

6    understand what their obligations are.  In particular, when the payment is not based on that index and

7    margin a separate disclosure is required.  The disclosure must also inform that interest rate and payment

8    may go up and clearly and conspicuously provide  the circumstances under which the rate and payment

9    will increase.  Further, the disclosure must inform the borrower what the true cost of the loan is.

10       105.    The Federal Reserve Board established disclosure requirements for variable rate loans.

11   26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments

12   to borrowers.  If interest rate changes will be imposed more frequently or at different intervals than

13   payment changes, a creditor must disclose the frequency and timing of both types of changes.

14       106.    The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because

15   Plaintiff and other consumers similarly situated need this information in order to budget their money.

16   They need to know if their house payments are going to go up so that they can plan for it.  If the change

17   comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their

18   homes.

19       107.    Here, Defendants states only that the interest rate may increase in the future.  However,

20   an interest rate increase was in fact far more certain than this disclosure led Plaintiff and the Class

21   members to believe.  If Defendants had given the Plaintiffs and the Class members the promised low

22   interest rate for any initial period of time, the interest rate was guaranteed to go up even without any

23   change in the index.  Thus, the increase in the interest rate on these loans was not just a possibility; it

24   was an absolute certainty and Defendants failed and omitted this material information in their

25   disclosures to Plaintiff and the Class members.

26       108.    Defendants' loan documents state that the interest rate may increase during the term of

27   this transaction if the index increases.  This, however, was not the only circumstance that could cause an

28   increase in the interest rate because the disclosed interest rate was discounted.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1    109.    At all times relevant during the liability period, Defendants failed to disclose, and by

2    omission, failed to inform Plaintiffs and the Class members that the initial interest rate was discounted,

3    creating the possibility of an increase even when the index did not rise.  Due to the initial discounted

4    interest rate being listed at 1% to 3%, the interest rate would increase because the index and margin

5    were between 5% and 8% higher.  Even when Defendants did provide a disclosure that stated the initial

6    payment was not based on the index, it did so in a manner that was not clear and conspicuous.  Because

7    the loan documents failed to provide this extremely important material information in a clear and

8    conspicuous manner that did not obscure its importance, Defendant's disclosure failed to meet the

9    standards mandated under TILA.

10    110.    Defendants failed to disclose to Plaintiffs and the Class members that their interest rate

11    was, with 100% certainty, going to increase, regardless of whether or not the index upon which their

12    loans are based changed.  As such, Defendants violated TILA and Regulation Z by providing Plaintiffs

13    and the Class members with unclear, deceptive and poorly drafted or intentionally misleading

14    disclosures.

15    **F.    <u>Defendant's Failure to Disclose the Composite Interest Rate Violates Truth in</u>**

16    **<u>Lending Laws</u>**

17    111.    Defendants provided Plaintiffs and the Class members with multiple, conflicting interest

18    rates when describing the costs of this loan.  On the TILDS, Defendants set forth one interest rate, while

19    on the Note, Defendants set forth one or two other, different interest rates.

20    112.    The official staff commentary to 226 C.F.R. § 17(C)(8) states:

21    Basis of disclosures in variable-rate transactions. The disclosures for a

22    variable-rate transaction must be given for the full term of the transaction

23    and must be based on the terms in effect at the time of consummation.

24    Creditors should base the disclosures only on the initial rate and should

25    not assume that this rate will increase. For example, in a loan with an

26    initial rate of 10 percent and a 5 percentage points rate cap, creditors

27    should base the disclosures on the initial rate and should not assume that

28    this rate will increase 5 percentage points. However, in a variable-rate

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

transaction with a seller buydown that is reflected in the credit contract, a consumer buydown, or a discounted or premium rate, disclosures should not be based solely on the initial terms. ***In those transactions, the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term***. (See the commentary to section 226.17(c) for a discussion of buydown, discounted, and premium transactions and the commentary to section 226.19(a)(2) for a discussion of the redisclosure in certain residential mortgage transactions with a variable-rate feature.)

113.    The reason for this requirement is clear.  Consumers cannot make an informed decision when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon Defendants to show the composite interest rate in effect so that the borrowers can understand exactly what they will be paying for the loan.

