Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Phone: (215) 564-2300; Fax (215) 851-8029

Paul R. Kiesel, Esq. (SBN 119854)
kiesel@kbla.com
Patrick DeBlase, Esq. (SBN 167138)
deblase@kbla.com
Michael C. Eyerly, Esq. (SBN 178693)
eyerly@kbla.com
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211
Phone:  (310) 854-4444; Fax:  (310) 854-0812

David M. Arbogast (SBN 167571)
David@SpiroMoss.com
Ira Spiro (SBN 67641)
Ira@SpiroMoss.com
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Phone: (310) 235-2468; Fax:  (310) 235-2456

Jeffrey K. Berns, Esq. (SBN 131351)
jberns@jeffbernslaw.com
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000; Fax:  (818) 867-4820

Attorneys for Plaintiffs and all others Similarly Situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| BRIAN O'DONNELL, MICHAEL VAN BELLEGHEM, and PATRICIA VAN BELLEGHEM, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, NATIONAL ASSOCIATION a.k.a. BANK OF AMERICA, N.A., and DOES 1 through 10 inclusive, and DOES 1 through 10 inclusive, <br><br> Defendants. | **CASE NO. C-07-04500 RMW** <br><br> CLASS ACTION <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Hearing Date: April 25, 2008 <br> Time:         9:00 a.m. <br> Place:        Courtroom 6 <br> Judge:        Hon. Ronald M. Whyte <br><br> Complaint Filed: August 29, 2007 <br> Trial Date: Not yet set. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   The Legal Standards on a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   Plaintiffs Have Properly Pled a Valid Cause of Action Under TILA . . . . . . . . . . . . . . . 4

        1.   Overview of the Truth in Lending Act ("TILA") . . . . . . . . . . . . . . . . . . . . . . . 4

        2.   Defendant's Failure to Disclose the Actual Interest Rate Charged
on the Loans Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        3.   Defendant's Failure to Disclose That Negative Amortization Was Absolutely
Certain to Occur If Consumers Followed Defendant's Payment Schedules
Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        4.   Defendant's Failure to Disclose that the Initial Rate Was Discounted
Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        5.   Defendant's Failure to Disclose The Composite Interest Rate Violates TILA . 10

        6.   Defendant's Failure to Disclose that the Payment Schedules are Not Based
on the Actual Interest Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        7.   Defendant's Failure to Disclose Plaintiffs' True Legal Obligation
in the TILDS Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        8.   Defendant's Failure to Disclose the Effect of the Payment Cap on the True
Cost of the Loan Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.   Plaintiffs Have Properly Plead a Valid Fraudulent Omissions Claim . . . . . . . . . . . . . . 14

        1.   Defendant's Duty to Disclose Material Facts . . . . . . . . . . . . . . . . . . . . . . . . 14

        2.   Materiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        3.   Defendant's Knowledge of the Fraudulent Omissions - Scienter . . . . . . 16

        4.   Actual Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        5.   Justifiable Reliance - Presumed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    D.   Plaintiffs Have Properly Plead a Valid UCL Claim . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    E.   Plaintiffs Have Properly Plead a Valid Breach of Contract Claim . . . . . . . . . . . . . . . 21

    F.   Plaintiffs Have Properly Pled a Valid Claim for Tortious Breach of the Covenant
of Good Faith And Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

ii

1

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Opposition to Defendant's Motion to Dismiss - C-07-04500 RMW

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Affiliated Ute Citizens v. United States,
    (1972) 406 U.S. 128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Barnes v. Fleet National Bank,
    (1st Cir. 2004) 370 F. 3d 164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

Bell Atl. Corp. v. Twombly,
    (2007) ---U.S. ----, 127 S.Ct. 1955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Binder v. Gillespie,
    (9th Cir.1999) 184 F.3d 1059, 1064 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Celador Intern. Ltd. v. Walt Disney Co.
    (C.D.Cal. 2004) 347 F.Supp.2d 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cemail v. Viking Dodge,
    (N.D.Ill.1997) 982 F.Supp. 1296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Council Bluffs First National Bank, v.Office of the Comptroller of the Currency
    (8th Cir. 1991) 956 F.2d 1456.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Eby v. Reb Realty, Inc.,
    (9th Cir.1974) 495 F.2d 646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Erickson v. Pardus,
    (2007) ---US---, 127 S. Ct. 2197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Falk v. General Motors Corporation,
    (N.D. Cal. 2007) 496 F.Supp.2d 1008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20

Gilligan v. Jamco Dev. Corp.,
    (9th Cir.1997) 108 F.3d 246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gompper v. VISX, Inc.
    (9th Cir.2002) 298 F.3d 893 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re GlenFed, Inc. Sec. Litig.,
    (9th Cir.1994) (en banc) 42 F.3d 1541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25

In re Vylene Enterprises, Inc.,
    (9th Cir.1996) 90 F.3d 1472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re William M. Miller
    (Bankr.N.D.Cal. 2000) 253 B.R. 455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Jackson v. Grant,
    (9th Cir.1989) 890 F.2d 118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Lamke v. Sun-state Equipment Co., LLC
    (N.D.Cal. 2004) 387 F.Supp.2d 1044 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Odom v. Microsoft Corp.,
    (9th Cir. 2007) 486 F.3d 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25

Poulos v. Caesars World, Inc.,
    (9th Cir.2004) 379 F.3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

Ralls v. Bank of N.Y.
    (Bankr.E.D.Pa.1999) 230 B.R. 508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Semar v. Platte Valley Fed. Sav. & Loan Ass'n,
    (9th Cir.1986) 791 F.2d 699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Smith v Chapman,
    (5th Cir. 1980) 614 F.2d 968 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

Smith v. Cash Store Mgmt.,
    (7th Cir.1999) 195 F.3d 325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sparling v. Daou,
    (9th Cir.2005) 411 F.3d 1006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Swedish Civ. Aviation Admin. v. Project Mgmt. Enters. Inc.,
    (D.Md. 2002) 190 F.Supp.2d 785 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Swierkiewicz v. Sorema N.A.,
    (2002) 534 U.S. 506 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Syverson v. IBM Corp.
    (9th Cir.2007) 472 F.3d 1072.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Washington v. Baezinger,
    (N.D.Cal.1987) 673 F.Supp. 1478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 20


**STATE CASES**

Alliance Mortgage Co. v. Rothwell,
    (1995) 10 Cal.4th 1226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Angelucci v. Century Supper Club,
    (2007) 41 Cal.4th 160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Applied Equipment Corp. v. Litton Saud Arabia Ltd.,
    (1994) 7 Cal.4th 503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24

Bank of the West v. Superior Court
    (1992) 2 Cal.4th 1254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Belton v. Comcast Cable Holdings, LLC
    (2007) 151 Cal.App.4th 1224 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

v

Blakemore v. Superior Court
       (2005) 129 Cal.App.4th 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Blankenheim v. E.F. Hutton & Co.,
       (1990) 217 Cal.App.3d 1463 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Buller v. Sutter Health
       (2006) --- Cal.Rptr.3d --- . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Careau & Co. v. Security Pacific Business Credit, Inc.
       (1990) 222 Cal.App.3d 1371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.
       (1999) 186 Cal.App.3d 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Camacho v. Automobile Club of Southern California
       (2006) 142 Cal.App.4th 1394 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Copesky v. Superior Court
       (1991) 142 Cal.App.3d 678 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Daugherty v. American Honda Motor Co., Inc.
       (2006) 144 Cal.App.4th 824 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Engalla v. Permanente Medical Group, Inc.,
       (1997) 15 Cal.4th 951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Foster-Gardner, Inc. V. National Union Fire Ins. Co.
       (1998) 18 Cal.4th 857.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Freeman & Mills, Inc. v. Belcher Oil Co.
       (1995) 11 Cal.4th 85, 102.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24

Garcia v. Superior Court,
       (1990) 50 Cal.4th 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Gregory v. Albertson's Inc.
       (2002) 104 Cal.App.4th 845 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Guz v. Bechtel Nat. Inc.,
       (2000) 24 Cal.4th 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Harm v. Frasher,
       (1960) 181 Cal.App.2d 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Heliotis v. Schuman,
       (1986) 181 Cal.App.3d 646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hibernia Savings & Loan Soc. v. Lauffer
       (1940) 41 Cal.App.2d 725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Intrieri v. Superior Court,
       (2004) 117 Cal.App.4th 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lazar v. Superior Court,

vi

(1996) 12 Cal.4th 631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

LiMandri v. Judkins,
    (1997) 52 Cal.App.4th 326 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 15, 16

Lingsh v. Savage,
    (1963) 213 Cal.App.2d 729 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lovejoy v. AT & T Corp.,
    (2001) 92 Cal.App.4th 85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 26

Mitsui Mfrs. Bank v. Superior Court
    (1989) 212 Cal.App.3d 726 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

McDonald v. John P. Scripps Newspaper
    (1989) 210 Cal.App.3d 100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mirkin v. Wasserman,
    (1993) 5 Cal.4th 1082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

Motors, Inc. v. Times Mirror Co.
    (1980) 102 Cal.App.3d 735 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Pastoria v. Nationwide Ins.,
    (2003) 112 Cal.App.4th 1490 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

