Exhibit 2

Westlaw.

Page 1

12 C.F.R. Pt. 226, Supp. I

**Effective: January 14, 2008**

Code of Federal Regulations Currentness
  Title 12. Banks and Banking
    Chapter II. Federal Reserve System
      Subchapter A. Board of Governors of the Federal Reserve System
        Part 226. Truth in Lending (Regulation Z) (Refs & Annos)

**→SUPPLEMENT I TO PART 226--OFFICIAL STAFF INTERPRETATIONS**

<For compliance date(s) of amendment(s) to supplement, see 72 FR 63462.>

Introduction

1. Official status. This commentary is the vehicle by which the staff of the Division of Consumer and Community Affairs of the Federal Reserve Board issues official staff interpretations of Regulation Z, as revised effective April 1, 1981. Good faith compliance with this commentary affords protection from liability under 130(f) of the Truth in Lending Act. Section 130(f) (15 U.S.C. 1640) protects creditors from civil liability for any act done or omitted in good faith in conformity with any interpretation issued by a duly authorized official or employee of the Federal Reserve System.

2. Procedure for requesting interpretations. Under appendix C of the regulation, anyone may request an official staff interpretation. Interpretations that are adopted will be incorporated in this commentary following publication in the Federal Register. No official staff interpretations are expected to be issued other than by means of this commentary.

3. Status of previous interpretations. All statements and opinions issued by the Federal Reserve Board and its staff interpreting previous Regulation Z remain effective until October 1, 1982, only insofar as they interpret that regulation. When compliance with revised Regulation Z becomes mandatory on October 1, 1982, the Board and staff interpretations of the previous regulation will be entirely superseded by the revised regulation and this commentary except with regard to liability under the previous regulation.

4. Rules of construction. (a) Lists that appear in the commentary may be exhaustive or illustrative; the appropriate construction should be clear from the context. In most cases, illustrative lists are introduced by phrases such as "including, but not limited to," "among other things," "for example," or "such as."

(b) Throughout the commentary and regulation, reference to the regulation should be construed to refer to revised Regulation Z, unless the context indicates that a reference to previous Regulation Z is also intended.

(c) Throughout the commentary, reference to "this section" or "this paragraph" means the section or paragraph in the regulation that is the subject of the comment.

5. Comment designations. Each comment in the commentary is identified by a number and the regulatory section or paragraph which it interprets. The comments are designated with as much specificity as possible according to the particular regulatory provision addressed. For example, some of the comments to § 226.18(b) are further divided by paragraph, such as Comment 18(b)(1)-1 and Comment 18(b)(2)-1. In other cases, comments have more general application and are designated, for example, as Comment 18-1 or Comment 18(b)-1. This introduction may be cited as Comments I-1 through I-7. Comments to the appendices may be cited, for example, as Comment app. A-1.

6. Cross-references. The following cross-references to related material appear at the end of each section of the commentary:

(a) "Statute"--those sections of the Truth in Lending Act on which the regulatory provision is based (and any other relevant statutes);

(b) "Other sections"--other provisions in the regulation necessary to understand that section;

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

12 C.F.R. Pt. 226, Supp. I

among the types of deposits that need not be treated as required deposits:

. Requirement that a borrower be a customer or a member even if that involves a fee or a minimum balance.

. Required property insurance escrow on a mobile home transaction.

. Refund of interest when the obligation is paid in full.

. Deposits that are immediately available to the consumer.

. Funds deposited with the creditor to be disbursed (for example, for construction) before the loan proceeds are advanced.

. Escrow of condominium fees.

. Escrow of loan proceeds to be released when the repairs are completed.

References

Statute: Section 128, the Garn-St. Germain Depository Institutions Act of 1982 (Pub.L. 97-320) and the Real Estate Settlement Procedures Act (12 U.S.C. 2602).

Other sections: Sections 226.2, 226.17, and appendix H.

Other regulations: 12 CFR 545.6-2(a), and 12 CFR Part 29.

Previous regulation: Sections 226.4 and 226.8.

1981 changes: Five of the required disclosures must be explained to the consumer in a manner similar to the descriptive phrases shown in the regulation. A written itemization of the amount financed need not be provided unless the consumer requests it. The finance charge must be provided in all transactions, including real estate transactions, but must be shown only as a total amount. The disclosed finance charge is considered accurate if it is within a specified range.

The variable rate hypothetical is required in all variable rate transactions and may be either general or transaction-specific. The penalty and rebate disclosures in the event of prepayment have been modified and combined. The requirement of an explanation of how the rebates or penalties are computed has been eliminated. The late payment disclosure has also been narrowed to include only charges imposed before maturity for late payments.

The information required in the security interest disclosure has been decreased by the deletion of the type of security interest and a reduction in the property description requirement. The disclosure of the required deposit is limited to a statement that the annual percentage rate does not reflect the required deposit; the presence of a required deposit has no effect on the annual percentage rate.

Two disclosure requirements have been added: A reference to the contract documents for additional information and, in a residential mortgage transaction, a statement of the creditor's assumption policy.

Section 226.19--Certain Residential Mortgage and Variable-Rate Transactions

Paragraph 19(a)(1) Time of disclosure.

1. Coverage. This section requires early disclosure of credit terms in residential mortgage transactions that are also subject to the Real Estate Settlement Procedures Act (RESPA) and its implementing Regulation X, administered by the Department of Housing and Urban Development (HUD). To be covered by this section, a transaction must be both a residential mortgage transaction under § 226.2(a) and a federally related mortgage loan under RESPA. "Federally related mortgage loan" is defined under RESPA (12 USC 2602) and Regulation X (24 CFR 3500.5(b)), and is subject to any interpretations by HUD.

