1   MICHAEL J. AGOGLIA (CA SBN 154810)
    magoglia@mofo.com
2   WENDY M. GARBERS (CA SBN 213208)
    wgarbers@mofo.com
3   NANCY R. THOMAS (CA SBN 236185)
    nthomas@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone: (415) 268-7000
6   Facsimile: (415) 268-7522

7   Attorneys for Defendant
    BANK OF AMERICA, NATIONAL ASSOCIATION

8

9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

| | |
|---|---|
| 13 BRIAN O'DONNELL, MICHAEL VAN BELLEGHEM, and PATRICIA VAN 14 BELLEGHEM, individually, and on behalf of all others similarly situated, 15 Plaintiffs, 16 17 v. 18 BANK OF AMERICA, NATIONAL ASSOCIATION a.k.a. BANK OF AMERICA, 19 N.A., and DOES 1 through 10 inclusive, 20 Defendants. | Case No. C-07-04500 RMW (HRL) **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** Date:     April 25, 2008 Time:     9:00 a.m. Crtrm:    6 Honorable Ronald M. Whyte Complaint filed:  August 30, 2007 |

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.    PLAINTIFFS' TILA CLAIMS FAIL. ....................................................................... 2

      A.    The Payment Schedules Were Prepared as Required by TILA
            (Theory A). ................................................................................................... 2

      B.    The Disclosures Reflected the Terms of Plaintiffs' Obligations
            (Theory B). ................................................................................................... 3

      C.    The Notes Clearly Disclose the Contractual Interest Rate
            (Theory C). ................................................................................................... 4

      D.    The Loan Documents Fully Informed Plaintiffs About the
            Possibility of Negative Amortization (Theory D). ...................................... 5

      E.    The Disclosures Regarding the Discounting of the Initial Interest
            Rate Complied with TILA (Theory E). ....................................................... 8

      F.    The TILA Disclosure Statements Disclosed a Composite APR
            (Theory F). ................................................................................................... 9

      G.    The Effect of the Payment Cap Was Reflected in the Disclosures
            (Theory G). ................................................................................................... 9

II.   PLAINTIFFS' CONTRACT-BASED CAUSES OF ACTION FAIL. ......................... 10

      A.    Plaintiffs Attempt to Manufacture Contractual Promises Out of
            Whole Cloth. .............................................................................................. 10

      B.    As a Matter of Law, Plaintiffs Cannot State a Claim for Tortious
            Breach of the Implied Covenant of Good Faith and Fair Dealing. ........... 12

III.  PLAINTIFFS' FRAUD-BASED CAUSES OF ACTION FAIL. ................................ 14

      A.    Plaintiffs' Fraudulent Omissions Claim Fails. .......................................... 14

      B.    The UCL Claim Is Not Pled with the Specificity Required by Rule
            9(b). ............................................................................................................ 15

CONCLUSION ................................................................................................................. 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4    *Bell Atlantic Corp. v. Twombly*,
           127 S. Ct. 1955 (2007) .................................................................................................... 14

5

     *Bionghi v. Metropolitan Water District*,
6          70 Cal. App. 4th 1358 (1999) .......................................................................................... 13

7    *Cates Constr., Inc. v. Talbot Partners*,
           21 Cal. 4th 28 (1999) ....................................................................................................... 13

8

9    *Falk v. Gen. Motors Corp.*,
           496 F. Supp. 2d 1088 (N.D. Cal. 2007) (Alsup, J.) ........................................................ 15

10

11   *Foley v. Interactive Data Corp.*,
           47 Cal. 3d 654 (1988) ...................................................................................................... 13

12   *Freeman & Mills, Inc. v. Belcher Oil Co.*,
           11 Cal. 4th 85 (1995) ....................................................................................................... 13

13

14   *Guz v. Bechtel National, Inc.*,
           24 Cal. 4th 317 (2000) ..................................................................................................... 13

15

16   *Hoey v. Sony Elecs. Inc.*,
           515 F. Supp. 2d 1099 (N.D. Cal. 2007) (Whyte, J.) ....................................................... 15

17   *Lamke v. Sunstate Equipment Co.*,
           387 F. Supp. 2d 1044 (N.D. Cal. 2004) ........................................................................... 13

18

19   *Linear Technology Corp. v. Applied Materials, Inc.*,
           152 Cal. App. 4th 115 (2007) .......................................................................................... 14

20

21   *Puentes v. Wells Fargo Home Mortgage, Inc.*,
           160 Cal. App. 4th 638 (2008) .......................................................................................... 12

22   *Stetler v. Greenpoint Mortgage Funding, Inc.*,
           No. 07-123, 2008 WL 192405 (E.D. Cal. Jan. 23, 2008) ............................................... 14

23

24   *Vess v. Ciba-Geigy Corp. USA*,
           317 F.3d 1097 (9th Cir. 2003) ......................................................................................... 15

25

26   *Washington v. Baenziger*,
           673 F. Supp. 1478 (N.D. Cal. 1987) (Weigel, J.) ........................................................... 15

27   *Wilkins v. Nat'l Broad. Co.*,
           71 Cal. App. 4th 1066 (1999) .......................................................................................... 14

28

ii

1

**STATUTES AND RULES**

2

12 C.F.R.

3
§ 226.17 ..................................................................................................... 3, 4, 5, 6
§§ 226.17 and 226.19 ........................................................................................ 2, 4, 5