114.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiffs and Class members by Defendants is a variable-rate loan.  At all times relevant during the liability period, Defendants listed an interest rate in the Note(s) that, in truth, would only be provided for the first thirty (30) days of the thirty year loan, and would, with one hundred percent certainty, be increased after that first month.  Because Defendants failed to clearly and conspicuously disclose the composite annual percentage rate on these loans, and instead listed different interest rates in different places in the documents provided to consumers, Defendants violated TILA and Regulation Z, and failed to provide disclosures that did not obscure relevant information.

115.    As a direct and proximate result of Defendants' violations of TILA, as alleged herein, Plaintiffs and the Class members have suffered injury in an amount to be determined at time of trial.  If Defendants had not violated TILA and had instead clearly and conspicuously disclosed the material terms of Defendants' Option ARM loan, as alleged herein, Plaintiffs and the Class members would not have entered into the home loan contracts which are the subject of this action.  Because Defendants

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1  failed to make the proper disclosures required under TILA, Plaintiffs and the Class members now seek

2  redress in an amount and/or type as proven at time of trial.

3      **G.    Defendant's Failure to Clearly and Conspicuously Disclose the Effect of the**

4          **Payment Cap on the True Cost of the Loan Violates Truth in Lending Laws**

5      116.    The Option ARM loans at issue each contained a variable rate feature with an initial

6  teaser rate with payment caps.  The payment cap is a limit on how much the payment may be increased

7  annually.  Its purpose is to provide borrowers with a limit on how much their payment can increase from

8  year to year.  The loans issued by Defendants had a 7.5% payment cap, which means that a borrower

9  would only see their payment rise each year by a maximum of 7.5%.  (i.e. a $1,000 monthly payment in

10 year one, could go to a $1,075 payment in year two.)

11     117.    The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1)(10)(iii)  states that "[i]f a

12 loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first

13 adjustment, from changing to the rate determined by the index or formula at consummation, the effect of

14 that rate or payment cap should be reflected in the disclosures."  Thus, at all times relevant during the

15 liability period, Defendants had a duty to Plaintiffs and the Class members to disclose the effect the

16 payment caps would have on the loans in the TILD.

17     118.    At all times relevant during the liability period, Defendants failed to disclose, and by

18 omission, failed to inform Plaintiffs and the Class members that the payment cap would cause hundreds,

19 if not thousands of dollars, each month, to be secretly added to principle.

20     119.    As a direct and proximate result, Defendants failed to disclose, and by omission, failed to

21 inform Plaintiffs and the Class members of the effect of the payment cap in violation of 12 C.F.R. §

22 226.17.

23     120.    WHEREFORE, Plaintiffs and the Class members are entitled to an order declaring that

24 Defendants violated TILA, 15 U.S.C. §1601, et seq., that Plaintiff  and the Class have the right to

25 rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, attorneys fees, litigation costs and

26 expenses and costs of suit, and for an order rescinding Plaintiff ' individual mortgage and those of any

27 class member desirous of such relief, and for an order awarding other relief as the Court deems just and

28 proper.

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

IX.

**SECOND CAUSE OF ACTION**

**FRAUDULENT OMISSIONS**

**(Against All Defendants)**

121.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

122.    As alleged herein, pursuant to TILA, 15 U.S.C. §1601, *et seq*.,  Regulation Z (12 C.F.R. §226 ) and the Federal Reserve Board's Official Staff Commentary, Defendants had a duty to disclose to Plaintiffs, and each Class member, (i) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principal balance *will* increase"; and (iii) that the initial interest rate on the note was discounted.

123.    Defendants further had a duty to disclose to Plaintiffs, and each Class member (i) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principal balance *will* increase"; and (iii) that the initial interest rate on the note was discounted, based upon Defendants partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur.

124.    The Note(s) state at ¶ 3 (A): "I will pay principal and interest by making a payment each month."   However, the true facts are that the payment rate provided by Defendants was insufficient to pay both interest and principal.  In fact, the payment rate was not even sufficient to pay enough interest to avoid negative amortization which, under the terms of the Note(s) was certain to occur.

125.    The Note(s) further state, at ¶ 3(F), "[i]f my monthly payment is less than the amount necessary to pay the full amount of interest for that month, the portion of interest that is unpaid will be added to the principal balance of my loan as of the due date for such payment and will accrue interest at the rate in effect from time to time in accordance with this Note."  However, the payment schedule provided by Defendants in the TILD were absolutely incapable of covering the amount of interest due and therefore this statement was false in that it omitted this material fact.