Price v. Wells Fargo Bank
    (1989) 213 Cal.App.3d 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Stamm Theaters, Inc. v. Emigh
    (2000) 84 Cal.App.4th 1175.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Small v. Fritz Companies, Inc.,
    (2003) 30 Cal.4th 167 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Smith v. State Farm Mutual Automobile Ins. Co.
    (2001) 93 Cal.App.4th 700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Vega v. Jones, Day, Reavis & Pogue,
    (2004) 121 Cal.App.4th 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wilhelm v. Pray, Price, Williams & Russell,
    (1986) 186 Cal.App.3d 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Wilkins v. National Broadcasting Co., Inc.,
    (1999) 71 Cal.App.4th 1066 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**FEDERAL STATUTES**

15 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1

## STATE STATUTES

2  Cal. Civ. Code § 51.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

3  Cal. Civ. Code § 1654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

4  Cal. Ins. Code, § 330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5  Cal. Pub. Util. Code, § 2889.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

6

7

## FEDERAL RULES

8  Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

9  Fed.R.Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

10  Fed.R.Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

11

## FEDERAL REGULATIONS

12

13  12 C.F.R. § 226.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

14  12 C.F.R. § 226.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 9, 10, 11, 12

15  12 C.F.R. § 226.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 12, 13

16  12 C.F.R. § 226.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 9, 11

17  12 C.F.R. § 226.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18  12 C.F.R. § 226.30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

19  Federal Reserve Board Official Staff Commentary to 12 C.F.R. § 226.2 . . . . . . . . . . . . . . . . . . . . . 7

20  Federal Reserve Board Official Staff Commentary to 12 C.F.R. § 226.17 . . . . . . . . . . . . . . . 9, 10, 12, 13

21  Federal Reserve Board Official Staff Commentary to 12 C.F.R. 226.19 . . . . . . . . . . . . . . . . . . . 7, 10

## TREATISES

22

23  W.L. Stern, Bus. & Prof. C. § 17200 Practice, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs and thousands of similarly situated consumers are in imminent threat of losing their homes due to Defendant's misleading and deceptive Adjustable Rate Mortgages (hereafter "ARM loans.")  See Second Amended Complaint ("SAC"), ¶¶ 40-44.

This consumer fraud class action has been brought against Defendant BANK OF AMERICA, NATIONAL ASSOCIATION a.k.a. BANK OF AMERICA, N.A. ("Defendant" or "Bank of America") for its deceptive and unfair practices in connection with the sale and servicing of Defendant's adjustable rate mortgages or "ARM loans."  In particular, Plaintiffs' class claims seek to redress Defendant's failure to disclose important material facts concerning the ARM loans it sold to Plaintiffs and the Class. Accordingly, this consumer class action is primarily based on Defendant's failures to disclose material facts relating to its ARM loans.  Poulos v. Caesars World, Inc. (9th Cir.2004) 379 F.3d 654, 667; Binder v. Gillespie (9th Cir.1999) 184 F.3d 1059, 1064; see also Defs. Mtn. 1:20-21 ("[Plaintiffs] primarily contend that Bank of America failed to adequately disclose the terms of their loans...")

Defendant seeks to have Plaintiffs' claims dismissed by relying on its partial and incomplete disclosures which failed to disclose and/or concealed important material information.  The issue is not whether any disclosures were made, it is whether  Defendant omitted and/or made partial disclosures of some facts, omitting and concealing important material facts thus rendering its disclosures  unclear, inconspicuous, and not incomplete.  As will be discussed in greater detail below, Plaintiffs have alleged sufficient facts to show that Defendant failed to clearly and conspicuously disclose important material information to Plaintiffs, and when Defendant did make disclosures, it did so by either omitting other facts or by minimizing material (and negative) terms of the loans through the careful  use of words like "may" and "If."

The cumulative effect of Defendant's failures was to conceal from Plaintiffs key features of the ARM loans.  Among the features that were concealed include the actual interest rate being charged, the fact that payment plans provided to Plaintiffs were insufficient to pay both principal and interest, and that negative amortization was *absolutely certain* to occur under the disclosed payment schedule.  SAC, ¶¶ 36-37, 40-41, 44.  Accordingly, Plaintiffs seek relief for  fraudulent omissions (SAC, ¶¶ 122-135),

1

1  violation of California's Unfair Competition Law ("UCL"), Bus & Prof Code § 17200 *et seq.* (SAC,

2  ¶¶138-157), and Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing (SAC, ¶¶

3  174-187). Moreover, Defendant's concealment of negative amortization is not merely a violation of

4  TILA, but constitutes a breach of contract with Plaintiffs, which expressly provided that monthly

5  payments would be applied to interest *and* principal. (SAC, ¶¶ 160-171).

6        As to Plaintiffs' fraudulent omission claim, Defendant only argues that it had no duty to disclose

7  important material information when TILA mandated that it make certain disclosures, such as negative

8  amortization *will* occur and the principal balance *will increase*.  SAC, ¶ 96, 122.  Furthermore,

9  Defendant's duty arises from its exclusive knowledge of material facts not known to Plaintiffs, and from

10  its active concealment and partial representations, u.g. that negative amortization "may" occur, when in

11  truth, negative amortization was absolutely **certain** to occur given the way that "Defendant[], through

12  the standardized loan documents [it] created and supplied to Plaintiffs...."  SAC, ¶ 33 (italics and bold

13  added); LiMandri v. Judkins (1997) 52 Cal.App.4th 326, 336.

14        Similarly, Defendant's arguments concerning Plaintiffs' tortious breach of the implied covenant

15  of good faith and fair dealing also fail, because the covenant is not limited to fiduciary relationships as

16  Defendant argues, but is permissible where there is a violation of "an independent duty arising from

17  Principals of tort law."  Freeman & Mills, Inc. v. Belcher Oil Co. (1995) 11 Cal.4th 85, 102, quoting

18  Applied Equipment Corp. v. Litton Saud Arabia Ltd. (1994) 7 Cal.4th 503, 515.

19        Defendant also does not challenge the gravamen of Plaintiffs UCL claim, but instead, only

20  argues that the alleged fraudulent conduct is not described with sufficient detail.  However, Defendant

21  overlooks the well established rule that fraud by omission claims do not need to meet the strict

22  requirements of the Rule 9(b) of the Federal Rules of Civil Procedure.  Washington v. Baezinger

23  (N.D.Cal.1987) 673 F.Supp. 1478, 1482.

24        And, despite having adequately alleged each element for Plaintiffs breach of contract claim,

25  Defendant argues that the contractual provision, "***I will pay Principal and interest by making a***

26  ***payment every month***," means something other than the clear meaning of these words, and would not be

27  applied to both "principal and interest."   However, Defendant's arguments are completely contrary to

28  the plain meaning of the language it elected to use in the loan contracts.

1    Plaintiffs' complaint adequately alleges statutory and common law claims. Accordingly,

2    Defendant's motion to dismiss should be denied in its entirety.

3    **II.      STATEMENT OF FACTS**

4    Plaintiffs are consumers who applied for a primary residence mortgage through Defendant.

5    SAC, ¶¶ 2-3.  Defendant sold Plaintiffs the ARM loan at issue.  SAC, ¶ 25.  In selling these loans,

6    Defendant's loan documents promised a low, fixed interest rate, and Plaintiffs relied upon that promise.

7    SAC, ¶¶ 28, 133.  In reality, the interest rate increased almost immediately after signing.

8    Defendant's loan documents also promised that Plaintiffs' monthly payments would be applied

9    to "principal and interest."  SAC, ¶¶ 70, 124-125.  Defendant breached that agreement and never applied

10   Plaintiffs' payments to principal.  Id; see also SAC, ¶¶ 163, 165.  Defendant further informed Plaintiffs

11   that if they made payments based on the promised low interest rate, no negative  amortization would

12   occur.  SAC, ¶ 29, 70, 101, 145.  This, however, was not true, because Plaintiffs experienced negative

13   amortization.  SAC, ¶ 41, 127, 129.  Finally, for  a substantial number of the Class members, they could

14   not escape from the loans because of harsh exit penalties.  SAC, ¶ 34.  Plaintiffs have brought this civil

15   action seeking compensatory, consequential, statutory, and punitive damages.

16   **III.     ARGUMENT**

17        **A.      The Legal Standard on a Motion to Dismiss**

18   Federal Rule of Civil Procedure 12(b)(6) provides that a pleading may be challenged for failing

19   to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The minimum pleading

20   requirement is set by Rule 8(a), requiring a complaint to include "a short and plain statement of the

21   claim showing that the pleader is entitled to relief" in order to "give the  defendant  fair notice of what

22   the plaintiff's claim is and the  grounds upon which it rests."  Swierkiewicz v. Sorema N.A. (2002) 534

23   U.S. 506, 512; see also Erickson v. Pardus (2007) --- U.S. ---, 127 S.Ct. 2197, 2200 (per curiam).  While

24   a complaint "does  not  need  detailed  factual  allegations," the "[f]actual allegations must  be enough

25   to raise a right to  relief  above  the  speculative level."  Bell Atl. Corp. v. Twombly (2007) ---U.S. ---,

26   127 S.Ct. 1955, 1964-65.  A complaint must allege "enough facts to state a claim to relief that is

27   plausible on its face." Id. at 1974.