2. Timing and use of estimates. Truth in Lending disclosures must be given (a) before consummation, or (b) within three business days after the creditor receives the consumer's written application, whichever is earlier. The three-day period for

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 5:07-cv-04500-RMW   Document 34-3   Filed 03/28/2008   Page 4 of 14

Page 132

12 C.F.R. Pt. 226, Supp. I

disclosing credit terms coincides with the time period within which creditors subject to RESPA must provide good faith estimates of settlement costs. If the creditor does not know the precise credit terms, the creditor must base the disclosures on the best information reasonably available and indicate that the disclosures are estimates under § 226.17(c)(2). If many of the disclosures are estimates, the creditor may include a statement to that effect (such as "all numerical disclosures except the late-payment disclosure are estimates") instead of separately labelling each estimate. In the alternative, the creditor may label as an estimate only the items primarily affected by unknown information. (See the Commentary to § 226.17(c)(2).) The creditor may provide explanatory material concerning the estimates and the contingencies that may affect the actual terms, in accordance with the commentary to § 226.17(a)(1).

3. Written application. Creditors may rely on RESPA and Regulation X (including any interpretations issued by HUD) in deciding whether a "written application" has been received. In general, Regulation X requires disclosures "to every person from whom the Lender receives or for whom it prepares a written application on an application form or forms normally used by the Lender for a Federally Related Mortgage Loan" (24 CFR 3500.6(a)). An application is received when it reaches the creditor in any of the ways applications are normally transmitted--by mail, hand delivery, or through an intermediary agent or broker. (See comment 19(b)-3 for guidance in determining whether or not the transaction involves an intermediary agent or broker.) If an application reaches the creditor through an intermediary agent or broker, the application is received when it reaches the creditor, rather than when it reaches the agent or broker.

4. Exceptions. The creditor may determine within the 3-day period that the application will not or cannot be approved on the terms requested, as, for example, when a consumer applies for a type or amount of credit that the creditor does not offer, or the consumer's application cannot be approved for some other reason. In that case, the creditor need not make the disclosures under this section. If the creditor fails to provide early disclosures and the transaction is later consummated on the original terms, the creditor will be in violation of this provision. If, however, the consumer amends the application because of the creditor's unwillingness to approve it on its original terms, no violation occurs for not providing disclosures based on the original terms. But the amended application is a new application subject to this section.

5. Itemization of amount financed. In many residential mortgage transactions, the itemization of the amount financed required by § 226.18(c) will contain items, such as origination fees or points, that also must be disclosed as part of the good faith estimates of settlement costs required under RESPA. Creditors furnishing the RESPA good faith estimates need not give consumers any itemization of the amount financed, either with the disclosures provided within 3 days after application or with the disclosures given at consummation or settlement.

Paragraph 19(a)(2) Redisclosure required.

1. Conditions for redisclosure. Creditors must make new disclosures if the annual percentage rate at consummation differs from the estimate originally disclosed by more than 1/8 of 1 percentage point in regular transactions or 1/4 of 1 percentage point in irregular transactions, as defined in footnote 46 of § 226.22(a)(3). The creditor must also redisclose if a variable rate feature is added to the credit terms after the original disclosures have been made. The creditor has the option of redisclosing information under other circumstances, if it wishes to do so.

2. Content of new disclosures. If redisclosure is required, the creditor may provide a complete set of new disclosures, or may redisclose only the terms that vary from those originally disclosed. If the creditor chooses to provide a complete set of new disclosures, the creditor may but need not highlight the new terms, provided that the disclosures comply with the format requirements of § 226.17(a). If the creditor chooses to disclose only the new terms, all the new terms must be disclosed. For example, a different annual percentage rate will almost always produce a different finance charge, and often a new schedule of payments; all of these changes would have to be disclosed. If, in addition, unrelated terms such as the amount financed or prepayment penalty vary from those originally disclosed, the accurate terms must be disclosed. However, no new disclosures are required if the only inaccuracies

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 5:07-cv-04500-RMW   Document 34-3   Filed 03/28/2008   Page 5 of 14

Page 133

12 C.F.R. Pt. 226, Supp. I

involve estimates other than the annual percentage rate, and no variable rate feature has been added.

3. Timing. Redisclosures, when necessary, must be given no later than "consummation or settlement." "Consummation" is defined in § 226.2(a). "Date of settlement" is defined in Regulation X (24 CFR 3500.2(a)) and is subject to any interpretations issued under RESPA and Regulation X.

4. Basis of disclosures. In some cases, a creditor may delay redisclosure until settlement, which may be at a time later than consummation. If a creditor chooses to redisclose at settlement, disclosures may be based on the terms in effect at settlement, rather than at consummation. For example, in a variable-rate transaction, a creditor may choose to base disclosures on the terms in effect at settlement despite the general rule in the commentary to section 18(f) that variable-rate disclosures should be based on the terms in effect at consummation.

19(b) Certain variable-rate transactions.