4
§ 226.17(a)(1) ......................................................................................................... 2
§ 226.17 ......................................................................................................... 3, 4, 5

5
§ 226.17(c)(8) ........................................................................................................ 9
§ 226.18(g) ................................................................................................... 2, 3, 5

6
§ 226.19 .................................................................................................... *passim*

7
§ 226.19(b)(2)(v) ................................................................................................... 8
§ 226.22 ....................................................................................................... 2, 5, 9

8
§ 226.30 ................................................................................................................. 4
pt. 226, Supp. I, cmt. 17(a)(1)-5 ........................................................................... 5

9
pt. 226, Supp. I, cmt. 19(b)(2)(vii)-2 ................................................................. 6, 7
pt. 226, Supp. I, cmts. 17(c)(1)-1, 8, & 10 ........................................................ 2, 5

10
pt. 226, App. H-4(C) .............................................................................................. 6

11
pt. 226, App. J ............................................................................................... 2, 5, 9

12
15 U.S.C.
§ 1604(b) ......................................................................................................... 6, 10

13
§ 1640(f) .......................................................................................................... 6, 10

14
Fed. R. Civ. P

15
9(b) ....................................................................................................................... 15

16
Cal. Civ. Code
§ 1641 ................................................................................................................... 12

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs' Opposition largely concedes that plaintiffs were fully aware of the terms of their payment-option adjustable rate mortgage ("Option ARM") loans from Bank of America. Now, in light of the current market, they nevertheless ask the Court to undo their deals. Plaintiffs' Notes, TILA Disclosure Statements, and Program Disclosure (collectively "Loan Documents") fully apprised them that:

- The Option ARM loans had the potential for negative amortization;

- Plaintiffs could avoid negative amortization by choosing either the fully-amortizing or the interest-only payment option; and

- The interest would accrue on the loans at a rate tied to an Index; but

- The monthly Minimum Payments they were obligated to make were capped in the early years of the loans, and would not go up by more than 7.5%, regardless of how the Index fluctuated.

Unable to deny the foregoing, plaintiffs attempt to survive here by misconstruing and misapplying the requirements of the Truth in Lending Act ("TILA") and ignoring key provisions of their Loan Documents. In particular, plaintiffs conveniently overlook the complete payment schedules set forth on the TILA Disclosure Statements. Read in their entirety, those schedules disclose a payment plan that is sufficient to cover all principal and accrued interest over the life of the loans. Similarly, in arguing that Bank of America promised plaintiffs that their monthly payments "would be . . . applied to both principal and interest," plaintiffs conveniently overlook the fact that their Notes made absolutely no such promise, and instead specifically informed them that making only the Minimum Payment might not be sufficient to cover both accrued interest and principal. Finally, plaintiffs pretend that negative amortization was "absolutely certain" to occur, even though it was not. Plaintiffs had the option of making fully-amortizing or interest-only payments, either of which would always have been sufficient to avoid negative amortization.

Because their claims fail as a matter of law, the Second Amended Complaint ("SAC") should be dismissed with prejudice.

REPLY ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. C-07-04500 RMW (HRL)
sf-2491222

**ARGUMENT**

**I.    PLAINTIFFS' TILA CLAIMS FAIL.**

    **A.    The Payment Schedules Were Prepared as Required by TILA (Theory A).[1]**

Plaintiffs allege that Bank of America violated 12 C.F.R. §§ 226.17 and 226.19 by failing to clearly and conspicuously "disclose the interest rate upon which the payments listed in the [TILA Disclosure Statements] are based."  (Opp'n 11:16-18 (quoting SAC ¶ 67).)  TILA, though, contains no such requirement.

As an initial matter, plaintiffs misread the "clear and conspicuous" requirement in § 226.17(a)(1) as if it were a stand-alone disclosure requirement.  It is not.  It is a standard applied to very specific sections of Subpart C.  This is why § 226.17(a)(1) states "[t]he creditor shall make the ***disclosures required by this subpart*** clearly and conspicuously in writing."  12 C.F.R. § 226.17(a)(1) (emphasis added).

Plaintiffs also continue to confuse the contractual interest rate and the Annual Percentage Rate ("APR"), in what appears to be a deliberate attempt to obfuscate.  Regulation Z requires the TILA Disclosure Statement to disclose an APR, not the contractual interest rate upon which the payment schedule is based.  As explained in Bank of America's opening brief, the APR is ***different*** from the interest rate, and calculation of the APR is governed by 12 C.F.R. § 226.22 and 12 C.F.R. pt. 226, App. J.  Moreover, the calculation of the payment schedule is governed by 12 C.F.R. § 226.18(g), which requires the lender to make a number of TILA-mandated assumptions in calculating the scheduled payments.  *See* 12 C.F.R. pt. 226, Supp. I, cmts. 17(c)(1)-1, 8, & 10.  Pursuant to these mandated assumptions, the payment schedules set forth in the TILA Disclosure Statements did include both principal and interest, sufficient to repay the entire loan over the scheduled loan term.  It is true that the listed payments are lower in the earlier years of the loan and increase in the later years, but this is a reflection of the payment cap feature of the loan.  It is not true that the listed payments are insufficient to pay off all principal and accumulated interest over

---

[1] This reply brief addresses plaintiffs' TILA theories in the order they were presented in the SAC, and labels the first one "Theory A," etc.