126.    The Note(s) state an interest rate and an initial payment amount based on that interest rate.  The TILDS Defendants gave to Plaintiffs and the Class members include the schedule of payments (including that initial payment rate) but yet disclose a different interest rate.  The payment schedule,

however, is wholly unrelated to the true interest rate being charged on the loan and, at all times relevant

during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and

the Class members of this important material information.

127.    The aforementioned omitted information was not known to Plaintiffs and the Class

members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by

making such statements and partial, misleading representations to Plaintiffs and all others similarly

situated.  Because the Option ARM loans did not provide a low interest rate for the first three (3) to five

(5) years of the Note, and the payment rate disclosed by Defendants were insufficient to pay both

principal and interest, negative amortization occurred.

128.    Defendants, and each of them, failed to disclose, and by omission failed to inform

Plaintiffs and each Class member that (i) the payment rate provided to Plaintiffs and the Class members

on the TILD was insufficient to pay both principal and interest; (ii) that negative amortization was

absolutely certain to occur if Plaintiffs and the Class members made payments according to the payment

schedule provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class

members residence was substantially certain to occur if Plaintiffs and the Class members made

payments according to the payment schedule provided by Defendants.

129.    As alleged herein, Defendants had a duty to disclose to Plaintiffs, and each Class member

and at all times relevant, failed to disclose and/or concealed material facts by making partial

representations of some material facts when Defendants had exclusive knowledge of material facts,

including but not limited to, (i) the disclosed interest was not the actual interest rate charged on the

Note(s), (ii) that negative amortization was certain to occur, and (iii) that the initial rate was discounted.

The concealed and omitted information was not known to Plaintiffs and the Class members and which,

at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements

and partial, misleading representations to Plaintiffs  and all others similarly situated.  Because the

Option ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note,

and the payment rate disclosed by Defendants was insufficient to pay both principal and interest,

negative amortization occurred.

130.    From the inception of Option ARM loan scheme, until the present, Defendants have

engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiffs and the Class members, regarding the true facts concerning the actual interest rate charged on the loans, the negative amortization that was certain to occur, and that the initial interest rate, in fact, was discounted, all of which Defendants were duty bound to clearly and conspicuously disclose to Plaintiffs and the Class members in the TILDS.

131.    Defendants have known from the inception of their Option ARM loan scheme that these loans, (i) do not provide the promised initial interest rate for the first three (3) to five (5) years of the Note, (ii) that negative amortization would occur and that Plaintiffs' and the Class members' principal balances would increase, and (iii) that the initial interest rate was discounted and did not accurately reflect the interest that consumers were being charged on the loans.

132.    Defendants purposefully and intentionally devised this Option ARM loan scheme to defraud and/or mislead consumers into believing that these loans would provide a low-interest rate loan, for the first three to five years of the note and that if they made their payments according to the payment schedule provided by Defendants that it would be sufficient to pay both principal and interest.

133.    The omitted information, as alleged herein, was material to Plaintiffs and each Class member in that had the information be disclosed, Plaintiffs and each Class member would not have entered into the loans.

134.    As a direct and proximate result of Defendants failures to disclose and omission of material facts, as alleged herein, Plaintiffs and each Class member have suffered damages, which include, but are not limited to the loss of equity Plaintiffs and each Class member had in their homes prior to entering these loans.

135.    The wrongful conduct of Defendants, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being of Plaintiffs , and others similarly situated.  Accordingly, Plaintiffs, and the others similarly situated seek punitive damages against Defendants in an amount to deter Defendants from similar conduct in the future.

136.    WHEREFORE, Plaintiffs and members of the Class are entitled to all legal and equitable remedies provided by law, including but not limited to actual damages, exemplary damages,

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

prejudgment interest and costs.

## VII.

### THIRD CAUSE OF ACTION

**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*., "Unfair"**

**and "Fraudulent" Business Acts or Practices,**

**(Against All Defendants)**

137.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

138.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in their capacity as private attorney generals against all Defendants for their unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business and Professions Code Sections 17200 et seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

139.    Plaintiffs assert these claims as they are representatives of an aggrieved group and as private attorney generals on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 et seq.

140.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices. Plaintiffs and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct. The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

141.    At all times relevant during the liability period, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loans. Defendants, and each of them, sold to Plaintiffs and the Class members a deceptively devised financial product. As alleged herein, Defendants sold their Option ARM loan product to consumers, including Plaintiffs, in a false or deceptive manner. As alleged herein, Defendants sold a loan which appeared to have a very low, fixed payment and interest rate for a period

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

of three (3) to five (5) years and no negative amortization. However, at all times relevant during the liability period, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members the true fact that Defendants' Option ARM loans were designed to, and did, cause negative amortization to occur.