28

3

When considering a motion to dismiss under Rule 12(b)(6), plaintiff's complaint is liberally construed  and all well-pleaded facts are taken as true.  <u>Syverson v. IBM Corp.</u> (9th Cir.2007) 472 F.3d 1072, 1075.    If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear  that  the complaint can not be saved  by  any amendment.  <u>See</u> <u>Sparling v. Daou</u> (9th Cir.2005) 411 F.3d 1006, 1013, <u>cert</u>. <u>denied</u>, 546 U.S. 1172 (2006); <u>Gompper v. VISX, Inc.</u> (9th Cir.2002) 298 F.3d 893, 898.  It is for these reasons that  motions to dismiss generally are viewed with disfavor and are rarely granted.  <u>See</u> <u>Gilligan v. Jamco Dev. Corp.</u> (9th Cir.1997) 108 F.3d 246, 249.

Rule 9(b) of the Federal Rules of Civil Procedure also poses no obstacle here.  While Rule 9(b) imposes a stricter pleading requirement than that is required by Rule 8, a fraud by omission claim does not need to meet the strict requirements of the Rule 9.  <u>See</u> <u>Washington v. Baezinger</u> (N.D.Cal.1987) 673 F.Supp. 1478, 1482  (noting that in fraud by omission  cases, "a plaintiff  cannot  plead  either the specific time of the omission or the place, as he is not alleging an act, but a failure to act.").  Indeed, in <u>Falk v. General Motors Corporation</u>, (N.D. Cal. 2007) 496 F.Supp.2d 1008, 1098-99, the court ruled that a "plaintiff in a fraud by omission suit will not be able to specify the time, place and specific content of an omission as precisely as would a plaintiff in a false representation claim. . . . [A] fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim." <u>See</u> <u>also</u> <u>Swedish Civ. Aviation Admin. v. Project Mgmt. Enters. Inc.</u> (D.Md. 2002) 190 F.Supp.2d 785, 799.

 To the extent the Court finds that Plaintiffs have not adequately raised *any* of the legal theories discussed herein, Plaintiffs respectfully request leave to amend to include those allegations and claims.

### B.     Plaintiffs Have Properly Pled A Valid Cause of Action Under TILA

#### 1.     <u>Overview of the Truth in Lending Act ("TILA")</u>

As a comprehensive consumer protection statute, TILA seeks to protect consumers by requiring certain disclosures to consumers for certain types of loans.  "Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions."  <u>Semar v. Platte Valley Fed. Sav. & Loan Ass'n</u> (9th Cir.1986) 791 F.2d 699, 705.  TILA is a remedial statute, to be interpreted liberally in favor of the consumer.  <u>Jackson v. Grant</u> (9th Cir.1989) 890 F.2d 118, 120, citing <u>Eby v. Reb Realty, Inc.</u> (9th Cir.1974) 495 F.2d 646, 650; "To insure that the consumer is protected ... [the TILA

1  and accompanying regulations must] be absolutely complied with and strictly enforced." <u>Jackson</u>, 890

2  F.2d at 120, quoting <u>Semar</u>, 791 F.2d at 704) (brackets in original).

3         **2.**          **Defendant's Failure to Disclose the Actual Interest Rate Violates TILA**

4         Plaintiffs have alleged that Defendant violated TILA, 12 C.F.R. § 226.17 and 12 C.F.R. §

5  226.19 as "Defendant[] failed to meet the disclosure mandates required of them concerning the interest

6  rate Defendant actually applied to Plaintiffs' and the Class members' loans." SAC at ¶¶ 91-92.

7         Section 226.17 (a)(1) provides that each disclosure provided by the Defendant must not cause

8  another disclosure to be obscured or become less clear. This section also requires disclosures to be:

9  "*Clear and conspicuous*. This standard requires that disclosures be in a reasonably understandable

10  form. For example, while the regulation requires no mathematical progression or format, the

11  disclosures must be ***presented in a way that does not obscure the relationship of the terms to each***

12  ***other***."12 C.F.R. § 226.17 (a)(1) (italics and bold added).

13         Plaintiffs have adequately alleged that material information was obscured by virtue of the way in

14  which Defendant drafted its disclosures and loan documents. Plaintiffs stated that Defendant listed an

15  interest rate on the note of 1%-3%. SAC at ¶ 35. Defendant listed payment obligations in the payment

16  schedule based on that 1%-3% rate. SAC at ¶ 75, Ex. 1 (0001), and Ex. 2 (0001). Defendant, however,

17  listed a completely different interest rate on the Truth in Lending Disclosure Statements ("TILDS")

18  that is unrelated to the payment schedule. SAC at ¶ 75. The only way that consumers could possibly

19  understand that the payment schedule is completely unrelated to the interest rate listed on the TILDS is

20  if they used a sophisticated mortgage calculation device. Without it, it is virtually impossible for

21  consumers to understand that the payment amounts listed in the TILDS are based on the teaser rate and

22  not the true interest rate.

23         Neither the TILDS nor the Note provided by Defendant disclose that the interest rate listed

24  on the TILDS is wholly unrelated to the payments listed in that same document. For example, the Note

25  Defendant provided to Plaintiff O'Donnell lists an interest rate of 1.000% and the monthly payment

26  amount, for the first year of the loan, is identified as $1,505.28. Ex. 1, 00001. However, if the

27  payment amounts were based on the interest rate listed in the TILDS, the monthly payment amount

28  would be significantly higher than the payment amount provided. Therefore, Defendant violated §

226.19 in that it failed to clearly and conspicuously disclose this important material fact.  This practice

is, and was, misleading and deceptive.  SAC, ¶¶ 36-38.

Section 226.17(c)(1) provides, in relevant part: "If  the lower rate is not reflected in the credit

contract between the consumer and the bank and the consumer is legally bound to the 15% rate from the

outset, the disclosures given by the bank must not reflect the seller buydown in any way."

Here, although the ARM loans at issue do not include a buydown feature, the result is the same.

Defendant did not disclose payment amounts sufficient to pay both "Principal and interest" but instead

disclosed payments that bear no relation whatsoever to the interest rate Defendant actually charged on

the loans.  See SAC, Exs. 1 and 2, ¶ 3(A)(00001) ("I will pay *principal and interest* by making

payments every month") (italics and bold added).

In fact, here, Defendant completely failed to state in the Note and TILDS that the payment

amounts were completely insufficient to pay both principal and interest.  SAC, ¶ 37, 70.  Thus, as

alleged, this practice is, and was, misleading and deceptive.  SAC, ¶¶ 70-76.  Moreover, Defendant

failed to clearly and conspicuously disclose the true cost of the loan, and therefore obscured the

relationship between the interest it charged and the interest rate upon which the payment schedules were

based.  Plaintiffs' complaint alleges a violation of § 226.17(c)(1).  SAC at ¶¶ 76-78.

Nevertheless, Defendant argues that 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 do not apply to

these loans.   The Code of Federal regulations that implement TILA are broken down into subparts.

Subpart C relates to closed end credit transactions.[1]  Subpart C which contains §§ 226.17-226.24

requires Defendant to make all disclosures relating to loans clearly and conspicuously.  Defendant offers

no legal support for the claim that the disclosures relating to closed-ended loans and set forth in 12

C.F.R. § 226.30 are exempt from the protections of Subpart C.  Importantly, the Federal Reserve Board

Official Staff Commentary provides, without exception or limitation, that "Subpart C contains the

---

[1]  Closed-end credit is defined under Regulation Z as any credit arrangement that is not "open-ended" credit.  12 C.F.R. § 226.2(a)(10).  Open-ended credit is defined as any credit arrangement in which: "(i) The creditor reasonably contemplates repeated transactions; (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid."  12 C.F.R. 226.2(a)(20).  Essentially, an open-ended credit line is treated differently for purposes of disclosure than a closed-ended transaction like a mortgage with a fixed term and period.

Plaintiffs' Opposition to Motion to Dismiss - C-07-04500 RMW

disclosure rules for closed-end credit when the obligation is subject to a finance charge or is payable by written agreement in more than 4 [sic] installments" as is the case in Plaintiffs' loans. See Federal Reserve Board ("FRB") Official Staff Commentary to 12 C.F.R. § 226.2(a)(10), pt 226, Supp. I, cmt 2(a)(10) (Declaration of Jonathan Shub in Support of Plaintiffs' Opposition to Motion to Dismiss ('Shub Decl.', Exhibit 1).

Yet, Defendant argues that Plaintiffs have confused APR with actual interest rate, when Plaintiffs made no such contention. As alleged, by placing the 1% interest rate in the Note itself and basing the payment schedule listed in the TILDS on that initial rate, Defendant failed to disclose the actual interest rate charged in a clear and conspicuous manner, as required under 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19

### 3. **Defendant's Failure to Disclose That Negative Amortization Was Absolutely Certain to Occur If Consumers Followed Defendant's Payment Schedules Violates TILA**

Plaintiffs have properly alleged that Defendant violated TILA, 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19, in that it failed to clearly and conspicuously disclose that negative amortization was certain to occur if Plaintiffs followed the payment schedules provided by Defendant. See SAC, ¶¶ 94-101.

As discussed above, the ARM loans sold to Plaintiffs and the Class members contained a cap on monthly payment increases. SAC, Exs. 1 and 2, ¶ 4(E) (00002). For example, Plaintiffs' loan documents state that, "[m]y monthly payment will not increase or decrease by more than 7.5% from the payment in effect just prior to the change ('Annual Payment Cap'). . . ." Id.