1. Coverage. Section 226.19(b) applies to all closed-end variable-rate transactions that are secured by the consumer's principal dwelling and have a term greater than one year. The requirements of this section apply not only to transactions financing the initial acquisition of the consumer's principal dwelling, but also to any other closed-end variable-rate transaction secured by the principal dwelling. Closed-end variable-rate transactions that are not secured by the principal dwelling, or are secured by the principal dwelling but have a term of one year or less, are subject to the disclosure requirements of § 226.18(f)(1) rather than those of § 226.19(b). (Furthermore, "shared-equity" or "shared-appreciation" mortgages are subject to the disclosure requirements of § 226.18(f)(1) rather than those of § 226.19(b) regardless of the general coverage of those sections.) For purposes of this section, the term of a variable-rate demand loan is determined in accordance with the commentary to § 226.17(c)(5). In determining whether a construction loan that may be permanently financed by the same creditor is covered under this section, the creditor may treat the construction and the permanent phases as separate transactions with distinct terms to maturity or as a single combined transaction. For purposes of the disclosures required under § 226.18, the creditor may nevertheless treat the two phases either as separate transactions or as a single combined transaction in accordance with § 226.17(c)(6). Finally, in any assumption of a variable-rate transaction secured by the consumer's principal dwelling with a term greater than one year, disclosures need not be provided under §§ 226.18(f)(2)(ii) or 226.19(b).

2. Timing. A creditor must give the disclosures required under this section at the time an application form is provided or before the consumer pays a nonrefundable fee, whichever is earlier.

i. Intermediary agent or broker. In cases where a creditor receives a written application through an intermediary agent or broker, however, footnote 45b provides a substitute timing rule requiring the creditor to deliver the disclosures or place them in the mail not later than three business days after the creditor receives the consumer's written application. (See comment 19(b)-3 for guidance in determining whether or not the transaction involves an intermediary agent or broker.) This three-day rule also applies where the creditor takes an application over the telephone.

ii. Telephone request. In cases where the consumer merely requests an application over the telephone, the creditor must include the early disclosures required under this section with the application that is sent to the consumer.

iii. Mail solicitations. In cases where the creditor solicits applications through the mail, the creditor must also send the disclosures required under this section if an application form is included with the solicitation.

iv. Conversion. In cases where an open-end credit account will convert to a closed-end transaction subject to this section under a written agreement with the consumer, disclosures under this section may be given at the time of conversion. (See the commentary to § 226.20(a) for information on the timing requirements for § 226.19(b)(2) disclosures when a variable-rate feature is later added to a transaction.)

v. Form of electronic disclosures provided on or with electronic applications. Creditors must provide the disclosures required by this section (including the brochure) on or with a blank application that is made

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

12 C.F.R. Pt. 226, Supp. I

available to the consumer in electronic form, such as on a creditor's Internet Web site. Creditors have flexibility in satisfying this requirement. Methods creditors could use to satisfy the requirement include, but are not limited to, the following examples:

A. The disclosures could automatically appear on the screen when the application appears;

B. The disclosures could be located on the same web page as the application (whether or not they appear on the initial screen), if the application contains a clear and conspicuous reference to the location of the disclosures and indicates that the disclosures contain rate, fee, and other cost information, as applicable;

C. Creditors could provide a link to the electronic disclosures on or with the application as long as consumers cannot bypass the disclosures before submitting the application. The link would take the consumer to the disclosures, but the consumer need not be required to scroll completely through the disclosures; or

D. The disclosures could be located on the same web page as the application without necessarily appearing on the initial screen, immediately preceding the button that the consumer will click to submit the application.

Whatever method is used, a creditor need not confirm that the consumer has read the disclosures.

3. Intermediary agent or broker. In certain transactions involving an "intermediary agent or broker," a creditor may delay providing disclosures. A creditor may not delay providing disclosures in transactions involving either a legal agent (as determined by applicable law) or any other third party that is not an "intermediary agent or broker." In determining whether or not a transaction involves an "intermediary agent or broker" the following factors should be considered:

. The number of applications submitted by the broker to the creditor as compared to the total number of applications received by the creditor. The greater the percentage of total loan applications submitted by the broker in any given period of time, the less likely it is that the broker would be considered an "intermediary agent or broker" of the creditor during the next period.

. The number of applications submitted by the broker to the creditor as compared to the total number of applications received by the broker. (This factor is applicable only if the creditor has such information.) The greater the percentage of total loan applications received by the broker that is submitted to a creditor in any given period of time, the less likely it is that the broker would be considered an "intermediary agent or broker" of the creditor during the next period.

. The amount of work (such as document preparation) the creditor expects to be done by the broker on an application based on the creditor's prior dealings with the broker and on the creditor's requirements for accepting applications, taking into consideration the customary practice of brokers in a particular area. The more work that the creditor expects the broker to do on an application, in excess of what is usually expected of a broker in that area, the less likely it is that the broker would be considered an "intermediary agent or broker" of the creditor.

An example of an "intermediary agent or broker" is a broker who, customarily within a brief period of time after receiving an application, inquires about the credit terms of several creditors with whom the broker does business and submits the application to one of them. The broker is responsible for only a small percentage of the applications received by that creditor. During the time the broker has the application, it might request a credit report and an appraisal (or even prepare an entire loan package if customary in that particular area).

4. Other variable-rate regulations. Transactions in which the creditor is required to comply with and has complied with the disclosure requirements of the variable-rate regulations of other Federal agencies are exempt from the requirements of § 226.19(b), by virtue of footnote 45a, and are exempt from the requirements of § 226.20(c), by virtue of footnote 45c. Those variable-rate regulations include the regulations issued by the Federal Home Loan Bank Board and those issued by the Department of Housing and Urban Development. The exception in footnotes 45a and 45c is also available to creditors that are required by state law to comply with the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 5:07-cv-04500-RMW   Document 34-3   Filed 03/28/2008   Page 7 of 14

Page 135

12 C.F.R. Pt. 226, Supp. I

federal variable-rate regulations noted above and to creditors that are authorized by title VIII of the Depository Institutions Act of 1982 (12 U.S.C. 3801 et seq.) to make loans in accordance with those regulations. Creditors using this exception should comply with the timing requirements of those regulations rather than the timing requirements of Regulation Z in making the variable-rate disclosures.