1   the life of the loan.  Tellingly, plaintiffs do not allege that the payment schedule was not prepared

2   in the manner specified by 12 C.F.R. § 226.18(g).  As explained in Bank of America's opening

3   brief, nothing in Regulation Z requires, or even allows, the TILA Disclosure Statements to explain

4   how the payment schedule was calculated.  Accordingly, plaintiffs' claim that Bank of America

5   should have disclosed "the interest rate upon which the payments listed in the TILDS are based" is

6   simply not actionable.[2]  (Opp'n 11:17-18.)

7                **B.     The Disclosures Reflected the Terms of Plaintiffs' Obligations (Theory B).**

8           Plaintiffs next contend that Bank of America violated 12 C.F.R. § 226.17 by failing to list

9   "payment amount[s] in the TILDS [that] reflect[ed] the[ir] legal obligation[s]."  (Opp'n 12:4-5.)  In

10  arguing that the payment schedules set forth in their TILA Disclosure Statements were inaccurate,

11  plaintiffs purposefully turn a blind eye to the second half of the schedules.

12          A central feature of plaintiffs' loans was the payment cap, which limited how much the

13  required Minimum Payments could increase in the early years of the loans.  While plaintiffs had

14  the option of making fully-amortizing or interest-only payments, they were only legally obligated

15  to make the Minimum Payment.  (SAC Exs. 1 at 2-3, 2 at 2-3.)  The payment schedules set forth

16  on the TILA Disclosure Statements reflect this term of the parties' agreements.  As a result of the

17  payment cap term, Mr. O'Donnell's listed payments did not increase dramatically until month 29,

18  when the loan would reach 115% of its original principal balance, and the Van Belleghems' listed

19  payments did not increase dramatically until month 61, when the loan would reach its five-year

20  Reamortization Date.  (Both such events triggered reamortization and subsequent Minimum

21  Payment adjustments pursuant to Section 4(G) of the Notes.)  Plaintiffs pretend that the TILA

22  Disclosure Statements simply listed the initial, low monthly payments as being in effect throughout

23  the life of the loan, and thereby hid from them the possibility of negative amortization.  (Opp'n

24  12.)  This is not true.  The payment schedules clearly set forth dramatic increases in payments a

25  few years into the loans.  In month 29, Mr. O'Donnell's listed payment jumped from $1,739.54 to

26

27  [2] Plaintiffs' apparent belief that language in the Notes can give rise to a violation of 12 C.F.R.
    § 226.17 and 12 C.F.R. § 226.19 is similarly misguided, as these sections do not apply to Notes.

28

1   $4,748.31; in month 61 the Van Belleghems' listed payment jumped from $1,311.76 to $2,208.03.

2   (SAC Exs. 1 at 6, 2 at 6.)  Thus, the TILA Disclosure Statements highlighted the fact that, if

3   plaintiffs chose to make only the Minimum Payments, they would have dramatically increased

4   payment obligations a few years into the loans.

5       Significantly, plaintiffs' Opposition later concedes that the payment schedules set forth in

6   the TILA Disclosure Statements do reflect the parties' legal obligations:  "the payment amounts

7   listed in the [TILA Disclosure Statements] are, on some level, true (<u>e.g.</u>, they are the payment

8   obligations Plaintiffs were required to make)."  (Opp'n 15:20-21.)  Plaintiffs themselves thus

9   acknowledge that they do not really have a claim for violation of 12 C.F.R. § 226.17.  The payment

10  amounts listed in their TILA Disclosure Statements accurately reflected their legal obligations.

11      **C.    The Notes Clearly Disclose the Contractual Interest Rate (Theory C).**

12      Plaintiffs' contention that Bank of America "failed to disclose the actual interest rate

13  charged in a clear and conspicuous manner under 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19,"

14  (Opp'n 7:8-9), again misconstrues the requirements of Regulation Z and ignores the relevant

15  language in the Notes.  Tellingly, plaintiffs' Opposition does not contest that the Notes accurately

16  and precisely described the applicable rates of interest.  Nor does it contest that the TILA

17  Disclosure Statements accurately calculated and disclosed a distinct figure, the APR.

18      Instead, plaintiffs' theory is that the Notes provided for initial interest rates of 1-3%, the

19  payment schedules in the TILA Disclosure Statements were based on the initial interest rates, but

20  the "interest rate" disclosed on the TILA Disclosure Statements was "a completely different

21  interest rate."  (Opp'n 5:14-18.)  Plaintiffs' theory turns Regulation Z on its head.  Bank of

22  America complied with the actual requirements of Regulation Z.

23      First, plaintiffs do not dispute that Bank of America complied with the only requirement

24  relating to disclosures that must be in a Note, which is found at 12 C.F.R. § 226.30, and disclosed

25  the maximum possible interest rate.[3]  Second, plaintiffs do not dispute that the TILA Disclosure

26  _____

27  [3] Plaintiffs' claim that Bank of America argues that §§ 226.17 and 226.19 do not apply to these
    loans is a misstatement of Bank of America's position.  (Opp'n 6:17-18.)  Bank of America's
    opening brief explained that § 226.19 does not apply to the Note or to the TILA Disclosure

28                                                  *(Footnote continues on following page)*

1    Statements accurately disclosed the APR, which, by definition, differs from the contractual interest

2    rate.  12 C.F.R. § 226.22 and 12 C.F.R. pt. 226, App. J.  (SAC Exs. 1 (Mr. O'Donnell's APR was

3    9.945%), 2 (the Van Belleghems' APR was 5.378%).)  At most, plaintiffs contend that the APR is

4    "unrelated" to the payment schedule.  (Opp'n 5:16-18.)  This is not a TILA violation.