142.    Defendants lured Plaintiffs and the Class members into the Option ARM loan with promises of low payment and low interest. Once Plaintiffs and the Class members entered into these loans, Defendants switched the interest rate charged on the loans to a much higher rate than the one they promised to Plaintiffs and the Class members. And, for a substantial number of the loans, after entering these loans, the Class members could not escape because Defendants purposefully placed into these loans an extremely onerous prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from these loans. Thus, once on the hook, these Class members could not escape from Defendants loans.

143.    Plaintiffs and the Class members were consumers who applied for a mortgage loan through Defendants. During the loan application process, in each case, Defendants uniformly promoted, advertised, and informed Plaintiffs and the Class members that in accepting these loan terms, Plaintiffs and the Class members would be able to lower their mortgage payment and save money.

144.    At all times relevant during the liability period, Defendants sold their Option ARM loan product as having a low payment and interest rate, i.e., typically between 1% and 3%. However, Defendants did not disclose that this was just a "teaser" rate, the purpose of which was to get consumers to enter into loan agreements with Defendants. Defendants did not disclose to Plaintiffs and the Class members that the "teaser" rate was not the fixed rate that Defendants would actually charge Plaintiffs and the Class members on their outstanding loan balances after the first thirty days. Nor did Defendants disclose that the corresponding payment schedule was not the true payment required, but was rather only a partial payment of the interest accruing on the loans.

145.    Based on Defendants' representations and misconduct as alleged herein, Plaintiffs and the Class members agreed to finance their primary residence through Defendants' Option ARM loan product. Plaintiffs and the Class members were told they were being sold a home loan with a low payment and interest rate. Plaintiffs and the Class members were also led to believe that if they made

1   payments based on this interest rate, and the payment schedule provided to them by Defendants, the loan

2   would be a no negative amortization home loan.  After, the fixed interest period, the loan documents

3   stated that the interest rate "may" change.  Plaintiffs and the Class members believed these facts to be

4   true because that is what the Defendants wanted consumers to believe.

5       146.    Defendants aggressively sold their product as a fixed low interest home loan.  Defendants

6   knew that if they sold these loans in such a manner, their Option ARM loan product would be a hugely

7   popular and profitable product for them.  Defendants also knew, however, that they were selling their

8   product in a false and deceptive manner.

9       147.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low

10  interest rate.  Unbeknownst to Plaintiffs and the Class members, the actual interest rate they were

11  charged on their loans was not fixed.  After purchasing Defendants' Option ARM loan product,

12  Plaintiffs and class members never actually received the benefit of the promised low interest rate, or, in

13  some cases, consumers received the low rate for just a single month.  Immediately, thereafter,

14  Defendants in every instance and for every loan increased the interest rate they charged Plaintiffs and

15  the Class members.  And, for a substantial number of the Class, once these Class members accepted

16  Defendants' Option ARM loan, they had no viable option to extricate themselves because as substantial

17  number of the loan contracts included a draconian pre-payment penalty.

18      148.    Defendants perpetrated this bait and switch scheme on Plaintiffs and the Class members

19  in a common and uniform manner.  Defendants' misconduct and failures to disclose the truth about the

20  actual interest rate charged on the loans and describing the loans as having a low payment that

21  corresponded to a listed "teaser" rate was, at all times relevant, deceptive and unfair.  Defendants

22  initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize

23  Defendants' profits.

24      149.    The acts, misrepresentations, omissions, and practices of Defendants alleged above

25  constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California

26  Business and Professions Code Sections 17200 et seq.

27      150.    By engaging in the above-described acts and practices, Defendants have committed one

28  or more acts of unfair competition within the meaning of Business and Professions Code Sections

-34-

1    17200, et seq.

2        151.    Defendants' conduct, as alleged herein, was likely to deceive members of the consuming

3    public, and at all times relevant during the liability period, Defendants' failures to disclose and omission

4    of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

5        152.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive

6    advantage over their competitors.

7        153.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

8    them, received monies and continues to hold the monies expended by Plaintiffs and others similarly

9    situated who purchased the Option ARM loans as described herein.