The Federal Reserve issued binding commentary that added a requirement of a more definitive statement for variable rate loans with payment caps, such as these ARM loan. In particular, Official Staff Commentary provides, in relevant part: "If a consumer is given the option to cap monthly payments, the creditor must fully disclose the rules relating to the option, including the effects of exercising it (***such as negative amortization occurs and that the principal balance will increase***)…" See FRB Official Staff Commentary to 12 C.F.R. § 226.19(b), pt 226, Supp. I, cmt 19(b)(2)(vii)-2 (italics and bold added) (Shub Decl. Ex. 2)

Defendant argues that Plaintiffs did not include allegations that the "Program Disclosure" failed to adequately disclose negative amortization. Plaintiffs' SAC alleges "[a]nd, even when a separate

1   explanation was provided,  Defendant omitted the important material fact that these loans and payment

2   schedules would, in fact, *guarantee negative amortization*." <u>See</u> SAC, ¶ 99 (italics and bold added).

3       Defendant, without providing any foundation that Plaintiffs even received such a notice, attaches

4   a purported "Program Disclosure" that is, in an of itself, defective because it does not include the

5   required language "negative amortization occurs and that the principal balance *will* increase," but

6   reiterates the deficiencies apparent on the face of the Note and TILDS.  <u>See</u> Sullivan Decl. Ex. A.)  In

7   particular, Defendant's purported "Program Disclosure" states, "your loan payment is based on the

8   interest rate, loan term and loan balance." (Sullivan Decl. Ex. A at "How Your Interest Rate and

9   Payment Are Determined" ¶ 2, p. 1.)  This purported disclosure then goes on to state, "[t]he initial

10  interest rate *may not* be based on the index that is used to make later adjustments. It *may* be less than

11  the index plus a margin.  *If* your initial interest rate is discounted, the rate *may* increase at the first

12  adjustment date, even if the index stays the same or decreases." <u>Id</u>. (italics and bold added.)

13      While the FRB's Official Staff Commentary, the FRB chose to use passive terms such as

14  "should" or "may" for many of the disclosures, this is not case with respect to negative amortization.

15  With respect to that disclosure in the context of the ARM loans at issue, the FRB requires an explicit

16  statement that "*negative amortization occurs and that the principal balance will increase*."  Thus,

17  when the FRB uses terms such as "must" or "should," "a fair reading of the Commentary is that the FRB

18  intended the disclosure of a composite APR to be *mandatory*."  <u>See</u> <u>Council Bluffs</u>, 956 F2d at 1461

19  (discussing FRB's use of the terms "must" and "should" in the Commentary to 12 C.F.R. § 226.18(f).

20      Here, Defendant's Note and purported "Program Disclosure" are intentionally misleading as they

21  state that negative amortization is only a mere possibility:  "*If my monthly payment is less* than the

22  amount necessary to pay the full amount of interest for that month, the portion of interest that is unpaid

23  will be added to the principal balance of my loan as of the for such payment and will accrue interest at

24  the rate in effect *from time to time* in accordance with this Note."  SAC ¶ 4(F) (italics and bold added);

25  <u>see also</u> SAC ¶ 4(H) ("*If the Required Payment is insufficient* to fully amortize my loan as a result of

26  the application of the Annual Payment Cap or principal balance adjustments...");  <u>see also</u> Sullivan Decl.

27  Ex. A at "How Your Monthly Payment Can Change" ¶ 7, p. 2 ("*If* interest on your loan is more than the

28  minimum payment, your loan will have deferred interest, also known as negative amortization") (italics

8

and bold added).   Nowhere does Defendant simply state, even in the Program Disclosures it improperly

introduces, that negative amortization *will* occur.

The Note also states at ¶ 3 (A) that, "*I will pay principal and interest* by making a payment

every month." SAC, Exs. 1 and 2 (italics and bold added).   However, ignoring this plain language that

each payment would be applied to both "principal and interest," Defendant argues that its disclosure that

negative amortization "*may*" occur only "*if*" Plaintiffs payments are insufficient to pay both principal

and interest was sufficient.   However, as alleged Defendant failed to disclose the true facts that these

loans were designed to guarantee that negative amortization was going to occur. SAC, ¶ 101.

The sufficiency of TILA disclosures are "to be viewed from the standpoint of an ordinary

consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor."

Smith v. Cash Store Mgmt. (7th Cir.1999) 195 F.3d 325, 328, quoting  Cemail v. Viking Dodge

(N.D.Ill.1997) 982 F.Supp. 1296, 1302.  And, a misleading disclosure is as much a violation of TILA as

a complete failure to disclose.  Barnes v. Fleet National Bank (1st Cir. 2004) 370 F. 3d 164, 174,

quoting Smith v Chapman (5th Cir. 1980) 614 F.2d 968, 977.

Here, Defendant violated § 226.17, § 226.19 and Official Staff Commentary to § 226.19 (b) in

that it failed to clearly and conspicuously disclose that ***the "loan was designed in such a way as to***

***guarantee negative amortization."***  SAC, ¶ 101 (italics and bold added).  Instead, Defendant stated that

negative amortization was only a mere possibility,  misleadingly stating that negative amortization may

only occur from time to time, when in reality negative amortization was absolutely certain to occur.

SAC, ¶ 100.

### 4.    Defendant's Failure to Disclose That the Initial Rate Was Discounted Violates TILA

Plaintiffs have adequately alleged that Defendant violated TILA in failing to inform Plaintiff and

the Class members that the interest rate for month one was discounted and not based on the interest rate

and margin the Note required.  SAC, ¶¶ 107-109. A "discounted rate" is one that is not based upon the

index or formula used to calculate later interest rate adjustments.  See FRB Official Staff Commentary

to 12 C.F.R. §226.17(a)(1), pt 226, Supp. I, cmt 17(a)(1)-10 (Shub Decl., Ex. 3).  Regulation Z requires

that, when a loan features a discounted interest rate, that fact must be clearly and conspicuously

9

1  disclosed.  See FRB Official Staff Commentary to 12 C.F.R. §226.19(b)(2), pt 226, Supp. I, cmt

2  19(b)(2)(v)-1 (Shub Decl., Ex. 2) ("If the initial interest rate will be a discount or a premium rate,

3  creditors must alert the consumer to this fact."); 12 C.F.R. §226.17(a)(1) ("The creditor shall make the

4  disclosures required by this subpart clearly and conspicuously in writing….")

5      The Note lists the interest rate at 1%, and indicates it may increase in accordance with the terms

6  of the Note.  Plaintiffs were not informed in the Note that the interest rate would, with 100% certainty,

7  increase because the 1% rate was discounted.  SAC, ¶ 107.

8      Defendant simply argues that "Plaintiffs make no claim that Bank of America's program

9  disclosure was non-compliant." Defs Mtn at 12:25.  However, Plaintiff's SAC plainly alleges that,

10  "Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members ***that***

11  ***the initial interest rate was discounted, creating the possibility of an increase even when the index did***

12  ***not rise***" SAC, ¶ 109 (italics and bold added).

13      Thus, contrary to Defendant's bald assertion, Plaintiffs have adequately alleged that Defendant's

14  disclosures, including the purported "Program Disclosure,"omitted important material information

15  concerning the fact that the initial interest rate was discounted.  SAC, ¶¶ 102-110. Defendant has

16  therefore violated 15 U.S.C. § 1601, § 226.17 and § 226.18.

17      **5.    Defendant's Failure to Disclose The Composite Interest Rate Violates TILA**.

18      12 C.F.R. § 226.17(c)(8) requires that, when representing that an interest rate that is variable and

19  will fluctuate at different levels throughout loans term, the lender must disclose the composite interest

20  rate rather than merely disclose the discounted teaser rate.

21      The FRB Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states:

22          "in a variable-rate transaction with a...discounted or premium rate,
            ***disclosures should not be based solely on the initial terms***. In those
23          transactions, the disclosed annual percentage rate should be a composite
            rate based on the rate in effect during the initial period and the rate that is
24          the basis of the variable-rate feature for the remainder of the term."

25  See Id., pt 226, Supp. I, cmt 17(c)(1)-8 (Shub Decl., Ex. 3) (italics and bold added).

26      Defendant concedes that the reason for such disclosures is clear: to allow consumers to make an

27  informed decision.  Def. Mtn., 9:1-3 (discussing 12 C.F.R. § 226.22).  It is therefore incumbent upon

28

---

10

Defendant to show the composite interest rate in effect so that the borrowers can understand exactly what they will be paying for the loan.  SAC, ¶ 113.

Here, Defendant charged Plaintiffs an interest rate of 7.680% for 360 months, but lowered that rate to 1% for only the very first month of the loan.  Defendant listed the 1% interest rate, and stated that the rate "MAY" go up, when Defendant knew, in fact, that the interest rate was guaranteed to go up in the very first month of the loan.  SAC, ¶ 114.  Thus, by listing the 1% interest rate, Defendant did very thing that TILA was meant to avoid: the dissemination of confusing and misleading terms in consumer loan transactions.