5. Examples of variable-rate transactions.

(i) The following transactions, if they have a term greater than one year and are secured by the consumer's principal dwelling, constitute variable-rate transactions subject to the disclosure requirements of § 226.19(b).

(A) Renewable balloon-payment instruments where the creditor is both unconditionally obligated to renew the balloon-payment loan at the consumer's option (or is obligated to renew subject to conditions within the consumer's control) and has the option of increasing the interest rate at the time of renewal. (See comment 17(c)(1)-11 for a discussion of conditions within a consumer's control in connection with renewable balloon-payment loans.)

(B) Preferred-rate loans where the terms of the legal obligation provide that the initial underlying rate is fixed but will increase upon the occurrence of some event, such as an employee leaving the employ of the creditor, and the note reflects the preferred rate. The disclosures under §§ 226.19(b)(1) and 226.19(b)(2)(v), (viii), (ix), and (xii) are not applicable to such loans.

(C) "Price-level-adjusted mortgages" or other indexed mortgages that have a fixed rate of interest but provide for periodic adjustments to payments and the loan balance to reflect changes in an index measuring prices or inflation. The disclosures under § 226.19(b)(1) are not applicable to such loans, nor are the following provisions to the extent they relate to the determination of the interest rate by the addition of a margin, changes in the interest rate, or interest rate discounts: Section 226.19(b)(2)(i), (iii), (iv), (v), (vi), (vii), (viii), and (ix). (See comments 20(c)-2 and 30-1 regarding the inapplicability of variable-rate adjustment notices and interest rate limitations to price-level-adjusted or similar mortgages.)

(ii) Graduated-payment mortgages and step-rate transactions without a variable-rate feature are not considered variable-rate transactions.

Paragraph 19(b)(1).

1. Substitute. Creditors who wish to use publications other than the Consumer Handbook on Adjustable Rate Mortgages must make a good faith determination that their brochures are suitable substitutes to the Consumer Handbook. A substitute is suitable if it is, at a minimum, comparable to the Consumer Handbook in substance and comprehensiveness. Creditors are permitted to provide more detailed information than is contained in the Consumer Handbook.

2. Applicability. The Consumer Handbook need not be given for variable-rate transactions subject to this section in which the underlying interest rate is fixed. (See comment 19(b)-5 for an example of a variable-rate transaction where the underlying interest rate is fixed.)

Paragraph 19(b)(2).

1. Disclosure for each variable-rate program. A creditor must provide disclosures to the consumer that fully describe each of the creditor's variable-rate loan programs in which the consumer expresses an interest. If a program is made available only to certain customers of an institution, a creditor need not provide disclosures for that program to other consumers who express a general interest in a creditor's ARM programs. Disclosures must be given at the time an application form is provided or before the consumer pays a nonrefundable fee, whichever is earlier. If program disclosures cannot be provided because a consumer expresses an interest in individually negotiating loan terms that are not generally offered, disclosures reflecting those terms may be provided as soon as reasonably possible after the terms have been decided upon, but not later than the time a non-refundable fee is paid. If a consumer who has received program disclosures subsequently expresses an interest in other available variable-rate programs subject to 226.19(b)(2), or the creditor and consumer decide on a program for which the consumer has not received disclosures, the creditor must provide appropriate disclosures as soon as reasonably possible. The creditor, of course, is

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 5:07-cv-04500-RMW   Document 34-3   Filed 03/28/2008   Page 8 of 14

Page 136

12 C.F.R. Pt. 226, Supp. I

permitted to give the consumer information about additional programs subject to § 226.19(b) initially.

2. Variable-rate loan program defined. i. Generally, if the identification, the presence or absence, or the exact value of a loan feature must be disclosed under this section, variable-rate loans that differ as to such features constitute separate loan programs. For example, separate loan programs would exist based on differences in any of the following loan features:

A. The index or other formula used to calculate interest rate adjustments.

B. The rules relating to changes in the index value, interest rate, payments, and loan balance.

C. The presence or absence of, and the amount of, rate or payment caps.

D. The presence of a demand feature.

E. The possibility of negative amortization.

F. The possibility of interest rate carryover.

G. The frequency of interest rate and payment adjustments.

H. The presence of a discount feature.

I. In addition, if a loan feature must be taken into account in preparing the disclosures required by § 226.19(b)(2)(viii), variable-rate loans that differ as to that feature constitute separate programs under § 226.19(b)(2).

ii. If, however, a representative value may be given for a loan feature or the feature need not be disclosed under § 226.19(b)(2), variable-rate loans that differ as to such features do not constitute separate loan programs. For example, separate programs would not exist based on differences in the following loan features:

A. The amount of a discount.

B. The amount of a margin.

3. Form of program disclosures. A creditor may provide separate program disclosure forms for each ARM program it offers or a single disclosure form that describes multiple programs. A disclosure form may consist of more than one page. For example, a creditor may attach a separate page containing the historical payment example for a particular program. A disclosure form describing more than one program need not repeat information applicable to each program that is described. For example, a form describing multiple programs may disclose the information applicable to all of the programs in one place with the various program features (such as options permitting conversion to a fixed rate) disclosed separately. The form, however, must state if any program feature that is described is available only in conjunction with certain other program features. Both the separate and multiple program disclosures may illustrate more than one loan maturity or payment amortization--for example, by including multiple payment and loan balance columns in the historical payment example. Disclosures may be inserted or printed in the Consumer Handbook (or a suitable substitute) as long as they are identified as the creditor's loan program disclosures.