5              As discussed, Regulation Z sets forth the precise method of calculating both the APR and

6    the payment schedule, and plaintiffs do not contend that Bank of America's calculations were at

7    odds with Regulation Z's provisions.  12 C.F.R. § 226.18(g); 12 C.F.R. pt. 226, Supp. I,

8    cmts. 17(c)(1)-1, 8, & 10.  Plaintiffs were legally bound only to make the monthly Minimum

9    Payment, which was capped at $1,505.28 for the first year of Mr. O'Donnell's loan and $982.25

10   for the first year of the Van Belleghems' loan.  The TILA Disclosure Statements accurately reflect

11   this payment-cap term.  Plaintiffs' argument that Bank of America "failed to disclose the actual

12   interest rate" completely ignores the regulatory framework.  Sections 226.17 and 226.19 do not

13   require (or even allow) disclosure of any rate on the TILA Disclosure Statement other than the

14   APR.  Moreover, Bank of America could not have disclosed the manner in which the payment

15   schedule was calculated because to do so would violate Regulation Z.  *See* 12 C.F.R. pt. 226,

16   Supp. I, cmt. 17(a)(1)-5 (such a disclosure would not be "directly related" information).

17

18        **D.    The Loan Documents Fully Informed Plaintiffs About the Possibility of
                  Negative Amortization (Theory D).**

19             Plaintiffs next contend that Bank of America violated 12 C.F.R. § 226.17 and 12 C.F.R.

20   § 226.19 by "fail[ing] to clearly and conspicuously disclose that negative amortization was certain

21   to occur if Plaintiffs followed the payment schedules provided by Defendant."  (Opp'n 7:13-15.)

22   This theory is both factually and legally flawed.

23

24   _____

     *(Footnote continued from previous page)*

25   Statement, and that § 226.17 does not apply to the Note.  Plaintiffs do not contest this.  Plaintiffs'
     assertion that the "clear and conspicuous" standard applicable to disclosures mandated by Subpart

26   C also applies to disclosures mandated by § 226.30 is wrong.  (Opp'n 6:20-22.)  Subpart C
     contains §§ 226.17-226.24, but does not extend to Section 226.30.  (Opp'n 6:19.)  In any event,

27   plaintiffs' confusion is irrelevant because Bank of America clearly disclosed the maximum
     interest rate.  (SAC Ex. 1 and 2 at Section 4(D).)

28

                                            5

As an initial matter, § 226.17 does not require any disclosures regarding negative amortization. Section 226.19 is the only provision of Regulation Z that requires disclosures regarding negative amortization, which are to be made in the Program Disclosures, not the TILA Disclosure Statements or the Notes. 12 C.F.R. § 226.19. Plaintiffs' new contention that their Program Disclosure did not comply with the requirements of § 226.19 was not raised in their SAC and rests upon a gross mischaracterization of § 226.19.

Regulation Z and the Commentary do not require a statement that negative amortization is certain to occur. Rather, "[a] creditor must disclose, where applicable, the ***possibility*** of negative amortization. For example, the disclosure might state, 'If any of your payments is not sufficient to cover the interest due, the difference will be added to your loan amount.'" 12 C.F.R. pt. 226, Supp. I, cmt. 19(b)(2)(vii)-2 (emphasis added). Bank of America did this. The first page of the Program Disclosure stated, in italics, that "[*t*]*his loan has the potential for deferred interest, also known as negative amortization*." (Declaration of Pamela Sullivan in Support of Motion to Dismiss Plaintiffs' First Amended Complaint ("Sullivan Decl.") Ex. A at 1, filed on December 21, 2007 (Docket Document 14).) The Program Disclosure also explained that "[i]f interest on your loan for a month is more than the minimum payment, your loan will have deferred interest, also known as negative amortization." (Sullivan Decl. Ex. A at 2.)[4] Because Bank of America's Program Disclosure complied with the requirements of Regulation Z, as further elaborated by the Commentary, Bank of America cannot be deemed to have violated TILA. 15 U.S.C. § 1640(f) (There is no TILA liability for "any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board[.]").

Plaintiffs' reliance on language in the Commentary relating to options is misplaced. (Opp'n 7.) Paragraph 226.19(b)(2)(vii)-2 states that "[i]f a consumer is given the option to cap

---

[4] Plaintiffs also seem to object to the Program Disclosure's statement that "your loan payment is based on the interest rate, loan term and loan balance." (Opp'n 8:6-8.) This language is derived, almost word for word, from the model form in Appendix H-4(c) to Regulation Z. 12 C.F.R. pt. 226, App. H-4(C). There can thus be no doubt that this statement is Regulation Z-compliant. 15 U.S.C. § 1604(b) (providing that a creditor that uses the language of the model form "shall be deemed to be in compliance with [TILA]").