10        154.    In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a

11    constructive trust over, and restitution of, the monies collected and realized by Defendants.

12        155.    The harm to Plaintiffs, members of the general public and others similarly situated

13    outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants'

14    conduct herein constitutes an unlawful business act or practice within the meaning of California

15    Business & Professions Code Sections 17200 et seq.

16        156.    The unfair, deceptive and/or fraudulent business practices of Defendants, as alleged

17    herein, presents a continuing threat to members of the public to be mislead and/or deceived by

18    Defendants' Option ARM loans as described herein.  Plaintiffs and other members of the general public

19    have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring

20    and/or reoccurring in the future.

21        157.    As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged

22    herein, Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their

23    homes.  Plaintiffs and the Class members are direct victims of the Defendants' unlawful conduct, and

24    each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair

25    competition.

26        158.    WHEREFORE, Plaintiffs and members of the Classes are entitled to equitable relief,

27    including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

28    unfair, fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and a

1  permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

2

3                                              **X.**

4                               **FOURTH CAUSE OF ACTION**

5                                      **Breach of Contract**

6                                   **(Against All Defendants)**

7          159.    Plaintiffs  incorporate all preceding paragraphs as though fully set forth herein.

8          160.    Plaintiffs and the Class members entered into a written home loan agreement – the

9   contract or Note – with Defendants.  The Note(s) were drafted by Defendants and could not be modified

10  by Plaintiffs or the Class members.  The Note(s) describe the terms and respective obligations applicable

11  to the parties herein.

12         161.    The Note(s) state the interest rate on the loan at 1% to 3% and indicate that it "may"

13  change.  The payment schedule in the TILDS, for the first three (3) to five (5) years of the Note, are

14  based on that low 1% to 3% "teaser" interest rate.

15         162.    Defendants drafted the Note(s) and did not allow Plaintiffs or the Class members any

16  opportunity to make changes to the Note(s) and due to Defendants' superior bargaining position, the

17  Note(s) were offered on a take it or leave it basis.  As such, the Note(s) at issue are contracts of

18  adhesion.

19         163.    Defendants' Note(s) state, at ¶ 3 (A): "I will pay principal and interest by making a

20  payment each month."

21         164.    Defendants expressly and/or through their conduct and actions agreed that Plaintiffs' and

22  the Class members' monthly payment obligations would be sufficient to pay both the principal and

23  interest owed on the loans.

24         165.    At all times relevant during the liability period, Defendants breached this agreement and

25  never applied any of Plaintiffs' and the Class members' payments to principal.

26         166.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and

27  Class members' loans, show that the payment amounts owed by Plaintiffs and Class members to

28  Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the

                                              -36-

1  interest actually charged on the loan was the low interest rate promised.  If the Defendants did as

2  promised, the payments would have been sufficient to pay both principal and interest amounts.

3    167.    Instead, Defendants immediately raised Plaintiffs' and the Class members' interest rates

4  and applied ***no part*** of Plaintiffs' and the Class members' payments were applied to the principal

5  balances on their loans.  In fact, because Defendants charged more interest than was agreed to and

6  payments, as disclosed by Defendants, were, at all times relevant, insufficient to cover the interest

7  charge and thus principal balances increased (which is the negative amortization built into the loan).

8    168.    Defendants breached the written contractual agreement by failing to apply any portion of

9  Plaintiffs' and the Class members' monthly payments towards their principal loan balances.

10    169.    Plaintiffs and the Class members, on the other hand, did all of those things the contract

11  required of them.  Plaintiffs and the Class members made monthly payments in the amount required by

12  the terms of the Note and reflected in the payment schedule prepared by Defendants.

13    170.    As a result of Defendants' breach of the agreement, Plaintiffs and the Class members

14  have suffered harm.  Plaintiffs  and Class members have incurred additional charges to their principal

15  loan balance.  Plaintiffs  and Class members have incurred and will continue to incur additional interest

16  charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members'

17  principal loan balance.  Furthermore, Defendants' breach has placed Plaintiffs and the Class members in

18  danger of losing their homes through foreclosure as Defendants have caused Plaintiffs' and the Class

19  members' principal loan balances to increase and limited these consumers' ability to make their future

20  house payments or obtain alternative home loan financing.