Nevertheless, Defendant argues that it is  "particularly confus[ed] [by] this set of allegations." Defs. Mtn. 13:2-3.  However, Defendant's "confusion" was of its own doing in that it  knowingly and intentionally provided Plaintiffs and the Class members with the conflicting information.  SAC, ¶ 114. The fact that Defendant created the "confusion" by providing contradicting terms is itself an violation of TILA.  Ralls v. Bank of N.Y. (Bankr.E.D.Pa.1999) 230 B.R. 508, 516.

Accordingly, Defendant's failure to disclose the composite interest rate violates TILA.

## 6. Defendant's Failure to Disclose that the Payment Schedules are not Based on the Actual Interest Rate

Here, Plaintiffs have properly alleged that Defendant violated TILA, 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19, "in that [it] have failed to clearly and conspicuously disclose the interest rate upon which the payments listed in the TILDS are based." SAC at ¶ 67.  Section 226.17 (a)(1) provides that each disclosure be: "*Clear and conspicuous*" and be "***presented in a way that does not obscure the relationship of the terms to each other***."  (italics and bold added).

The TILDS provided by Defendant disclose an interest rate that is wholly unrelated to the payments listed in the schedule.  SAC, ¶ 67, 68.  Exacerbating this violation of TILA, Defendant promised that the listed payment would cover both principal and interest, but bore no relationship to such costs.  Id. ¶ 70, 73.  Indeed, the asserted payment schedule (based on the disclosed rate) would be insufficient to cover even all of the interest.  Id. ¶ 76.

Defendant does not address the deceptive nature of its payment plan, or the variance with the "actual interest rate" listed alongside the payment disclosure.  Indeed, Defendant does not establish that

1    its payment plan comports with the letter and purpose of TILA, which is to protect consumers from

2    deceptive and misleading loan documents.

3          **7.**    **Defendant's Failure to Disclose Plaintiffs' True Legal Obligation in the TILDS Violates TILA**

4          The TILA provisions, 15 U.S.C. § 1601, § 226.17 and § 226.18, require that the payment amount

5    in the TILDS reflect the *legal obligation*. In addition, FRB Official Staff Commentary to § 226.17(c)(1)

6    provides: "***The disclosures shall reflect the credit terms to which the parties are legally bound as of***

7    ***the outset of the transaction*** [;] [and] ... The legal obligation normally is presumed to be contained in

8    the note or contract that evidences the agreement." <u>Id.</u>, pt 226, Supp. I, cmt 17(c)(1)-1 (Shub Decl., Ex.

9    3) (italics and bold added).

10         Here, Plaintiffs have adequately alleged that Defendant violated TILA, 12 C.F.R. § 226.17, by

11   failing to disclose Plaintiffs' legal obligation in the TILDS. SAC, ¶¶ 28, 97. For example, Plaintff

12   O'Donnell's Note lists an interest rate of 1.000% with a beginning principal balance of $468,000. The

13   monthly amount to pay that loan off over the thirty year term is $1,505.28. The payment schedule

14   shows a payment obligation, in the first year of the loan, of $ 1,505.28. However the TILDS shows an

15   interest rate of 9.945%, which creates a monthly legal obligation of $4,088, thereby creating a shortfall

16   of $2,582 each month. This shortfall is the negative amortization Defendant purposefully built into

17   these loans. SAC, ¶ 30. The Van Bellinghams' Note lists an interest rate of 1.125% with a beginning

18   principal balance of $300,000. The monthly amount to pay that loan off over the thirty year term is

19   $982.25. The payment schedule shows a monthly payment obligation, in the first year of the loan, of $

20   982.25. However the TILDS shows an interest rate of 5.378%, which creates a monthly legal obligation

21   of $1,680.47, thereby creating a shortfall of $698.22 each month.

22         Listing payment amounts in the TILDS that are completely insufficient to fully repay Plaintiffs'

23   monthly legal obligation violates TILA, in that it fails to clearly and conspicuously disclose the true

24   legal obligation owed on the Note. <u>See</u> 15 U.S.C. 1601, § 226.17 and § 226.18. The true legal

25   obligation would be the amount being charged to Plaintiffs each month; if Plaintiffs were not legally

26   obligated to pay that higher amount, Defendant would not have been able to secretly add to the principal

27   balance each month. SAC, ¶ 84.

28

1    Moreover, as stated above, a misleading disclosure is as much a violation of TILA as no

2    disclosure at all.  Barnes v. Fleet National Bank, 370 F. 3d at 174, quoting Smith v Chapman, 614 F.2d

3    at 977.  Here, the manner in which Defendant purposefully concealed the fact that negative amortization

4    was absolutely certain to occur was misleading and failed to clearly and conspicuously disclose the true

5    legal obligation of the loan.  See SAC, ¶¶ 80-83.

6    **8.    Defendant's Failure to Disclose the Effect of the Payment Cap on the True**

7    **Cost of the Loan Violates TILA**

8    Plaintiffs have properly alleged that Defendant violated TILA, 12 C.F.R. § 226.17 by failing to

9    clearly and conspicuously disclose the effect the payment cap would have on the loan.  SAC, ¶ 118.

10    The FRB's Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan

11    contains a rate or payment cap... ***the effect of that rate or payment cap should be reflected in the***

12    ***disclosures***." Id., pt 226, Supp. I, cmt 17(c)(1)-10-iii (Shub Decl., Ex. 3) (italics and bold added).

13    Defendant's Payment Cap limited the amount that the monthly payments could be increased

14    annually.  Here, the Note states, "[m]y monthly payment will not increase or decrease by more than

15    7.5% from the payment in effect just prior to the change ('Annual Payment Cap') ..."  Thus, if the loan

16    had a monthly payment amount of $1,000 for the first year of the note, the Payment Cap would limit the

17    increase in payments to a maximum of $75 for a total monthly payment of $1,075  in the second year.

18    The Payment Cap limits the amount of the monthly payment increases, but does not limit in any

19    way the amount of interest Defendant charged on the loans.  The effect of such a limit for Mr.

20    O'Donnell was a loss of equity of $2,582 in month number two, and a loss of equity of $698.22 in

21    month number two for the Bellinghams.   Defendant knew what the exact amount of the monthly

22    shortfalls would be prior to the loan closings but failed to disclose them to Plaintiffs.

23    While Defendant  failed to disclose  that the effect that the Payment Cap would have on

24    Plaintiffs' loans, SAC, ¶¶ 116-119, nevertheless it argues that TILA only required it to disclose the

25    existence of the Payment Cap.  Defs Mtn. At 16:14:17.  However, as discussed above, Defendant's

26    arguments are belied by the FRB's Official Staff Commentary to 12 C.F.R § 226.17(c)(1) which

27    required Defendant to inform Plaintiffs of *the effect* that the Payment Cap would have on the loan.

28

Plaintiffs have therefore adequately alleged that Defendant failed to disclose the effect of the payment cap and at least five (5) other violations of TILA.  Plaintiffs have adequately alleged each of these violations and therefore, Defendant's motion to dismiss Plaintiffs' TILA claims should be denied.

### C.    Plaintiffs Have Properly Pled a Valid Fraudulent Omissions Claim

The elements of a fraudulent omission claim under California law are: (1) an omission of material fact, (2) knowledge of falsity (scienter), (3) intent to defraud, (4) justifiable reliance and (5) resulting damages.  Lazar v. Superior Court (1996) 12 Cal.4th 631, 638; see also Small v. Fritz Companies, Inc. (2003) 30 Cal.4th 167, 173.  Plaintiffs have adequately alleged a claim for fraudulent omission.

### 1.    Defendant's Duty to Disclose Material Facts

To establish fraud through nondisclosure of facts, a plaintiff must plead that the defendant "was under a legal obligation to disclose them."  Lingsh v. Savage (1963) 213 Cal.App.2d 729, 753. Generally, there are four circumstances in which nondisclosure may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.  LiMandri v. Judkins ("Judkins") (1997) 52 Cal.App.4th 326, 336, quoting Heliotis v. Schuman (1986) 181 Cal.App.3d 646, 651.  And where, as here, there is no fiduciary relationship, the duty to disclose generally presupposes a relationship grounded in "some sort of transaction between the parties. [Citations.]  Thus, a duty to disclose may arise from the relationship between seller and buyer, ... or parties entering into any kind of contractual agreement. [Citation.]" Judkins 52 Cal.App.4th at 337.  "All of these relationships are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances." Wilkins v. National Broadcasting Co., Inc. (1999) 71 Cal.App.4th 1066, 1082, citing Judkins, 52 Cal.App.4th at 336-337.

Under the second Judkins factor, Plaintiffs have alleged that:

> "Defendant had exclusive knowledge of material facts, including but not
> limited to, (i) the disclosed interest was not the actual interest rate charged

on the Note(s); (ii) that negative amortization was absolutely certain to occur, and (iii) that the initial rate was discounted." SAC, ¶ 124.

Plaintiffs have also alleged that "[t]he concealed and omitted information was not known to Plaintiffs and the Class members ..." Id. Thus, Plaintiffs have adequately alleged that Defendant had a duty to disclose material facts to Plaintiffs under the second Judkins factor. Judkins, 52 Cal.App.4th at 336. Defendant mounts no argument against this basis for its duty to be candid with borrowers about the true nature of its ARM Loans

Under the third Judkins factor, Plaintiffs have adequately alleged that Defendant actively concealed material facts from Plaintiffs." SAC, ¶¶ 41, 48, 124-126. "[I]ntentional concealment of a material fact is an alternative form of fraud and deceit equivalent to direct affirmative misrepresentation." Lovejoy v. AT & T Corp. (2001) 92 Cal.App.4th 85, 97, quoting Stevens v. Superior Court (1986) 180 Cal.App.3d 605, 608.