4. As applicable. The disclosures required by this section need only be made as applicable. Any disclosure not relevant to a particular transaction may be eliminated. For example, if the transaction does not contain a demand feature, the disclosure required under § 226.19(b)(2)(x) need not be given. As used in this section, payment refers only to a payment based on the interest rate, loan balance and loan term, and does not refer to payment of other elements such as mortgage insurance premiums.

5. Revisions. A creditor must revise the disclosures required under this section once a year as soon as reasonably possible after the new index value becomes available. Revisions to the disclosures also are required when the loan program changes.

Paragraph 19(b)(2)(i).

1. Change in interest rate, payment, or term. A creditor must disclose the fact that the terms of the legal obligation permit the creditor, after consummation of the transaction, to increase (or decrease) the interest rate, payment, or term of the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

12 C.F.R. Pt. 226, Supp. I

loan initially disclosed to the consumer. For example, the disclosures for a variable-rate program in which the interest rate and payment (but not loan term) can change might read, "Your interest rate and payment can change yearly." In transactions where the term of the loan may change due to rate fluctuations, the creditor must state that fact.

Paragraph 19(b)(2)(ii).

1. Identification of index or formula. If a creditor ties interest rate changes to a particular index, this fact must be disclosed, along with a source of information about the index. For example, if a creditor uses the weekly average yield on U.S. Treasury Securities adjusted to a constant maturity as its index, the disclosure might read, "Your index is the weekly average yield on U.S. Treasury Securities adjusted to a constant maturity of one year published weekly in the Wall Street Journal." If no particular index is used, the creditor must briefly describe the formula used to calculate interest rate changes.

2. Changes at creditor's discretion. If interest rate changes are at the creditor's discretion, this fact must be disclosed. If an index is internally defined, such as by a creditor's prime rate, the creditor should either briefly describe that index or state that interest rate changes are at the creditor's discretion.

Paragraph 19(b)(2)(iii).

1. Determination of interest rate and payment. This provision requires an explanation of how the creditor will determine the consumer's interest rate and payment. In cases where a creditor bases its interest rate on a specific index and adjusts the index through the addition of a margin, for example, the disclosure might read, "Your interest rate is based on the index plus a margin, and your payment will be based on the interest rate, loan balance, and remaining loan term." In transactions where paying the periodic payments will not fully amortize the outstanding balance at the end of the loan term and where the final payment will equal the periodic payment plus the remaining unpaid balance, the creditor must disclose this fact. For example, the disclosure might read, "Your periodic payments will not fully amortize your loan and you will be required to make a single payment of the periodic payment plus the remaining unpaid balance at the end of the loan term." The creditor, however, need not reflect any irregular final payment in the historical example or in the disclosure of the initial and maximum rates and payments. If applicable, the creditor should also disclose that the rate and payment will be rounded.

Paragraph 19(b)(2)(iv).

1. Current margin value and interest rate. Because the disclosures can be prepared in advance, the interest rate and margin may be several months old when the disclosures are delivered. A statement, therefore, is required alerting consumers to the fact that they should inquire about the current margin value applied to the index and the current interest rate. For example, the disclosure might state, "Ask us for our current interest rate and margin."

Paragraph 19(b)(2)(v).

1. Discounted and premium interest rate. In some variable-rate transactions, creditors may set an initial interest rate that is not determined by the index or formula used to make later interest rate adjustments. Typically, this initial rate charged to consumers is lower than the rate would be if it were calculated using the index or formula. However, in some cases the initial rate may be higher. If the initial interest rate will be a discount or a premium rate, creditors must alert the consumer to this fact. For example, if a creditor discounted a consumer's initial rate, the disclosure might state, "Your initial interest rate is not based on the index used to make later adjustments." (See the commentary to § 226.17(c)(1) for a further discussion of discounted and premium variable-rate transactions.) In addition, the disclosure must suggest that consumers inquire about the amount that the program is currently discounted. For example, the disclosure might state, "Ask us for the amount our adjustable rate mortgages are currently discounted." In a transaction with a consumer buydown or with a third-party buydown that will be incorporated in the legal obligation, the creditor should disclose the program as a discounted variable-rate transaction, but need not disclose additional information regarding the buydown in its program disclosures. (See the commentary to § 226.19(b)(2)(viii) for a discussion of how to reflect the discount or premium in the historical example or the maximum rate and payment disclosure).

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

12 C.F.R. Pt. 226, Supp. I

Paragraph 19(b)(2)(vi).

1. Frequency. The frequency of interest rate and payment adjustments must be disclosed. If interest rate changes will be imposed more frequently or at different intervals than payment changes, a creditor must disclose the frequency and timing of both types of changes. For example, in a variable-rate transaction where interest rate changes are made monthly, but payment changes occur on an annual basis, this fact must be disclosed. In certain ARM transactions, the interval between loan closing and the initial adjustment is not known and may be different from the regular interval for adjustments. In such cases, the creditor may disclose the initial adjustment period as a range of the minimum and maximum amount of time from consummation or closing. For example, the creditor might state: "The first adjustment to your interest rate and payment will occur no sooner than 6 months and no later than 18 months after closing. Subsequent adjustments may occur once each year after the first adjustment." (See comments 19(b)(2)(viii)(A)-7 and 19(b)(2)(viii)(B)-4 for guidance on other disclosures when this alternative disclosure rule is used.)