REPLY ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. C-07-04500 RMW (HRL)
sf-2491222

monthly payments, the creditor must fully disclose the rules relating to the option, including the

effects of exercising it (such as negative amortization occurs and that the principal balance will

increase)."  12 C.F.R. pt. 226, Supp. I, cmt. 19(b)(2)(vii)-2.  This Paragraph does not apply to Bank

of America's loan program.  By its terms, this Paragraph applies only when the borrower has the

"option," as that term is traditionally understood, to cap monthly payments.  Because the capping

of monthly payments in plaintiffs' loans is automatic, and does not require plaintiffs to take

affirmative steps to exercise, the cited Paragraph does not apply.

In any event, the Program Disclosures did fully disclose the effects of selecting the

Minimum Payment option:

> **Minimum Payment**.  This is the minimum amount you must pay. . . .
> This amount will appear on all your monthly billing statements.  *If*
> *interest on your loan for a month is more than the minimum payment,*
> *your loan will have deferred interest, also known as negative*
> *amortization.  This option may cost you more, as the monthly unpaid*
> *interest will begin accruing interest the following month.*  Please refer to
> the Deferred Interest Section below.

(Sullivan Decl. Ex. A at 2 (emphasis added).)  The "Deferred Interest" section went on to provide:

> The amount of interest not covered by your monthly payment (the deferred
> interest) would be added to your loan balance (principal) each month and will
> accrue interest.  *The result is that the amount you owe on your principal can*
> *increase instead of decrease. This means you could owe more at the end of*
> *the mortgage term than the original principal balance*[.]

(*Id*. (emphasis added).)  The Program Disclosure also explicitly described the alternative payment

choices and their effect on avoiding negative amortization:

> **Interest Only Payment.**  This is the amount sufficient to pay all of the
> monthly interest, but not principal.  This amount will appear on your
> monthly billing statement only if it is more than the Minimum
> Payment amount.  *This option eliminates deferred interest, also*
> *known as negative amortization*, but may require a substantially
> higher payment at the next Special Payment Adjustment and on the
> Maturity Date.

> **Principal and Interest Payment.**  This is the monthly payment
> amount sufficient to fully amortize your loan over its remaining term
> in substantially equal payments.  This amount will appear on your
> monthly billing statement only if it is more than the Minimum
> Payment Amount.  By making this payment every month, your
> original loan balance will be paid off at the end of the scheduled loan
> term.

(*Id.* (emphasis added).)[5]  In addition, the Program Disclosure twice advised, in bold letters, how to avoid negative amortization:

> **You may avoid deferred interest, also known as negative amortization, by payment of either the Interest Only Payment or the Principal and Interest Payment.**

(*Id.*)  Bank of America fully disclosed when negative amortization would occur and the impact of selecting the Minimum Payment option.

Contrary to plaintiffs' claims, Bank of America could not have disclosed that negative amortization was always certain to occur if plaintiffs selected the Minimum Payment option, because it was not.  Over the life of the loan, there would be many instances in which selecting the Minimum Payment option would be sufficient to avoid negative amortization.  For example, in the first month of year 6, after the mandatory 5-year reamortization event (SAC Ex. 1 at 2; Ex. 2 at 2), making the Minimum Payment would be sufficient to cover both accrued principal and interest. Thereafter, making the Minimum Payment was as likely to cover both accrued principal and interest as not (i.e., the Index was equally likely to go up or down, while the payments remained fixed for a year).  (Notes Section 4(e) (SAC Ex. 1 at 2; Ex. 2 at 2).)  It thus would have violated TILA to state that negative amortization was certain to occur by making the Minimum Payment.

**E.    The Disclosures Regarding the Discounting of the Initial Interest Rate Complied with TILA (Theory E).**

Plaintiffs next contend that Bank of America violated 12 C.F.R. § 226.19 by failing to disclose that the initial rate was discounted.  (Opp'n 9-10.)  The disclosure of the discounting of the initial interest rate is to be made in the Program Disclosure, not in the Note or the TILA Disclosure Statement.  12 C.F.R. § 226.19(b)(2)(v).  Plaintiffs' Program Disclosure does contain the required disclosure regarding the initially discounted interest rate.  It provides:

---

[5] Bank of America cited the Federal Reserve Board's description of Option ARM loans in its "Consumer Handbook on Adjustable-Rate Mortgages" for background purposes and does not rely on it as evidence.  Notwithstanding plaintiffs' objection, plaintiffs do not contend that they did not understand their payment options.  Nor could they.  The availability of these three payment options was also set forth in their Notes.  (SAC Exs. 1, 2 at Section 4(H).)

1

2

> The initial interest rate may not be based on the index that is used to make later adjustments.  It may be less than the index plus the margin.

3

(Sullivan Decl. Ex. A at 1.)  Plaintiffs' allegations must yield to this actual language.

4

### F.    The TILA Disclosure Statements Disclosed a Composite APR (Theory F).

5

Plaintiffs argue that Bank of America failed to disclose the composite interest rate

6

pursuant to Paragraph 226.17(c)(1)-8 of the Commentary (mistakenly cited as 12 C.F.R.