21    171.    At all times relevant, there existed a gross inequality of bargaining power between the

22  parties to the ARM loan contracts.  At all times relevant, Defendants unreasonably and unconscionably

23  exploited their superior bargaining position and foisted upon Plaintiffs and the Class members extremely

24  harsh, one-sided provisions in the loan contract, which Plaintiffs and Class members were not made

25  aware of and did not comprehend (*e.g.*, Defendants fraud and failures to clearly and conspicuously

26  disclose as alleged herein), and which attempt to severely limit Defendants' obligations under these loan

27  contracts at the expense of Plaintiffs and the Class members, as alleged herein.  As a direct and

28  proximate result of these extremely harsh, one-sided provisions, including but not limited to the

1  provisions which seek to limit the "teaser" interest rate for one month or less, these provisions are

2  unconscionable and therefore unenforceable.

3       172.    WHEREFORE, Plaintiffs and members of the Class are entitled to declaratory relief,

4  compensatory damages proximately caused by Defendants breach of contract as alleged herein, pre-

5  judgment interest, costs of suit and other relief as the Court deems just and proper.

6

7  <center>**XI.**</center>

8  <center>**<u>FIFTH CAUSE OF ACTION</u>**</center>

9  <center>**Tortiuous Breach of Implied Covenant of Good Faith and Fair Dealing**</center>

10  <center>**(Against All Defendants)**</center>

11       173.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

12       174.    Defendants entered into written contracts with Plaintiffs and the Class members based on

13  representations Defendants made directly and indirectly to Plaintiffs and the Class members about the

14  terms of their loans.

15       175.    Defendants expressly and impliedly represented to Plaintiffs and the Class members that

16  they would provide loans secured by Plaintiffs' and the Class members' homes, and that the loans would

17  have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

18       176.    As alleged herein, Defendants loan documents also represented to Plaintiffs and the Class

19  members that if they made the monthly payments in the amount prescribed by Defendants that no

20  negative amortization would occur.  The Note(s) expressly state and/or imply that Plaintiffs' and the

21  Class members' monthly payment obligation *will* be applied to pay both principal and interest owed on

22  the loan.  The Note(s) further state that for each monthly payment Plaintiffs and the Class members

23  interest shall be paid before principal.

24       177.    The written payment schedules prepared by Defendants, and applicable to Plaintiffs' and

25  the Class members' loans, show that the payment amounts owed by Plaintiffs and the Class members to

26  Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the

27  interest actually charged on the loans was the low interest rate promised.  Thus, if Defendants had acted

28  as promised, the payments would have been sufficient to pay both principal and interest.

178.    Instead, Defendants immediately raised Plaintiffs' and the Class members' interest rate and applied *no part* of Plaintiffs' and the Class members' payments to principal. In fact, because Defendants charged more interest than was disclosed, and agreed to, in the loan contracts, Plaintiffs and the Class members' payments were insufficient to cover the interest that Defendants charged resulting in an increase in the amount of principal Plaintiffs and the Class members owed on their homes.

179.    At all times relevant during the liability period, Defendants fraudulently and unfairly interfered with Plaintiffs' and Class members' rights to receive the benefits of the contract. These loans will cost Plaintiffs and the Class members thousands of dollars more than represented by Defendants. Plaintiffs and the Class members did not receive the fixed low interest rate home loan promised them by Defendants. Defendants have caused Plaintiffs and the Class members to lose equity in their homes and therefore have denied Plaintiffs and the Class members the enjoyment, security of one of their most important investments.

180.    Plaintiffs and the Class members, on the other hand, did all of those things the contract required of them. Plaintiffs and the Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared and provided by Defendants.

181.    At all times relevant, Defendants unreasonably denied Plaintiffs and members of the Class the benefits promised to them under the terms of the Note(s), including but not limited to: (i) the promised low interest rate for the first three (3) to five (5) years of the loan as reflected in the payment schedule(s), (ii) payments to both principal and interest during the first three (3) to five (5) years of the loan; and (iii) secretly adding negative amortization to the principal balance(s), and charged interest on that unpaid interest.

182.    Knowing the truth and motivated by profit and market share, Defendants have knowingly, willfully, and fraudulently breached the implied covenant of good faith and fair dealing by engaging in the acts and/or omissions to mislead and/or deceive Plaintiffs  and others similarly situated as alleged herein.

183.    Defendants' toritiuous breaches, as alleged herein, were committed with malice and willful and wanton disregard for whether or not Plaintiffs or others similarly situated would actually receive a home loan that would provide the promised low interest and payment rate for the first three (3)

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1   to five (5) years of the loan sufficient to pay both principal and interest.