Additionally, under the fourth Judkins factor, Plaintiffs have adequately alleged that Defendant made partial representations and suppressed other material facts concerning the ARM loans at issue. Id. Under California law, "[e]ven where no duty to disclose would otherwise exist, 'where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. [Citation.] One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.' [Citations .]" Vega v. Jones, Day, Reavis & Pogue (2004) 121 Cal.App.4th 282, 292; Intrieri v. Superior Court (2004) 117 Cal.App.4th 72, 86.

Here, while the *payment* amounts listed in the TILDS are, on some level, true (e.g. they are the payment obligations Plaintiffs were required to make), Defendant failed to disclose that those payment amounts were, in fact, completely insufficient to pay both "Principal and interest." SAC, ¶ 124; see also SAC, Ex. 1, ¶ 3(A) ("I will pay **principal and interest** by making a payment every month.") (italics and bold added).

Defendant's argument that it made full disclosures is disingenuous. As alleged in the complaint, and discussed at length above, negative amortization was an undisclosed mathematical certainty. The fact is that the "Required Payment" option on which the Note and TILDS was crafted would inevitably lead to negative amortization. As discussed above, Defendant stated in the Note only that, "If my

15

monthly payment is less than the amount necessary to pay the full amount of the interest for that month, the portion of the interest that is unpaid will be added to the principal balance of my loan."  SAC, ¶ 125; see also  Ex. 1, ¶ 3(F).   However, this was a cleverly contrived half-truth which failed to disclose that the payments were, in fact, always going to be insufficient to pay both principal and interest.  SAC ¶ 128.

Accordingly, Plaintiffs have adequately alleged that Defendant had a duty to disclose under the fourth Judkins factor, by making "partial representations but also suppress[ing] some material facts."

Judkins, 52 Cal.App.4th at 336.

Moreover, in addition to the Judkins factors, a duty to disclose may also be imposed by statute. Pastoria v. Nationwide Ins. (2003) 112 Cal.App.4th 1490, 1499 [Cal.Ins. Code, § 330]; Lovejoy v. AT & T Corp. (2004) 119 Cal.App.4th 151, 158-159 [Cal. Pub.Util.Code, § 2889 .5]; see also Angelucci v. Century Supper Club (2007) 41 Cal.4th 160, 167 at fn. 6 [Cal.Civ.Code § 51.6, subd. (f)]. Here, TILA imposed a duty on Defendant to make certain disclosures to Plaintiffs and the Class members, including the inevitability of negative amortization at the very outset of the loan.  Thus, in addition to the Judkins factors, TILA created a separate and independent basis by which the Court may find that Defendant owed a duty to disclose material facts concerning the ARM loans at issue.  See, e.g., SAC ¶¶ 117, 118.

Plaintiffs have therefore adequately alleged at least four (4) separate grounds upon which the Court may find that Defendant owed a duty to disclose material facts concerning Plaintiffs' ARM loans.

## 2.    **Materiality**

In order to sufficiently allege materiality, Plaintiffs must allege that "had the omitted information been disclosed, [they] would have been aware of it and behaved differently."  Mirkin v. Wasserman (1993) 5 Cal.4th 1082, 1093.  Here, Plaintiffs have adequately alleged materiality in that "Plaintiffs and each Class member would not have entered into the loans" but for Defendant's fraudulent omissions. SAC, ¶ 133.

## 3.    **Defendant's Knowledge of the Fraudulent Omissions - Scienter**

1    "[K]nowledge of falsity" or scienter is an element of fraud.  5 Witkin, Summary of Cal. Law

2    (10th ed. 2005) Torts, § 800, p. 1157; see also Lazar v. Superior Court, 12 Cal.4th at 638.[2]  Here,

3    Plaintiffs have alleged that "[f]rom the inception of the Option ARM loan scheme, until present,

4    Defendant have engaged in a purposeful and fraudulent scheme to omit material facts."  SAC, ¶ 130.

5    Plaintiffs have further alleged that Defendant knew from the inception of the "ARM loan scheme" that

6    (i) the payments schedules did not reflect payment amounts sufficient to pay both "Principal and

7    interest," (ii) an ambiguity existed in the TILDS in that the interest rate listed was not used to calculate

8    the schedule of payments, and (iii) Plaintiffs were absolutely certain to suffer negative amortization if

9    they followed the disclosed payment schedules.  SAC, ¶ 132.

10   Further, Plaintiffs have alleged that Defendant "purposefully and intentionally devised this ARM

11   loan scheme to defraud and/or mislead consumers into believing ... that if [Plaintiffs] made their

12   payments according to the payment schedule provided by Defendant that it would be sufficient to pay

13   both principal and interest."  SAC, ¶ 132.

14   Plaintiffs have therefore adequately alleged Defendant's knowledge or scienter of the

15   complained of fraudulent omissions.

16   ### 4.    Actual Reliance

17   A plaintiff asserting a fraudulent omission claim is obliged to plead and prove actual reliance,

18   that is, to "'establish a complete causal relationship' between the alleged [fraudulent omission] and the

19   harm claimed to have resulted therefrom."  Mirkin v. Wasserman (1993) 5 Cal.4th 1082, 1092-93,

20   quoting Garcia v. Superior Court (1990) 50 Cal.3d 728, 737.  However, "'[i]t is not ... necessary that [a

21   plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the

22   predominant or decisive factor in influencing his conduct.... It is enough that the representation has

23   played a substantial part, and so has been a substantial factor, in influencing his decision.'"

24   Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 976-977.  And, for fraudulent

25   omissions claims, the plaintiff may establish this element by showing that "had the omitted information

---

[2]  "[T]he state of mind-or scienter-of the Defendant may be alleged generally." See Odom v. Microsoft Corp. (9th Cir. 2007) 486 F.3d 541, 554, citing In re GlenFed, Inc. Sec. Litig. (9th Cir.1994) (en banc) 42 F.3d 1541, 1547 ["We conclude that plaintiffs may aver scienter generally, just as the rule states-that is, simply by saying that scienter existed."].)

Plaintiffs' Opposition to Motion to Dismiss - C-07-04500 RMW

1    been disclosed, [he or she] would have been aware of it and behaved differently." <u>Mirkin v.</u>

2    <u>Wasserman</u>, 5 Cal.4th at 1093.

3    Here, Plaintiffs have alleged that "[t]he omitted information, as alleged herein, was material to

4    Plaintiffs and each Class member in that had the information been disclosed, Plaintiffs and each Class

5    member would not have entered into the loans." SAC, ¶ 133.

6    **5.    Justifiable Reliance - Presumed**

7    "Besides actual reliance, [a] plaintiff must also show 'justifiable' reliance, i.e., circumstances

8    were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an

9    independent inquiry or investigation." ( <u>Wilhelm v. Pray, Price, Williams & Russell</u> (1986) 186

10    Cal.App.3d 1324, 1332.)  However, "'[e]xcept in the rare case where the undisputed facts leave no room

11    for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a

12    question of fact.' [Citations.]" <u>Alliance Mortgage Co. v. Rothwell</u> (1995) 10 Cal.4th 1226, 1239,

13    quoting <u>Blankenheim v. E.F. Hutton & Co.</u> (1990) 217 Cal.App.3d 1463, 1475.

14    And, as is relevant here, justifiable reliance may be presumed when "the case can be

15    characterized as one that primarily alleges omissions." <u>Poulos v. Caesars World, Inc.</u> (9th Cir.2004) 379

16    F.3d 654, 667; <u>Binder v. Gillespie</u> (9th Cir.1999) 184 F.3d 1059, 1064; <u>Affiliated Ute Citizens v. United</u>

17    <u>States</u> (1972) 406 U.S. 128, 153-54; <u>see also</u> Defs. Mtn. 1:20-21 ("[Plaintiffs] primarily contend that

18    Bank of America failed to adequately disclose the terms of their loans...")   It is therefore undisputed

19    that this case primarily involves Defendant's failures to fully disclose and its omissions of material fact.

20    Plaintiffs have therefore sufficiently alleged a fraudulent omission claim.

21    **D.    Plaintiffs Have Properly Pled a Valid UCL Cause of Action**

22    California's Unfair Competition Law ("UCL") includes five different types of wrongful conduct.

23    They are: (1) unlawful business practice or act; (2) unfair business practice or act; (3) fraudulent

24    business practice or act; (4) unfair, deceptive, untrue or misleading advertising; and (5) any act

25    prohibited by Bus. & Prof. Code §§ 17500-17577.5.  Each part of UCL's definition of unfair

26    competition operates separately from each other part.   Thus, "unlawful" business practices (the first

27    prong) are forbidden even if the practices are not "unfair" (the second prong) or "fraudulent" (the third

28

1  prong).  Likewise, "unfair advertising" is prohibited even if it is not "misleading" and is not a "business

2  practice."  W.L. Stern, Bus. & Prof. C. § 17200 Practice, ¶ 3:15.