Paragraph 19(b)(2)(vii).

1. Rate and payment caps. The creditor must disclose limits on changes (increases or decreases) in the interest rate or payment. If an initial discount is not taken into account in applying overall or periodic rate limitations, that fact must be disclosed. If separate overall or periodic limitations apply to interest rate increases resulting from other events, such as the exercise of a fixed-rate conversion option or leaving the creditor's employ, those limitations must also be stated. Limitations do not include legal limits in the nature of usury or rate ceilings under state or Federal statutes or regulations. (See § 226.30 for the rule requiring that a maximum interest rate be included in certain variable-rate transactions.) The creditor need not disclose each periodic or overall rate limitation that is currently available. As an alternative, the creditor may disclose the range of the lowest and highest periodic and overall rate limitations that may be applicable to the creditor's ARM transactions. For example, the creditor might state: "The limitation on increases to your interest rate at each adjustment will be set at an amount in the following range: Between 1 and 2 percentage points at each adjustment. The limitation on increases to your interest rate over the term of the loan will be set at an amount in the following range: Between 4 and 7 percentage points above the initial interest rate." A creditor using this alternative rule must include a statement in its program disclosures suggesting that the consumer ask about the overall rate limitations currently offered for the creditor's ARM programs. (See comments 19(b)(2)(viii)(A)-6 and 19(b)(2)(viii)(B)-3 for an explanation of the additional requirements for a creditor using this alternative rule for disclosure of periodic and overall rate limitations.)

2. Negative amortization and interest rate carryover. A creditor must disclose, where applicable, the possibility of negative amortization. For example, the disclosure might state, "If any of your payments is not sufficient to cover the interest due, the difference will be added to your loan amount." Loans that provide for more than one way to trigger negative amortization are separate variable-rate programs requiring separate disclosures. (See the commentary to § 226.19(b)(2) for a discussion on the definition of a variable-rate loan program and the format for disclosure.) If a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal loan balance will increase); however, the disclosure in § 226.19(b)(2)(viii) need not be provided.

3. Conversion option. If a loan program permits consumers to convert their variable-rate loans to fixed-rate loans, the creditor must disclose that the interest rate may increase if the consumer converts the loan to a fixed-rate loan. The creditor must also disclose the rules relating to the conversion feature, such as the period during which the loan may be converted, that fees may be charged at conversion, and how the fixed rate will be determined. The creditor should identify any index or other measure or formula used to determine the fixed rate and state any margin to be added. In disclosing the period during which the loan may be converted and the margin, the creditor may use information applicable to the conversion feature during the six months preceding preparation of the disclosures and state that the information is representative of conversion features recently offered by the creditor. The

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

12 C.F.R. Pt. 226, Supp. I

information may be used until the program disclosures are otherwise revised. Although the rules relating to the conversion option must be disclosed, the effect of exercising the option should not be reflected elsewhere in the disclosures, such as in the historical example or in the calculation of the initial and maximum interest rate and payments.

4. Preferred-rate loans. Section 226.19(b) applies to preferred-rate loans, where the rate will increase upon the occurrence of some event, such as an employee leaving the creditor's employ, whether or not the underlying rate is fixed or variable. In these transactions, the creditor must disclose the event that would allow the creditor to increase the rate such as that the rate may increase if the employee leaves the creditor's employ. The creditor must also disclose the rules relating to termination of the preferred rate, such as that fees may be charged when the rate is changed and how the new rate will be determined.

Paragraph 19(b)(2)(viii).

1. Historical example and initial and maximum interest rates and payments. A creditor may disclose both the historical example and the initial and maximum interest rates and payments.

Paragraph 19(b)(2)(viii)(A).

1. Index movement. This section requires a creditor to provide an historical example, based on a $10,000 loan amount originating in 1977, showing how interest rate changes implemented according to the terms of the loan program would have affected payments and the loan balance at the end of each year during a 15-year period. (In all cases, the creditor need only calculate the payments and loan balance for the term of the loan. For example, in a five-year loan, a creditor would show the payments and loan balance for the five-year term, from 1977 to 1981, with a zero loan balance reflected for 1981. For the remaining ten years, 1982-1991, the creditor need only show the remaining index values, margin and interest rate and must continue to reflect all significant loan program terms such as rate limitations affecting them.) Pursuant to this section, the creditor must provide a history of index values for the preceding 15 years. Initially, the disclosures would give the index values from 1977 to the present. Each year thereafter, the revised program disclosures should include an additional year's index value until 15 years of values are shown. If the values for an index have not been available for 15 years, a creditor need only go back as far as the values are available in giving a history and payment example. In all cases, only one index value per year need be shown. Thus, in transactions where interest rate adjustments are implemented more frequently than once per year, a creditor may assume that the interest rate and payment resulting from the index value chosen will stay in effect for the entire year for purposes of calculating the loan balance as of the end of the year and for reflecting other loan program terms. In cases where interest rate changes are at the creditor's discretion (see the commentary to § 226.19(b)(2)(ii)), the creditor must provide a history of the rates imposed for the preceding 15 years, beginning with the rates in 1977. In giving this history, the creditor need only go back as far as the creditor's rates can reasonably be determined.