7

§ 226.17(c)(8)).  (Opp'n 10:18-20.)  This Paragraph applies to the TILA Disclosure Statement, and

8

not to the Note.  Bank of America's TILA Disclosure Statements did, in fact, disclose a composite

9

APR, as required by Paragraphs 226.17(c)(1)-8 and 226.17(c)(1)-10 of the Commentary.  (SAC

10

Exs. 1, 2.)  As discussed above, Regulation Z mandates the specific method by which the APR

11

disclosed in the TILA Disclosure Statement must be calculated.  12 C.F.R. § 226.22 and 12 C.F.R.

12

pt. 226, App. J.  Plaintiffs do not contend that the APR listed in their TILA Disclosure Statements

13

was improperly calculated.[6]

### G.    The Effect of the Payment Cap Was Reflected in the Disclosures (Theory G).

14

15

Essentially repeating prior arguments, plaintiffs next contend that Bank of America

16

violated Paragraph 226.17(c)(1)-10.iii of the Commentary because its disclosures did not reflect

17

"the effect of [the] payment cap."  (Opp'n 13:8-12.)  As set forth above, a cursory review of the

18

TILA Disclosure Statements demonstrates that this argument is nonsense.  Plaintiffs do not, and

19

cannot, dispute that the payment schedules listed on their TILA Disclosure Statements were

20

calculated by applying the payment cap and reamortization provisions of their Notes.  (*See* Mem.

21

16.)  That is why the payments increase dramatically in month 29, in Mr. O'Donnell's case, and in

month 61, in the Van Belleghems' case.  (SAC Exs. 1 at 6, 2 at 6.)

22

23

Recognizing this serious flaw in their argument, plaintiffs try to stretch the requirements

24

of Paragraph 226.17(c)(1)-10.iii of the Commentary by arguing that Bank of America should also

have provided an *explanation of the ramifications* of the payment cap—i.e., that the payment cap

25

26

---

[6] As this section of the Commentary pertains only to disclosures that must be made in the TILA Disclosure Statement, plaintiffs' allegations regarding the terms of their Notes cannot give rise to a violation of Paragraph 226.17(c)(1)-8 of the Commentary.

27

28

9

1   would result in some exact amount of negative amortization. (Opp'n 13.) Nothing in Regulation Z

2   or the Commentary requires this. On the contrary, the model TILA Disclosure Statement form set

3   forth in Appendix H of Regulation Z lacks the type of explanation plaintiffs seek. Bank of

4   America's TILA Disclosure Statements followed the model form. As such, they complied with

5   Regulation Z. *See* 15 U.S.C. § 1604(b) ("A creditor or lessor shall be deemed to be in compliance

6   with the disclosure provisions of this subchapter . . . if the creditor or lessor . . . uses any

7   appropriate model form or clause as published by the Board[.]"); 15 U.S.C. § 1640(f).[7]

8   **II.    PLAINTIFFS' CONTRACT-BASED CAUSES OF ACTION FAIL.**

9       **A.    Plaintiffs Attempt to Manufacture Contractual Promises Out of Whole Cloth.**

10      Abandoning the allegation that Bank of America promised one interest rate and charged

11  another (SAC ¶¶ 161-67), plaintiffs now assert a single breach of contract claim. They claim that

12  Bank of America breached their contracts "by failing to apply any portion of [their] monthly

13  payments towards their Principal loan balances." (Opp'n 21:20-22.) A review of the Notes

14  demonstrates that the supposedly breached promise simply does not exist.

15      Nowhere in the Notes does Bank of America promise plaintiffs that their monthly

16  payment obligations will be sufficient to cover both principal and interest. On the contrary, as

17  fully laid out in Bank of America's opening brief, the Notes make it clear that negative

18  amortization may occur and that, if the borrower selects the Minimum Payment option, it might not

19  be sufficient to cover both principal and interest. Section 3(A) of the Notes specifies how

20  payments will be applied in such an instance:

21          Each monthly payment will be applied as of its scheduled due date and will be
22          applied first to current interest, then to prior unpaid interest, and the remainder
            to Principal.

23  Section 4(F) warns the borrower that negative amortization is possible:

24

25      [7] Plaintiffs' assertion that Bank of America "knew what the exact amount of the monthly
26  shortfalls would be prior to loan closings" is wholly without merit. (Opp'n 13:21-22.) Bank of
    America could not predict how the Index would fluctuate. (*See* SAC Exs. 1, 2 at Section 4.) Nor
27  could it predict whether plaintiffs would elect to make the Minimum Payments, fully-amortizing
    payments, or interest-only payments.
28

**Principal Balance Adjustments—Deferred Interest (Negative Amortization)**  If my monthly payment is less than the amount necessary to pay the full amount of interest for that month, the portion of interest that is unpaid will be added to the principal balance of my loan as of the due date for such payment and will accrue interest at the rate in effect from time to time in accordance with this Note.

And, Section 4(H) highlights the fact that, if the borrower selects the Minimum Payment option, it might not be sufficient to cover both principal and interest:

If the Required Payment is insufficient to fully amortize my loan as a result of the application of the Annual Payment Cap or principal balance adjustments, I will have the option to make a fully amortizing payment, which is an amount sufficient to pay off my loan in substantially equal payments over its remaining term at its then interest rate.  If the Required Payment is not sufficient to pay all of the interest owed for that month, *which would result in negative amortization*, I will also have the option to make an interest-only payment, which will be sufficient to pay the monthly interest and *avoid negative amortization*, but will not reduce the principal balance.