2   184.    Upon information and belief, and at all times relevant during the liability period,

3   Defendants possessed full knowledge and information concerning the above facts about the Option

4   ARM loans, and otherwise sold these loans throughout the United States, including the State of

5   California.

6   185.    Defendants' placing of their corporate and/or individual profits over the rights of others

7   is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on

8   the part of officers, directors, and/or managing agents of each corporate Defendants and/or taken with

9   the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified

10  said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or

11  conscious disregard for the rights and safety of others, including Plaintiffs  and the General Public.

12  186.    At all times relevant during the liability period, Defendants' conduct, as alleged herein,

13  was malicious, oppressive, and/or fraudulent.

14  187.    As a direct and proximate result of Defendants' toritiuous misconduct, as alleged herein,

15  Plaintiffs and the Class members have suffered harm.  Plaintiffs and the Class members have incurred

16  additional charges to their principal loan balances.  Plaintiffs and the Class members have incurred and

17  will continue to incur additional interest charges on their principal loan balances which Defendants has

18  secretly added to their principal loan balances.  Furthermore, Defendants' breach has caused and/or

19  otherwise placed Plaintiffs and the Class members in danger of losing their homes through foreclosure

20  and, as a direct and proximate result of said misconduct, caused Plaintiffs' and the Class members'

21  principal loan balances to increase limiting these consumers' ability to make their future house

22  payments or obtain alternative home loan financing.

23  188.    WHEREFORE, Plaintiffs and members of the Class are entitled to declaratory relief, all

24  damages proximately caused by Defendants breach of the implied covenant of good faith and fair

25  dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the

26  Court deems just and proper.

27  / / /

28  / / /

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs  and all Class members pray for judgment against each Defendants, jointly and severally, as follows:

A.     An order certifying this case as a class action and appointing Plaintiffs  and their counsel to represent the Class;

B.     For actual damages according to proof;

C.     For compensatory damages as permitted by law;

D.     For consequential damages as permitted by law;

E.     For punitive damages as permitted by law;

F.     For rescission;

G.     For equitable relief, including restitution;

H.     For restitutionary disgorgement of all profits Defendants obtained as a result of their unfair competition;

I.     For interest as permitted by law;

J.     For Declaratory Relief;

K.     For reasonable attorneys' fees and costs; and

L.     For such other relief as is just and proper.

DATED: February 8, 2008                    **SEEGER WEISS LLP**

By: _____/s/_____
                    Jonathan Shub, Esq.
                    1515 Market Street, Suite 1380
                    Philadelphia, PA 19107
                    Phone: (215) 564-2300
                    Fax (215) 851-8029

                    David M. Arbogast, Esq.
                    **SPIRO MOSS BARNESS LLP**
                    11377 W. Olympic Boulevard, Fifth Floor
                    Los Angeles, CA 90064-1683
                    Phone: (310) 235-2468
                    Fax:  (310) 235-2456

/ / /

/ / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

Paul R. Kiesel, Esq.
Patrick Deblase, Esq.
Michael C. Eyerly, Esq.
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone:  (310) 854-4444
Fax:  (310) 854-0812

Jeffrey K. Berns, Esq.
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:  (818) 867-4820

Attorneys for Plaintiffs, BRIAN O'DONNELL,
MICHAEL VAN BELLEGHEM, and PATRICIA
VAN BELLEGHEM, and all others Similarly Situated

## DEMAND FOR JURY TRIAL

Plaintiffs  hereby demands a trial by jury to the full extent permitted by law.

DATED: February 8, 2008                **SEEGER WEISS LLP**


By:  _____/s/_____
Jonathan Shub, Esq.
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300
Fax (215) 851-8029

David M. Arbogast, Esq.
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Phone: (310) 235-2468
Fax:  (310) 235-2456

Paul R. Kiesel, Esq.
Patrick Deblase, Esq.
Michael C. Eyerly, Esq.
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone:  (310) 854-4444
Fax:  (310) 854-0812

/ / /

/ / /

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffrey K. Berns, Esq.
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:  (818) 867-4820

Attorneys for Plaintiffs, BRIAN O'DONNELL,
MICHAEL VAN BELLEGHEM, and PATRICIA
VAN BELLEGHEM, and all others Similarly Situated

SECOND AMENDED CLASS ACTION COMPLAINT - C-07-04500 RMW