3       The second prong of the UCL, the "unfair" prong, is intentionally broad, allowing courts

4  maximum discretion to prohibit new schemes to defraud.  (Stern, supra at ¶ 3:113 citing <u>Motors, Inc. v.</u>

5  <u>Times Mirror Co.</u> (1980) 102 Cal.App.3d 735, 740).  As the California Supreme Court held in <u>Bank of</u>

6  <u>the West v. Superior Court</u> (1992) 2 Cal.4th 1254, 1266–1267:

7          "The Unfair Business Practices Act defines 'unfair competition' as any
           'unlawful, unfair or fraudulent business practice and unfair, deceptive,
8          untrue or misleading advertising ... ' (§ 17200.) The Legislature intended
           this 'sweeping language' to include 'anything that can properly be called a
9          business practice and that at the same time is forbidden by law.' [Citations
           omitted] In drafting the act, the Legislature deliberately traded the
10         attributes of tort law for speed and administrative simplicity. As a result,
           to state a claim under the act one need not plead and prove the elements of
11         a tort."

12      In <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.</u> (1999) 20 Cal.4th

13 163, the California Supreme Court changed the test of unfairness for commercial cases and adopted a

14 new definition for determining "unfair" conduct under the UCL, borrowing on law that had been

15 developed under § 5 of the FTC Act:

16         "We thus adopt the following test: When a plaintiff who claims to have
           suffered injury from a direct competitor's 'unfair' act or practice invokes
17         section 17200, the word 'unfair' in that section means conduct that
           threatens an incipient violation of an antitrust law, or violates the policy or
18         spirit of one of those laws because its effects are comparable to or the
           same as a violation of the law, or otherwise significantly threatens or
19         harms competition."

20      <u>Cel-Tech</u>, 20 Cal.4th at 187.

21      In the wake of <u>Cel-Tech</u>, courts have struggled with the standard to apply in consumer cases.

22 For example, in <u>Smith v. State Farm Mutual Automobile Ins. Co.</u> (2001) 93 Cal.App.4th 700, 718–719,

23 the Court of Appeal held that "[a]n unfair business practice occurs when it offends an established public

24 policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

25 consumers." In <u>Camacho v. Automobile Club of Southern California</u> (2006) 142 Cal.App.4th 1394,

26 1400, the Court of Appeal defined "unfair" for the purposes of the UCL by looking to the factors applied

27 in consumer fraud cases brought under section 5 of the Federal Trade Commission Act.  The three

28 factors of  FTC test adopted by the <u>Camacho</u> Court are: (1) the consumer injury must be substantial; (2)

1    the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it

2    must be an injury that consumers themselves could not reasonably have avoided.  Camacho, 142

3    Cal.App.4th at 1403, accord Daugherty v. American Honda Motor Co., Inc. (2006) 144 Cal.App.4th

4    824, 839.

5         However, in Buller v. Sutter Health, --- Cal.Rptr.3d ----, 2008 WL 588399 (Cal.App. 1 Dist.),

6    despite the fact that the Cel Tech court went out of its way to point out that the test it was adopting in

7    that case does not apply to consumer cases (Cel-Tech, 20 Cal.4th at 187, fn. 12)  the Court of Appeal

8    applied Cel-Tech test to consumer cases holding:  "[t]his court ... has followed the line of authority that

9    ... requires the allegedly unfair business practice be 'tethered' to a legislatively declared policy or has

10   some actual or threatened impact on competition." Id. citing Belton v. Comcast Cable Holdings, LLC

11   (2007) 151 Cal.App.4th 1224, 1239-1240, citing to Gregory v. Albertson's, Inc. (2002) 104 Cal.App.4th

12   845, 853-854.

13        Here, regardless of which standard the Court applies, Plaintiffs have alleged sufficient facts.

14   See, e.g. SAC, ¶¶ 59-120, 122 (Defendants omissions and failures to disclose are "teathered" to a

15   legislative declared policy, TILA and common law duties discussed above.)  Therefore, Plaintiffs have

16   satisfied the most stringent of the three tests.

17        Indeed, Defendant does not directly challenge Plaintiffs allegations of its failures to disclose and

18   omissions of material fact are "unfair" conduct under the UCL, but rather, it only argues that the

19   allegations of "fraud" do not satisfy the heightened pleading standards of Rule 9(b). Def.Mtn., p. 20:6-

20   7.  However, as discussed above,  fraud by omission claims, which Plaintiffs have alleged here, do not

21   need to meet the strict requirements of Rule 9.  Washington v. Baezinger (N.D.Cal.1987) 673 F.Supp.

22   1478, 1482  (noting that in fraud by omission cases, "a plaintiff cannot plead either the specific time of

23   the omission or the place, as he is not alleging an act, but a failure to act."); Falk, 496 F.Supp.2d at

24   1098-99.

25         Further, the type of fraud contemplated by the UCL bears little resemblance to common law

26   fraud or deception.  To prove a business practice is fraudulent under the UCL, a plaintiff need show only

27   that "members of the public are likely to be deceived."  (Blakemore v. Superior Court (2005) 129

28   Cal.App.4th 36, 49, citing Pastoria v. Nationwide Ins. (2003) 112 Cal.App.4th 1490, 1499 (material

1   omissions satisfy both the deception and unfairness prong of the UCL, i.e. "a practice which is deceptive

2   is necessarily unfair.")

3   Here, Plaintiffs have alleged that Defendant "deceptively devised" its ARM loans  SAC, ¶ 141.

4   The deceptions include the partial disclosures through which Defendant presented the loans as low,

5   fixed payment loans with no negative amortization.  SAC, ¶¶ 39, 141  These promises of low payments

6   and low interest, along with the other purported features of the ARM loans were stated in the loan

7   documents. SAC, ¶ 143.  However, the promise of a low interest rate was a mirage and in fact, these

8   loans were guaranteed to result in negative amortization.  SAC, ¶¶ 144, 147  In particular, Defendant

9   failed to disclose the true nature of the ARM Loans, and the borrowers never received the benefits of the

10  "teaser" rate.  SAC, ¶¶ 147-148.  Defendant followed the same course of misrepresentations and

11  omissions with Plaintiffs and its other borrowers.  SAC, ¶ 141-148.

12              **E.     Plaintiffs Have Properly Plead a Valid Breach of Contract Claim**

13  The elements of a claim for breach of contract are: "(1) The contract; (2) Plaintiff's performance;

14  (3) Defendant's breach; (4) Damage to plaintiff."  <u>McDonald v. John P. Scripps Newspaper</u> (1989) 210

15  Cal.App.3d 100, 104, <u>quoting</u> Witkin, California Procedure, Pleading, § 464 (3rd Ed.1985).

16  Here, Plaintiffs have properly pled the existence of the contractual ARM loans at issue.  <u>See</u>

17  SAC, ¶ 160, Exs. 1-2.  Plaintiffs have also properly pled the contractual provision which they allege

18  Defendant breached.  <u>See</u> SAC, ¶ 163 ("I will pay ***principal and interest*** by making a payment every

19  month.") (italics and bold added).  Plaintiffs have also properly pled performance. SAC, ¶ 169.

20  Similarly, Plaintiffs have properly alleged that Defendant breached the contract "by failing to

21  apply any portion of Plaintiffs' and the Class members' monthly payments towards their Principal loan

22  balances." <u>See</u> SAC, ¶ 168.  Moreover, Plaintiffs have properly alleged that they have suffered

23  damages as a result of Defendant's breach of these contract provisions.  SAC, ¶ 170.

24  Nevertheless, despite having adequately alleged each element for their breach of contract claim,

25  Defendant argues that the contractual provision that,  "***I will pay Principal and interest by making a***

26  ***payment every month***" means something other than the clear meaning of these words, and would not be

27  applied to both "Principal and interest."  However, Defendant's argument is completely contrary to the

28  plain meaning of the language it inserted into loan contracts.  In particular, and as discussed above,  ¶

1   3(A) of the Note can have no other reasonable meaning than that each payment would be (or should

2   have been) applied to both "Principal and interest."

3       Defendant's bald assertion, that this provision is contrary to the plain meaning of this statement,

4   is nonsense and the portions of the loan contracts its cite, belie its own arguments.   In particular,

5   Defendant argues that the equivocal phrases it inserted the Notes, "***If my monthly payment is less*** than

6   the amount necessary to pay the full amount of interest for that month..."; "***If the Required Payment is***

7   ***insufficient*** to fully amortize my loan..."; and "***If the Required Payment is not sufficient*** to pay all of

8   the interest owed for that month" somehow trumps the unequivocal statement "***I WILL PAY***

9   ***PRINCIPAL AND INTEREST*** by making a payment every month."  (Italics and bold added).   The

10   notion is directly contrary to the clear and explicit language, "Principal and interest," which it used in

11   the context of the Note(s).

12       "'The fundamental goal of contractual interpretation is to give effect to the mutual intention of

13   the parties.' [Citation.] 'Such intent is to be inferred, if possible, solely from the written provisions of

14   the contract.' [Citation.] 'If contractual language is clear and explicit, it governs.' [Citation.]"