2. Selection of index values. The historical example must reflect the method by which index values are determined under the program. If a creditor uses an average of index values or any other index formula, the history given should reflect those values. The creditor should select one date or, when an average of single values is used as an index, one period and should base the example on index values measured as of that same date or period for each year shown in the history. A date or period at any time during the year may be selected, but the same date or period must be used for each year in the historical example. For example, a creditor could use values for the first business day in July or for the first week ending in July for each of the 15 years shown in the example.

3. Selection of margin. For purposes of the disclosure required under § 226.19(b)(2)(viii)(A), a creditor may select a representative margin that has been used during the six months preceding preparation of the disclosures, and should disclose that the margin is one that the creditor has used recently. The margin selected may be used until a creditor revises the disclosure form.

4. Amount of discount or premium. For purposes of the disclosure required under § 226.19(b)(2)(viii)(A), a creditor may select a discount or premium (amount and term) that has been used during the six months preceding preparation of the disclosures, and should

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

12 C.F.R. Pt. 226, Supp. I

disclose that the discount or premium is one that the creditor has used recently. The discount or premium should be reflected in the historical example for as long as the discount or premium is in effect. A creditor may assume that a discount that would have been in effect for any part of a year was in effect for the full year for purposes of reflecting it in the historical example. For example, a 3-month discount may be treated as being in effect for the entire first year of the example; a 15-month discount may be treated as being in effect for the first two years of the example. In illustrating the effect of the discount or premium, creditors should adjust the value of the interest rate in the historical example, and should not adjust the margin or index values. For example, if during the six months preceding preparation of the disclosures the fully indexed rate would have been 10% but the first year's rate under the program was 8%, the creditor would discount the first interest rate in the historical example by 2 percentage points.

5. Term of the loan. In calculating the payments and loan balances in the historical example, a creditor need not base the disclosures on each term to maturity or payment amortization that it offers. Instead, disclosures for ARMs may be based upon terms to maturity or payment amortizations of 5, 15 and 30 years, as follows: ARMs with terms or amortizations from over 1 year to 10 years may be based on a 5-year term or amortization; ARMs with terms or amortizations from over 10 years to 20 years may be based on a 15-year term or amortization; and ARMs with terms or amortizations over 20 years may be based on a 30-year term or amortization. Thus, disclosures for ARMs offered with any term from over 1 year to 40 years may be based solely on terms of 5, 15 and 30 years. Of course, a creditor may always base the disclosures on the actual terms or amortizations offered. If the creditor bases the disclosures on 5-, 15- or 30-year terms or payment amortization as provided above, the term or payment amortization used in making the disclosure must be stated.

6. Rate caps. A creditor using the alternative rule described in comment 19(b)(2)(vii)-1 for disclosure of rate limitations must base the historical example upon the highest periodic and overall rate limitations disclosed under section 226.19(b)(2)(vii). In addition, the creditor must state the limitations used in the historical example. (See comment 19(b)(2)(viii)(B)-3 for an explanation of the use of the highest rate limitation in other disclosures.)

7. Frequency of adjustments. In certain transactions, creditors may use the alternative rule described in comment 19(b)(2)(vi)-1 for disclosure of the frequency of rate and payment adjustments. In such cases, the creditor may assume for purposes of the historical example that the first adjustment occurred at the end of the first full year in which the adjustment could occur. For example, in an ARM in which the first adjustment may occur between 6 and 18 months after closing and annually thereafter, the creditor may assume that the first adjustment occurred at the end of the first year in the historical example. (See comment 19(b)(2)(viii)(B)-4 for an explanation of how to compute the maximum interest rate and payment when the initial adjustment period is not known.)

Paragraph 19(b)(2)(viii)(B).

1. Initial and maximum interest rates and payments. The disclosure form must state the initial and maximum interest rates and payments for a $10,000 loan originated at an initial interest rate (index value plus margin adjusted by the amount of any discount or premium) in effect as of an identified month and year for the loan program disclosure. (See comment 19(b)(2)-5 on revisions to the loan program disclosure.) In calculating the maximum payment under this paragraph, a creditor should assume that the interest rate increases as rapidly as possible under the loan program, and the maximum payment disclosed should reflect the amortization of the loan during this period. Thus, in a loan with 2 percentage point annual (and 5 percentage point overall) interest rate limitations or "caps," the maximum interest rate would be 5 percentage points higher than the initial interest rate disclosed. Moreover, the loan would not reach the maximum interest rate until the fourth year because of the 2 percentage point annual rate limitations, and the maximum payment disclosed would reflect the amortization of the loan during this period. If the loan program includes a discounted or premium initial interest rate, the initial interest rate should be adjusted by the amount of the discount or premium.

2. Term of the loan. In calculating the initial and maximum payments, the creditor need not base the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 5:07-cv-04500-RMW    Document 34-3    Filed 03/28/2008    Page 13 of 14

Page 141

12 C.F.R. Pt. 226, Supp. I

disclosures on each term to maturity or payment amortization offered under the program. Instead, the creditor may follow the rules set out in comment 19(b)(2)(viii)(A)-5.

If a historical example is provided under § 226.19(b)(2)(viii)(A), the terms to maturity or payment amortization used in the historical example must be used in calculating the initial and maximum payment. In addition, creditors must state the term or payment amortization used in making the disclosures under this section.

3. Rate caps. A creditor using the alternative rule for disclosure of interest rate limitations described in comment 19(b)(2)(vii)-1 must calculate the maximum interest rate and payment based upon the highest periodic and overall rate limitations disclosed under § 226.19(b)(2)(vii). In addition, the creditor must state the rate limitations used in calculating the maximum interest rate and payment. (See comment 19(b)(2)(viii)(A)-6 for an explanation of the use of the highest rate limitation in other disclosures.)