(SAC Ex. 1 at 1-3; Ex. 2 at 1-3 (emphasis added).)

Cavalierly casting this directly-on-point contractual language to the side, plaintiffs latch on to a single sentence in the Notes—"I will pay principal and interest by making a payment every month"—and attempt to endow it with a meaning it will not support.  (Opp'n 21:25-26.)  This sentence does ***not*** provide that "Lender will apply the borrower's payment to both principal and interest every month."  Rather than imposing obligations on Bank of America, the language imposes obligations on plaintiffs.  It provides that they are responsible for paying off all principal and interest, by making a payment every month.  The language is unambiguous.  It accurately describes that plaintiffs are obligated to make monthly payments that, at the end of the thirty-year period of their loans, will, in total, have been sufficient to pay off all principal and accrued interest. The language does not provide that any particular monthly payment will be sufficient to cover both accrued interest and principal.  Instead, the Notes expressly warn that negative amortization may occur with the Minimum Payment option.  (*See* Mem. 22-23.)  Plaintiffs' proposed construction cannot be reconciled with the prospect of negative amortization.  It would have the effect of reading the negative amortization and payment allocation provisions out of the Note.  Plaintiffs' proposed construction thus is at odds with the basic canon requiring that contracts be construed in

1 their entirety.  *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to
2 give effect to every part[.]").

3   It is also significant to note that Bank of America did not pull the "I will pay principal and
4 interest by making a payment every month" language out of thin air.  It is modeled on Fannie
5 Mae's Negotiated Multistate Adjustable Rate Note Form 3524, the model note for payment-cap,
6 adjustable rate mortgages, which permit negative amortization, like the loans at issue here.
7 (Defendant's Request for Judicial Notice for Reply in Support of Motion to Dismiss Plaintiffs'
8 Second Amended Complaint, Ex. A.)  *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal.
9 App. 4th 638, 649-50 (2008) (affirming summary judgment for bank where bank's method of
10 interest calculation was consistent with Fannie Mae and Freddie Mac standards).

11   Finally, plaintiffs attempt to make much of the fact that the Notes employ the word "if."
12 (Opp'n 22.)  This argument is a red herring.  A key feature of plaintiffs' Option ARM loans is that
13 they provided three payment options:  (1) Minimum Payment; (2) interest only; and (3) fully
14 amortizing.  (*See* Mem. 3, 11, 22.)  Whether there would be negative amortization depended on
15 what payment option plaintiffs selected, among other things.  *If* plaintiffs selected the Minimum
16 Payment option, negative amortization might occur; *if* they selected one of the other two payment
17 options, it would not.  Moreover, even selecting the Minimum Payment option was *not* absolutely
18 certain to result in negative amortization.  Over the life of the loans, which the Notes, by necessity,
19 were drafted to cover, there would be instances in which selecting the Minimum Payment option
20 would be sufficient to avoid negative amortization.  *See infra* Section I(D).  Accordingly, there is
21 nothing suspicious about the Notes employing the word "if."

22   Nowhere in the parties' agreements does Bank of America promise to apply monthly
23 payments to both principal and interest.  Plaintiffs' breach of contract claim should be dismissed.

24
25   **B.    As a Matter of Law, Plaintiffs Cannot State a Claim for Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing.**

26   Plaintiffs' Opposition identifies nothing that Bank of America did that amounted to a
27 tortious breach of the implied covenant.  Although the SAC alleges that Bank of America breached
28 the implied covenant (1) by promising low, fixed interest rates for a period of 3-5 years and

charging higher interest rates and (2) by promising, but failing, to apply plaintiffs' payments to principal (SAC ¶¶ 175-78), the Opposition abandons the first argument, and as set forth above, the second claim is simply untrue.

In addition to being in irreconcilable conflict with their actual Loan Documents, plaintiffs' implied covenant claims are also invalid under California law. A "special relationship" must exist for tortious breach of the implied covenant to be actionable. It does not exist here. Plaintiffs completely ignore *Bionghi v. Metropolitan Water District*, 70 Cal. App. 4th 1358, 1370 (1999), which rejects the notion that a plaintiff can obtain tort recovery for breach of the implied covenant absent a special relationship. Sound policy reasons exist for limiting breach of the implied covenant to contract remedies. As the Supreme Court of California has stated, "The insurance cases [allowing tort recovery under the implied covenant] were a major departure from traditional principles of contract law." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988). Indeed, plaintiffs do not cite a single decision permitting tort recovery for breach of the implied covenant in the bank-borrower context. Thus, they cannot get around the authorities Bank of America cited. (Mem. 23-24.)

The Supreme Court of California has recognized "*only one exception* to that general rule: tort remedies are available for breach of the covenant in cases involving insurance policies." *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999) (emphasis added). Plaintiffs cite irrelevant decisions, confusing their asserted claim for <u>tortious</u> *breach of the implied covenant* with two claims not even alleged in the SAC: (1) <u>contract</u> *breach of the implied covenant* and (2) <u>tortious</u> *breach of contract*. Plaintiffs' reliance on *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317 (2000), and *Lamke v. Sunstate Equipment Co.*, 387 F. Supp. 2d 1044 (N.D. Cal. 2004), is thus misplaced. Unlike the claim here, *Guz* and *Lamke* only address the claim for contractual breach of the implied covenant. *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85 (1995), is also of no help to plaintiffs, as it only speaks to tortious breach of contract, not tortious breach of the implied covenant. *Id.* at 102 (overruling precedent establishing tort of bad-faith denial of contract). Accordingly, the claim for tortious breach of the implied covenant must be dismissed.