15      Foster- Gardner, Inc. v. National Union Fire Ins. Co. (1998) 18 Cal.4th 857, 868.) Under

16   California law, courts are to interpret the terms in context by considering the contract as a whole and

17   giving effect to every part of the agreement, with "each clause helping to interpret the other."  Stamm

18   Theatres, Inc. v. Hartford Casualty Ins. Co. (2001) 93 Cal.App.4th 531, 538; Cal. Civ.Code, § 1642.

19      If, however, the language is ambiguous or uncertain, courts are to interpret the contract ***against***

20   ***the party who caused the uncertainty***.  See Cal. Civ.Code, § 1654; International Billing Services, Inc. v.

21   Emigh (2000) 84 Cal.App.4th 1175, 1184; In re: William M. Miller (36 Bankr. Ct. 2000) 253 B.R. 455,

22   459; see also Cal. Civ. Code §1654 (" . . . the language of a contract should be interpreted most strongly

23   against the party who caused uncertainty to exist.") Specifically within the mortgage context, "[i]f there

24   is any uncertainty as to meaning of mortgage drawn by mortgagee, it must be construed most strongly

25   against mortgagee" Hibernia Savings & Loan Soc. v. Lauffer (1940) 41 Cal.App.2d 725, 731, citing Cal.

26   Civ. Code § 1654.

27      Here, Plaintiffs adequately allege that "Defendants [the mortgagee] caused the uncertainty and

28   ambiguity ... by purposefully stating in the Note that Plaintiffs 'will pay Principal and interest by

1  making payments every month" and then providing Plaintiffs and the Class members with a payment

2  schedule that was insufficient to pay both "Principal and interest" as promised by Defendant.  SAC, ¶¶

3  166-167.

4      Plaintiffs have adequately alleged a valid breach of contract claim.

5  **F.    Plaintiffs Have Properly Pled a Valid Tortious Breach of the Covenant of Good**

6  **Faith And Fair Dealing Cause of Action**

7      "[U]nder California law, all contracts have an implied covenant of good faith and fair dealing."

8  In re Vylene Enterprises, Inc. (9th Cir.1996) 90 F.3d 1472, 1477, citing Harm v. Frasher (1960) 181

9  Cal.App.2d 405, 417.   The covenant "exists merely to prevent one contracting party from unfairly

10  frustrating the other party's right to receive the benefits of the agreement actually made."  Guz v.

11  Bechtel Nat. Inc. (2000) 24 Cal.4th 317, 349.)

12      A breach of the implied covenant of good faith and fair dealing involves something more than

13  breach of the contractual duty itself.  Careau & Co. v. Security Pacific Business Credit, Inc. (1990) 222

14  Cal.App.3d 1371, 1394.  It involves unfair dealing, regardless as to whether or not it also constitutes

15  breach of a consensual contract term.  It is prompted by a conscious and deliberate act that "unfairly

16  frustrates the agreed common purposes and disappoints the reasonable expectations of the other party."

17  Id. at 1395.  Therefore, if "the allegations do not go beyond the statement of a mere contract breach, and

18  relying on the same alleged acts, simply seek the same damages or other relief already claimed in a

19  companion contract cause of action, they may be disregarded as superfluous as no additional claim is

20  actually stated."  Id.; see also Celador Intern. Ltd. v. Walt Disney Co. (CD Cal. 2004) 347 F.Supp.2d

21  846, 852.

22      There are three exceptions to this rule: (1) where breach of a consensual contract claim is not

23  alleged, id. at 1395; (2) where the plaintiff is seeking recovery in tort, id.; and (3) where the plaintiff

24  alleges that the defendant acted in bad faith to frustrate the contract's benefits, Guz v. Bechtel Nat'l, Inc.

25  (2000) 24 Cal.4th 317, 353 n. 18; Lamke v. Sun-state Equipment Co., LLC (N.D. Cal. 2004) 387

26  F.Supp.2d 1044, 1047.

27      The second and third exceptions are applicable here as Plaintiff are seeking tort recovery, based

28  on Defendant's fraudulent omissions, discussed above in Section C, and Plaintiffs have alleged that

1   Defendant tortiously acted in bad faith by "fraudulently and unfairly" interfering with Plaintiffs "rights

2   to receive the benefits of the contract."  SAC, ¶ 179.

3       Defendant argues that Plaintiffs' claim for Tortious Breach of the Covenant of Good Faith and

4   Fair Dealing should be dismissed on the ground that it is nothing more than a contract claim.  See Defs.

5   Mtn. at 23:16-19.   Defendant overlooks the Principal that tort recovery for breach of contract is

6   permissible where there is a violation of "an independent duty arising from Principals of tort law."

7   Freeman & Mills, Inc. v. Belcher Oil Co. (1995) 11 Cal.4th 85, 102 quoting Applied Equipment Corp. v.

8   Litton Saud Arabia Ltd. (1994) 7 Cal.4th 503, 515.

9       Defendant then argues that "tort remedies are precluded" in ordinary bank-customer contracts.

10  Relying on Mitsui Mfrs. Bank v. Superior Court (1989) 212 Cal.App.3d 726, Defendant argues that tort

11  liability may not attach for tortious breach of the covenant of good faith and fair dealing unless a

12  "special relationship exists."  Defs Mtn. at 23:20-23.   In Mistui, the dispute was between two

13  corporations with equal bargaining strength and therefore no special relationship existed.  Thus

14  Defendant's reliance on Mitsui is misplaced.  Moreover, Mitsui went on to hold that:

15          It is the nature of the contract that is critical, whether it reflect equal
            bargaining strength between the parties, an inadequacy of ordinary
16          contract damages or other remedies, adhesiveness of contract provisions
            adversely impacting the damaged party which are neither neutral toward
17          or benefit the other, public concerns that parties to certain types of
            contracts conduct themselves in a particular manner, the reasonable
18          expectations of the parties or a fiduciary relationship in which the
            financial dependance or personal security by the damaged party has been
19          entrusted to the other. ***There are undoubtedly other significant factors
            and it may be that not all must be present in very case which might give
20          rise to tort damages.***

21      Mitsui, 212 Cal.App.3d at 731 (italics and bold added).

22      Here, Plaintiffs have alleged the inequality in bargaining position that existed between the home

23  owners and Defendant and that "Defendant[] unreasonably and unconscionably exploited [its] superior

24  position their superior bargaining position and foisted upon Plaintiffs ... extremely harsh, one-sided

25  provisions in the loan contract, which Plaintiffs ... were not made aware of and did not comprehend (e.g.

26  Defendant's fraud and failures to clearly and conspicuously disclose as alleged herein)..."  SAC, ¶ 171.

27      Defendant's reliance on Copesky v. Superior Court (1991) 229 Cal.App.3d 678, and Price v.

28  Wells Fargo Bank (1989) 213 Cal.App.3d 465, are misplaced.  Copesky involved an action between a

1   chiropractic clinic and a bank , and <u>Price</u> involved an action brought by a ***commercial borrower*** against

2   the bank.  <u>Price</u>, 213 Cal.App.3d at 690.  In both those cases the parties and their bargaining position

3   were not in any way similar to the situation presented here, where homeowners face losing their homes

4   as a result of Defendant's "fraudulently and unfairly" interfering with Plaintiffs' "rights to receive the

5   benefits of the contract." SAC, ¶ 179.   As such, ordinary contract damages are inadequate here as

6   Plaintiffs properly seek punitive damages which are not available to Plaintiffs under their Breach of

7   Contract cause of action.

8       Plaintiffs have adequately alleged that Defendant's breach was tortious thus establishing

9   violations of an independent legal duty: the duty to disclose important material facts relating to the

10  ARM loans entitling Plaintiffs to recover punitive damages based on Defendant's "act[ing] with

11  oppression, malice, and fraud." <u>See</u> SAC ¶¶ 50, 185-186; <u>see also</u>  <u>In re GlenFed, Inc. Sec. Litig.</u> (9th

12  Cir.1994) (en banc) 42 F.3d 1541, 1547, quoted in, <u>Odom v. Microsoft Corp.</u> (9th Cir.2007) (en banc)

13  486 F.3d 541, 553.

14      **V.      CONCLUSION**

15      For the foregoing reasons, Defendant's motion to dismiss should be denied.

16      DATED: March 28, 2008                    **SEEGER WEISS LLP**

17                                       By: _____/S/_____

18                                            Jonathan Shub, Esq.
                                             1515 Market Street, Suite 1380
19                                            Philadelphia, PA 19102
                                             Phone: (215) 564-2300
                                             Fax (215) 851-8029

20

21                                            David M. Arbogast, Esq.
                                             **SPIRO MOSS BARNESS LLP**
22                                            11377 W. Olympic Boulevard, Fifth Floor
                                             Los Angeles, CA 90064-1683
23                                            Phone: (310) 235-2468
                                             Fax: (310) 235-2456

24

25                                            Paul R. Kiesel, Esq.
                                             Patrick Deblase, Esq.
26                                            Michael C. Eyerly, Esq.
                                             **KIESEL BOUCHER LARSON LLP**
27                                            8648 Wilshire Boulevard
                                             Beverly Hills, California 90210
28                                            Phone: (310) 854-4444
                                             Fax: (310) 854-0812

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffrey K. Berns, Esq.
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax:  (818) 867-4820

Attorneys for Plaintiffs and all others Similarly
Situated.

Plaintiffs' Opposition to Motion to Dismiss - C-07-04500 RMW