4. Frequency of adjustments. In certain transactions, a creditor may use the alternative rule for disclosure of the frequency of rate and payment adjustments described in comment 19(b)(2)(vi)-1. In such cases, the creditor must base the calculations of the initial and maximum rates and payments upon the earliest possible first adjustment disclosed under § 226.19(b)(2)(vi). (See comment 19(b)(2)(viii)(A)-7 for an explanation of how to disclose the historical example when the initial adjustment period is not known.)

5. Periodic payment statement. The statement that the periodic payment may increase or decrease substantially may be satisfied by the disclosure in paragraph 19(b)(2)(vi) if it states for example, "your monthly payment can increase or decrease substantially based on annual changes in the interest rate."

Paragraph 19(b)(2)(ix).

1. Calculation of payments. A creditor is required to include a statement on the disclosure form that explains how a consumer may calculate his or her actual monthly payments for a loan amount other than $10,000. The example should be based upon the most recent payment shown in the historical example or upon the initial interest rate reflected in the maximum rate and payment disclosure. In transactions in which the latest payment shown in the historical example is not for the latest year of index values shown (such as in a five-year loan), a creditor may provide additional examples based on the initial and maximum payments disclosed under § 226.19(b)(2)(viii)(B). The creditor, however, is not required to calculate the consumer's payments. (See the model clauses in appendix H-4(C).)

Paragraph 19(b)(2)(x).

1. Demand feature. If a variable-rate loan subject to § 226.19(b) requirements contains a demand feature as discussed in the commentary to § 226.18(i), this fact must be disclosed. (Pursuant to § 226.18(i), creditors would also disclose the demand feature in the standard disclosures given later.)

Paragraph 19(b)(2)(xi).

1. Adjustment notices. A creditor must disclose to the consumer the type of information that will be contained in subsequent notices of adjustments and when such notices will be provided. (See the commentary to § 226.20(c) regarding notices of adjustments.) For example, the disclosure might state, "You will be notified at least 25, but no more than 120, days before the due date of a payment at a new level. This notice will contain information about the index and interest rates, payment amount, and loan balance." In transactions where there may be interest rate adjustments without accompanying payment adjustments in a year, the disclosure might read, "You will be notified once each year during which interest rate adjustments, but no payment adjustments, have been made to your loan. This notice will contain information about the index and interest rates, payment amount, and loan balance."

Paragraph 19(b)(2)(xii).

1. Multiple loan programs. A creditor that offers multiple variable-rate loan programs is required to have disclosures for each variable-rate loan program subject to § 226.19(b)(2). Unless disclosures for all of its variable-rate programs are provided initially, the creditor must inform the consumer that other closed-end variable-rate programs exist, and that

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

12 C.F.R. Pt. 226, Supp. I

disclosure forms are available for these additional loan programs. For example, the disclosure form might state, "Information on other adjustable rate mortgage programs is available upon request."

19(c) Electronic disclosures.

1. Form of disclosures. Whether disclosures must be in electronic form depends upon the following:

i. If a consumer accesses an ARM loan application electronically (other than as described under ii. below), such as online at a home computer, the creditor must provide the disclosures in electronic form (such as with the application form on its Web site) in order to meet the requirement to provide disclosures in a timely manner on or with the application. If the creditor instead mailed paper disclosures to the consumer, this requirement would not be met.

ii. In contrast, if a consumer is physically present in the creditor's office, and accesses an ARM loan application electronically, such as via a terminal or kiosk (or if the consumer uses a terminal or kiosk located on the premises of an affiliate or third party that has arranged with the creditor to provide applications to consumers), the creditor may provide disclosures in either electronic or paper form, provided the creditor complies with the timing, delivery, and retainability requirements of the regulation.

References

Statute: Section 128(b)(2) and the Real Estate Settlement Procedures Act (12 U.S.C. 2602).

Other sections: Sections 226.2, 226.17, and 226.22.

Other regulations: Regulation X (24 CFR 3500.2(a), 3500.5(b), and 3500.6(a)).

Previous regulation: None.

1981 changes: This section implements section 128(b)(2), a new provision that requires early disclosure of credit terms in certain mortgage transactions.

Section 226.20 Subsequent Disclosure Requirements

Paragraph 20(a) Refinancings.

1. Definition. A refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation, based on the parties' contract and applicable law. The refinancing may involve the consolidation of several existing obligations, disbursement of new money to the consumer or on the consumer's behalf, or the rescheduling of payments under an existing obligation. In any form, the new obligation must completely replace the prior one.

. Changes in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation.

. A substitution of agreements that meets the refinancing definition will require new disclosures, even if the substitution does not substantially alter the prior credit terms.

2. Exceptions. A transaction is subject to § 226.20(a) only if it meets the general definition of a refinancing. Section 226.20(a)(1) through (5) lists 5 events that are not treated as refinancings, even if they are accomplished by cancellation of the old obligation and substitution of a new one.

3. Variable-rate.

i. If a variable-rate feature was properly disclosed under the regulation, a rate change in accord with those disclosures is not a refinancing. For example, no new disclosures are required when the variable-rate feature is invoked on a renewable balloon-payment mortgage that was previously disclosed as a variable-rate transaction.

ii. Even if it is not accomplished by the cancellation of the old obligation and substitution of a new one, a new transaction subject to new disclosures results if the creditor either:

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.