III.    **PLAINTIFFS' FRAUD-BASED CAUSES OF ACTION FAIL.**

A.    **Plaintiffs' Fraudulent Omissions Claim Fails.**

There can be no fraudulent omissions where the alleged material facts were not suppressed, but rather, were actually disclosed in the Loan Documents plaintiffs received.  *See Stetler v. Greenpoint Mortgage Funding, Inc.*, No. 07-123, 2008 WL 192405, at *7 (E.D. Cal. Jan. 23, 2008) ("Plaintiff read and signed the documents that disclosed the issues that he now complains of.  That he may not have understood the meaning of the documents, as he now seems to contend, does not render otherwise sufficient disclosures ineffective.").  As set forth above, Bank of America's Loan Documents did set forth all of the supposedly concealed items, namely: (i) the contractual rate of interest, (2) the possibility of negative amortization (which was not certain to occur), and (3) the fact that the initial interest rate was not based on the Index, but was discounted.  (Opp'n 14-15.)  The fraudulent omissions claim is thus without factual foundation.

The fraudulent omissions claim also fails, as a matter of law, because there was no duty to make additional disclosures.  To the extent plaintiffs suggest that a contractual relationship in and of itself is enough to trigger the duty to disclose, that is incorrect.  (Opp'n 14.)  Such a relationship is necessary, but not sufficient, to trigger the duty to disclose.  *See Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1082 (1999) (active concealment, exclusive knowledge, and partial representations each "presuppose[] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise").  Plaintiffs plead no factual predicate for their assertion that Bank of America supposedly had "exclusive knowledge" of the facts it "actively concealed."  They do not and cannot allege, for example, that Bank of America had sole access to the Loan Documents.  Instead, plaintiffs merely recite the phrases "actively concealed," "exclusive knowledge," and "facts known solely to them."  (SAC ¶¶ 129-30.)  These bare allegations are not enough, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"), especially where plaintiffs admit they received the Loan Documents.  (SAC ¶¶ 2-3.)

Plaintiffs also ignore *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 132-33 n.7 (2007), which holds that if a statute does not require disclosure, there can

1  be no corresponding duty for fraudulent concealment purposes.  As discussed above, TILA does

2  not mandate the *additional* disclosures plaintiffs seek, and thus will not support their fraudulent

3  omissions claim.  It must be dismissed.

4  **B.    The UCL Claim Is Not Pled with the Specificity Required by Rule 9(b).**

5  Controlling law requires plaintiffs' UCL claim to meet the requirements of Rule 9(b).

6  Plaintiffs' opposition completely ignores *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th

7  Cir. 2003), and Bank of America's demonstration that the entire UCL claim is predicated on an

8  alleged uniform course of *affirmative misrepresentations.*  (*See* Mem. 19-20; Opp'n 21:4-5

9  (grounding UCL claim in notion that Bank of America "presented the loans as low, fixed payment

10  loans with no negative amortization").)  Instead, plaintiffs emit a smoke screen based on two

11  points.  Neither is convincing.  First, plaintiffs suggest that allegations of fraudulent omission need

12  not satisfy Rule 9(b).  But, their own authorities reveal that this is incorrect.[8]  Second, plaintiffs

13  discuss, at length, the lack of clarity regarding the legal standard for "unfair" business practices in

14  the consumer context, which is completely irrelevant.  *Vess* applies, and the UCL cause of action

15  must be dismissed, as it is devoid of the requisite particularity.

16  **CONCLUSION**

17  For the foregoing reasons, the Court should dismiss plaintiffs' SAC with prejudice.

18  Dated:  April 11, 2008                    MORRISON & FOERSTER LLP

19                                            By:  _____/s/ Michael J. Agoglia_____

20                                                   Michael J. Agoglia

21                                            Attorneys for Defendant
                                              BANK OF AMERICA, NATIONAL ASSOCIATION

22

23

24

25
[8] *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) (Weigel, J.) (concluding that plaintiff find "alternative ways to plead the *particular circumstances* of the fraud") (emphasis added); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (Alsup, J.) (applying Rule 9(b), while explaining, "plaintiffs' fraud by omission claim will not be dismissed *purely for failure to precisely state* the time and place of the fraudulent conduct") (emphasis added); *see also Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (Whyte, J.) (applying Rule 9(b) to UCL claim based on alleged concealment and failure to disclose).

26

27

28

1    I, Wendy M. Garbers, am the ECF User whose ID and password are being used to file this

2  Defendant's Reply in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint.  In

3  compliance with General Order 45, X.B., I hereby attest that Michael J. Agoglia has concurred in

4  this filing.

5    Dated:  April 11, 2008                    By: /s/ Wendy M. Garbers

6                                                      Wendy M. Garbers

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. C-07-04500 RMW (HRL)
sf-2491222