**EXHIBIT A**

Westlaw.

--- F.Supp.2d ----  Page 1
--- F.Supp.2d ----, 2008 WL 867722 (C.D.Cal.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 867722)**

Reyes v. Downey Savings and Loan Ass'n, F.A.
C.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
Alfredo REYES, Angelica Reyes, on behalf of themselves and others similarly situated, Plaintiffs,
v.
DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.; Downey Financial Corporation; and Does 1 through 100, inclusive, Defendants.
**No. SACV 07-0615-AG (CTx).**

March 29, 2008.

**Background:** Mortgagors brought action against mortgagee and others, alleging breach of contract, breach of implied covenant of good faith and fair treatment, and violation of California Unfair Competition Law, and seeking damages and rescission of the mortgage loan. Defendants moved to dismiss.

**Holdings:** The District Court, Guilford, District Judge, held that:
(1) claim alleging that mortgagee violated the California Unfair Competition Law by promising a lower interest rate than was delivered, misrepresenting the loan terms, and breaching the loan contract, was not preempted by the Home Owners' Loan Act (HOLA);
(2) state claim predicated on alleged violations of the federal Truth in Lending Act (TILA) was preempted; and
(3) allegations stated claims for breach of contract and breach of implied covenant of good faith and fair dealing under California law.

Motion granted in part, and denied in part.

**[1] Federal Civil Procedure 170A** 🔑0

170A Federal Civil Procedure
Under the notice pleading system, detailed evidentiary facts are not required to be included in the complaint, and there is no distinction drawn between the pleading of facts, ultimate facts, or even conclusions of law. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[2] States 360** 🔑0

360 States
Preemption of a state law may be either express or implied.

**[3] States 360** 🔑0

360 States
Absent explicit preemptive language, Congress' intent to supersede state law altogether may be inferred because the scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.

**[4] States 360** 🔑0

360 States
Generally, preemption analysis begins with a presumption against preemption.

**[5] States 360** 🔑0

360 States
When a state seeks to regulate an area of the law that has had a significant federal presence, the general presumption against preemption is not triggered.

**[6] Banks and Banking 52** 🔑0

52 Banks and Banking

**States 360** 🔑0

360 States
No presumption against preemption arises when a state law regulates the banking industry.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2008 WL 867722 (C.D.Cal.)  
**(Cite as: --- F.Supp.2d ----, 2008 WL 867722)**

Page 2

**[7]** Banks and Banking 52 0

52 Banks and Banking

States 360 0

360 States
Where a regulation promulgated by a federal agency is argued to preempt state law in the area of banking, resolution depends on: (1) whether the agency had the authority to preempt state law, and (2) whether the agency intended to preempt the state law.

**[8]** Banks and Banking 52 0

52 Banks and Banking

States 360 0

360 States
Any state law that purports to regulate a federal savings and loans' lending activities in the way described by the Office of Thrift and Supervision, which promulgated regulations governing federal savings and loans, pursuant to plenary authority granted by the Home Owners' Loan Act (HOLA), is expressly preempted. 12 U.S.C.A. § 1464; 12 C.F.R. § 560.2.

**[9]** States 360 0

360 States
When plaintiffs rely upon state laws of specific application to savings and loans activity, their claims are preempted by the Home Owners' Loan Act (HOLA). 12 U.S.C.A. § 1464.

**[10]** States 360 0

360 States
When plaintiffs rely on state laws of general application to federal savings and loans, but their claims are based on federal laws, the Home Owners' Loan Act (HOLA) preempts the plaintiffs' claims. 12 U.S.C.A. § 1464.

**[11]** Banks and Banking 52 0

52 Banks and Banking

States 360 0

360 States
When plaintiffs rely on state laws of general application to federal savings and loans, their claims are preempted by the Home Owners' Loan Act (HOLA) if the state laws, as applied to federal savings and loans, require affirmative action by the federal savings and loans association or other behavior specific to savings and loans activity. 12 U.S.C.A. § 1464.

**[12]** Banks and Banking 52 0

52 Banks and Banking

States 360 0

360 States
When plaintiffs rely on a state law of general application to federal savings and loans, and the application of the law does not purport to specifically regulate lending activity, the state law claim is not preempted by the Home Owners' Loan Act (HOLA). 12 U.S.C.A. § 1464.

**[13]** Banks and Banking 52 0

52 Banks and Banking

States 360 0

360 States
Just as a state law against battery will not be preempted by the Home Owners' Loan Act (HOLA), merely because the batterer works for a federal savings and loan, so a state law against breach of contract will not be preempted by HOLA just because the contract relates to loan activity. 12 U.S.C.A. § 1464.

**[14]** Banks and Banking 52 0

52 Banks and Banking

States 360 0

360 States

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2008 WL 867722 (C.D.Cal.)  
**(Cite as: --- F.Supp.2d ----, 2008 WL 867722)**

Page 3

Mortgagors' claim against mortgagee, alleging that mortgagee violated the California Unfair Competition Law by promising them a lower interest rate than was delivered, misrepresenting the loan terms, and breaching the loan contract, was not preempted by the Home Owners' Loan Act (HOLA), where claim was allegedly based on general principles of contract law, rather than on claims of deficient loan-related advertising. 12 U.S.C.A. § 1464; West's Ann.Cal.Bus. & Prof.Code § 17200.

**[15]** Banks and Banking 52 ⚷ 0

52 Banks and Banking

 States 360 ⚷ 0

360 States  
Mortgagors' claim for relief under the California Unfair Competition Law (UCL), which was predicated on alleged violations of the federal Truth in Lending Act (TILA) by federal savings and loan, was preempted by the Home Owners' Loan Act (HOLA); the UCL provided for a four-year limitations period, while TILA provided only for a one-year limitations period, and the procedural difference amounted to state regulation of federal savings and loans, since it altered rules controlling how they operated. 12 U.S.C.A. § 1464; Truth in Lending Act, § 102 et seq., 15 U.S.C.A. § 1601 et seq.; West's Ann.Cal.Bus. & Prof.Code § 17200.

**[16]** States 360 ⚷ 0

360 States  
States may not avoid preemption by adopting federal laws and adding supplemental state remedies.

**[17]** Contracts 95 ⚷ 0

95 Contracts  
Allegations by mortgagors that their mortgage loan contract stated "I will pay principal and interest by making a payment every month," that such provision could easily be understood to mean that, if mortgagors made payments every month, their payments would be applied to both principal and interest, that mortgagors understood the contract that way, and that mortgagee failed to apply their monthly payments to satisfy both the principal and the interest, stated claims against mortgagee for breach of contract and breach of implied covenant of good faith and fair dealing under California law.

Paul R. Kiesel, Patrick DeBlase, Michael C. Eyerly, Kiesel Boucher Larson LLP, Beverly Hills, CA, Jeffrey K. Berns, Law Offices of Jeffrey K. Berns, Tarzana, CA, for Plaintiffs.  
Matthew A. Hodel, Michael S. Leboff, Hodel Briggs Winter, Irvine, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

ANDREW J. GUILFORD, District Judge.  
***1** Before the Court is Defendants' Motion to Dismiss the Second Through Sixth Causes of Action in Plaintiffs' First Amended Complaint for Failure to State a Claim ("Motion"). Some of the important issues addressed in this Motion are simply not best resolved through a motion to dismiss and the standards applicable to such motions. After considering the moving, opposing, and reply papers, and oral argument by the parties, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion.

*BACKGROUND*

The following facts are taken from Plaintiffs' First Amended Complaint ("Complaint"), and for the purposes of this Motion, the Court assumes them to be true. Plaintiffs were consumers who applied for a primary residence mortgage loan through Defendants. (Complaint 5:7-8.) Defendants sold Option ARM home loans to Plaintiffs. (Complaint 4:10-11.) In selling these home loans, Defendants promised a low, fixed, interest rate, and Plaintiffs relied upon that promise. (Complaint 4:12-15.) In reality, the interest rate increased almost immediately after the signing. (Complaint 5:5-6.)

Defendants further informed Plaintiffs that their monthly payments would be applied to both principal and interest owed on the loans. (Complaint 26:3-6.) Defendants breached that agreement. Further, Defendants informed Plaintiffs that if they made payments based on the promised low interest rate, no negative amortization would occur. (Complaint 5:18-21.) This was not true, and Plaintiffs experienced

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

negative amortization on their home loans. Finally, Plaintiffs could not escape from the loans, because of harsh exit penalties. (Complaint 6:23-25.) Plaintiffs have brought this civil action seeking compensatory, consequential, statutory, and punitive damages, and equitable relief, including rescission of the loan contract. (Complaint 3:26-28.) Defendants have moved to dismiss all but one of the claims for relief in the Complaint.

*LEGAL STANDARD*

Under the Federal Rules of Civil Procedure, Rule 12(b)(6) ("Rule 12(b)(6)"), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. In a Rule 12(b)(6) motion, the Court will construe the complaint liberally, and dismissal should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Balistreri v. Pacific Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support such a theory). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westland Water Dist. v. Firebaugh Canal,* 10 F.3d 667, 670 (9th Cir.1993); *Balistreri,* 901 F.2d at 699.

**\*2**[1] The requirement to liberally construe a complaint complements the "notice pleading" of the Federal Rules. See Fed.R.Civ.P. 8(a). Under the notice pleading system, detailed evidentiary facts are not required to be included in the complaint, and there is no distinction drawn between the pleading of facts, ultimate facts, or even conclusions of law. *See Jackson v. Marion County,* 66 F.3d 151, 153 (7th Cir.1995). It thus falls upon "summary judgment and control of discovery to weed out unmeritorious clams...."*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168-69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

*ANALYSIS*

**1. THIRD CLAIM FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW FOR "UNFAIR" AND "FRAUDULENT" BUSINESS PRACTICES**

Plaintiffs bring a claim under the California Unfair Competition Law ("UCL") alleging that Defendants engaged in "unfair" and "fraudulent" business practices. The relevant sections of the UCL provide relief for "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."Cal. Bus. & Prof.Code § 17200. Defendants argue that the UCL, as applied in this case to the lending operations of a federally chartered savings association, is preempted by the federal Home Owners' Loan Act ("HOLA"). Plaintiffs counter that HOLA only preempts state laws that have a more than incidental effect on federal savings associations' lending operations, and that the UCL, as applied here, does not have a large enough effect on lending to be preempted. The Court agrees.

**1.1 Preemption Overview**

[2][3] Preemption doctrine, which has its roots in the Supremacy Clause, "requires us to examine congressional intent."*Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Preemption may be either express or implied. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). Absent explicit preemptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" or because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."*Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

[4][5][6][7] Generally, preemption analysis begins with a presumption against preemption. However, when a state seeks to regulate an area of the law "that has had a significant federal presence, the presumption against preemption is not triggered."*Silvas v. E\*Trade Mortgage Corp.,* 421 F.Supp.2d 1315, 1318 (S.D.Cal.2006) (citing *United States v. Locke,* 529 U.S. 89, 108, 120 S.Ct. 1135,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 867722 (C.D.Cal.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 867722)**

Page 5

146 L.Ed.2d 69 (2000)). For example, no presumption against preemption arises when a state law regulates the banking industry.*Id.* In this case, where a regulation promulgated by a federal agency is argued to preempt state law in the area of banking, resolution depends on: (1) whether the agency had the authority to preempt state law; and (2) whether the agency intended to preempt the state law. *Fidelity,* 458 U.S. at 154.

**1.2 Authority of the Office of Thrift Supervision to Regulate Federal Savings Associations and to Preempt State Law**

**\*3** Congress enacted HOLA in the 1930s as a "radical and comprehensive response to the inadequacies of the existing state [home mortgage] systems."H.R. Conf. Rep. No. 210, 73d Cong., 1st Sess., 1 (1933); *Conference of Federal Sav. & Loan Assns. v. Stein,* 604 F.2d 1256, 1257 (9th Cir.1979). In enacting HOLA, Congress gave the organization now known as the Office of Thrift Supervision ("OTS") plenary authority to issue regulations governing federal savings and loans. 12 U.S.C. § 1464. The expansive language of this section "expresses no limits on [OTS's] authority to regulate the lending practices of federal savings and loans."*Fidelity,* 458 U.S. at 161. The statutory language "suggests that Congress expressly contemplated, and approved, the Board's promulgation of regulations superseding state law."*Id.* The resulting regulations have no less preemptive effect than federal statutes.*Fidelity,* 458 U.S. at 153.

[8] In 1996, OTS issued 12 C.F.R. § 560.2 (" § 560.2"), which expressly provides for federal preemption of state law "purporting to regulate" federal savings associations. OTS's promulgation of this regulation did not exceed the authority Congress delegated to it under HOLA. *American Bankers Ass'n v. Lockyer,* 239 F.Supp.2d 1000, 1011-12 (E.D.Cal.2002). Thus, any state law that purports to regulate a federal savings and loans' lending activities in the way described by OTS is expressly preempted. *E\*Trade,* 421 F.Supp.2d at 1319.

**1.3 Intent of OTS to Preempt State Law**

Section 560.2 provides examples of specific types of states laws that OTS intended to preempt. It lists these laws in categories, including "[l]oan-related fees," "[e]scrow accounts," and "[d]isbursements and repayments." § 560.2(b). It then describes state laws that are not preempted. These include contract and commercial law "to the extent that they only incidentally affect the lending operations of Federal savings associations."§ 560.2(c).

[9]Section 560.2 has been analyzed in many federal and state preemption cases. The resulting body of law is complicated, but reveals certain guiding principles. First, when plaintiffs rely upon state laws of specific application to savings and loans activity, their claims are preempted. *See Fidelity,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (holding that HOLA preempted a California law prohibiting due-on-sale clauses); *Bank of America v. City of and County of San Francisco,* 309 F.3d 551 (9th Cir.2002) (holding that HOLA preempted a San Francisco ordinance prohibiting banks from charging ATM fees to non-depositors); *Lopez v. World Savings & Loan Association,* 105 Cal.App.4th 729, 130 Cal.Rptr.2d 42 (2003) (holding that HOLA preempted the UCL when applied to enforce a state law concerning fax fees charged by beneficiaries of mortgages); Preemption of New York Predatory Lending Law, OTS Opinion Letter 2 (January 30, 2003) (holding preempted a New York law "mandating a disclosure at application concerning financial counseling, a pre-closing disclosure which, among other things, warns about possible foreclosure and home loss in the event of default," and other highly specific requirements).

**\*4**[10] Second, when plaintiffs rely on state laws of general application, but their claims are based on federal laws, federal law preempts. *See E\*Trade,* 421 F.Supp.2d 1315, 1317 (holding that HOLA preempted claims under the UCL, because "alleged [Truth in Lending Act] violations serve as the predicate acts supporting both of Plaintiffs' UCL causes of action").

[11] Third, when plaintiffs rely on state laws of general application, their claims are preempted if the state laws, as applied to federal savings and loans, require affirmative action by the federal savings and loans association or other behavior specific to savings and loans activity. The important question in this analysis is how the state law of general application is used. For example, in *Boursiquot v. Citibank,* 323 F.Supp.2d 350 (D.Conn.2004), the plaintiffs

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 867722 (C.D.Cal.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 867722)**

Page 6

complained under Connecticut's version of California's UCL that Citibank withheld excess interest and funds from their escrow account and charged undisclosed finance charges. Plaintiffs hoped to use Connecticut's UCL as a law requiring that "federal savings and loans associations shall not withhold excess interest and shall disclose all finance charges."Connecticut's UCL, as applied in that situation, would have both required affirmative action by the lender and regulated behavior specific to lending activity. Thus, the court held that federal law preempted the application of state law.

Similarly, in *Washington Mutual Bank v. Superior Court,* 95 Cal.App.4th 606, 115 Cal.Rptr.2d 765 (2002) the California Court of Appeal held that HOLA preempted the UCL where the plaintiffs complained of the bank's charging undisclosed finance charges and pre-closing interest on mortgages. In essence, plaintiffs were trying to use the UCL as a law requiring that "federal savings and loans associations shall not charge pre-closing interest on mortgages and shall disclose all finance charges."Again, this would have required affirmative action by the bank and regulated behavior specific to lending activity. Thus, federal law preempted application of the UCL.

[12][13] Finally, when plaintiffs rely on a state law of general application, and the application of the law does not purport to specifically regulate lending activity, the state law is not preempted. For example, in *Gibson v. World Savings & Loan Ass'n.,* 103 Cal.App.4th 1291, 128 Cal.Rptr.2d 19 (2002), the court found that HOLA did not preempt the UCL where plaintiff sought to use the UCL to enforce the "duties of a contracting party to comply with its contractual obligations."*Id.* at 1301, 128 Cal.Rptr.2d 19. Just as a law against battery will not be preempted merely because the batterer works for a federal savings and loan, so a law against breach of contract will not be preempted just because the contract relates to loan activity. *See also Fenning v. Glenfed,* 40 Cal.App.4th 1285, 1298, 47 Cal.Rptr.2d 715 (1995) (holding that a lawsuit for "fraud, negligent misrepresentation" and "unfair and deceptive business practices" does not effectively regulate the operations of a savings association, and is not preempted"); *People* ex. rel. *Sepulveda v. Highland,* 14 Cal.App.4th 1692, 19 Cal.Rptr.2d 555 (1993) (holding that general claims of unfair business practices and fraud were not preempted).

**\*5** This analysis is supported by the plain language of § 560.2. While § 560.2 expresses its intent to "occup[y] the entire field of lending regulation for federal savings associations," it limits this language with its examples of the types of laws to be preempted. § 560.2(a)-(b). For example, under the category of advertising, federal law preempts "laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants."§ 560.2(b)(9). These are examples of very specific laws, narrowly tailored to the lending industry. Further, each law listed requires the affirmative action by the lender of including specific content in its documents.

OTS' own interpretation of § 560.2 agrees. For example, in an opinion letter issued by OTS in 1999, it describes when HOLA should preempt the UCL. California Unfair Competition Act, OTS Opinion Letter P-99-3 (March 10, 1999). The letter explains that HOLA preempts certain applications of the UCL. It opines that laws requiring "a particular form of interest rate disclosure in advertising [federal savings associations'] lending programs" are preempted by federal law. *Id.* at 15, 19 Cal.Rptr.2d 555. Still, the opinion letter distinguishes this preemption decision from others, stating: "[T]he application of the [UCL] in the circumstances you describe seeks to set very particular requirements on [federal savings associations'] lending operations." *Id.* at 13, 19 Cal.Rptr.2d 555. The OTS "wish[ed] to emphasize the extremely limited nature of our preemption determination here."Finally, the letter stated that HOLA "do[es] not preempt the entire [UCL] or its general application to federal savings associations in a manner that only incidentally affects lending and is consistent with the objective of allowing federal savings associations to operate in accordance with uniform standards ."*Id.* at 18, 19 Cal.Rptr.2d 555.

**1.4 Application**

[14] Plaintiffs base their third claim for relief "on the generally applicable duty of any contracting part to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2008 WL 867722 (C.D.Cal.)  
**(Cite as: --- F.Supp.2d ----, 2008 WL 867722)**

Page 7

practices."(Complaint 22:13-15.) Plaintiffs have alleged that Defendants promised to them a lower interest rate than was delivered. They have also alleged that Defendants misrepresented the contract terms and breached the contract. Thus, Plaintiffs are seeking to use the UCL to apply general principles of contract law. The principles of breach of contract and fraud in the inducement are not specific to lending activities. Further, application of these principles would require no affirmative action or type of representation by a lending institution. Thus, HOLA does not preempt this application of the UCL.

Defendants counter that Plaintiffs' allegations are more specifically based on complaints of deficient "loan-related advertising." (Motion 1:14.) If this were so, or if the Complaint sought to apply the UCL to require certain disclosures in loan-related advertising, federal law would preempt. But when reviewing a motion to dismiss, a court must accept as true all factual allegations and draw from them all reasonable inferences favorable to the plaintiff. Plaintiffs have sufficiently alleged that their third claim for relief is based on general principles of contract law. At this motion to dismiss stage, the Court cannot hold that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Such a holding at this stage would present an unfortunate and confusing record on appeal. Thus, the Motion to Dismiss is DENIED as to Plaintiffs' third claim for relief.

**2. SECOND CLAIM FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW PREDICATED ON VIOLATIONS OF TRUTH IN LENDING ACT**

*6[15] Plaintiffs' second claim for relief also arises under the UCL, but is predicated on Defendants' alleged violations of the federal Truth in Lending Act ("TILA"). Defendants argue that the UCL claims based on TILA are preempted by HOLA. The Court agrees.

[16] As discussed, in *Silvas v. E*Trade Mortgage Corp.* the Southern District of California explicitly held that HOLA preempted claims under the UCL if the UCL claims were predicated on TILA. *E*Trade,* 421 F.Supp.2d 1315. The court reasoned that "when federal law preempts a field, it does not leave room for the states to supplement it."*Id.* at 1319 (citing *Rice v. Santa Fe Elev. Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). States may not avoid preemption by adopting federal laws and adding supplemental remedies. *See Public Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACOR, Inc.,* 379 F.3d 641, 648-49 (9th Cir.2004). It becomes clear that states are adding supplemental remedies "if there are procedural differences between the state law and the federal law."*E*Trade,* 421 F.Supp.2d at 1320. In this case, there are such procedural differences. While TILA only provides for a one-year statute of limitations period, the UCL provides for a four-year statute of limitations period. *Id.* This procedural difference amounts to state regulation of savings associations since it alters the rules controlling how the associations operate. Plaintiffs' use of the UCL as predicated on TILA is preempted. The Motion to Dismiss is GRANTED as to Plaintiffs' second claim for relief without leave to amend.

**3. SIXTH CLAIM FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW PREDICATED ON VIOLATIONS OF CALIFORNIA FINANCIAL CODE § 22302**

Plaintiffs allege that Defendants engaged in unfair competition within the meaning of the UCL by violating California Financial Code § 22302 (" § 22302").Section 22302 provides specifically that "[a] loan found to be unconscionable ... shall be deemed to be in violation of this division and subject to the remedies specified in this division."Section 22302 draws its definition of "unconscionable" from California Civil Code § 1670.5.

Defendants argue that "because this UCL claim is based on a section of the California Financial Code applicable only to consumer loans, it is clearly preempted."(Motion 21:7-8.) Plaintiffs respond that the principles of unconscionability are "steeped in basic contract law." (Opposition 14:16-17.) They explain that their claim "seek[s] merely to enforce *general commercial obligations to refrain from misrepresentation and violation of contractual duties.*" (*Id.* at 17:1-2 (emphasis in original).)

The Court agrees with Defendants. If Plaintiffs' claim is based solely on general commercial obligations, it should not rest on a state law that explicitly targets

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 867722 (C.D.Cal.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 867722)**

Page 8

loans. "Any state law that purports to regulate a federal savings and loans' lending activities ... is expressly preempted." *E*Trade,* 421 F.Supp.2d at 1319. This state law targets loaning institutions equally as explicitly as the laws in *Fidelity,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664,*Bank of America,* 309 F.3d 551, and *Lopez v. World Savings & Loan Association,* 105 Cal.App.4th 729, 130 Cal.Rptr.2d 42, all of which were held preempted. *See also In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation,* 491 F.3d 638, 644 (7th Cir.2007) (stating that "common law" claims are not preempted, while claims based on "regulatory" state law are). Plaintiffs' UCL claim predicated on § 22302 is preempted. Defendants' Motion to Dismiss as to Plaintiffs' sixth claim for relief is GRANTED without leave to amend.

### 4. FOURTH AND FIFTH CLAIMS FOR BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**\*7** Plaintiffs bring common law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Defendants move to dismiss, arguing that the express terms of the signed contract provide for the exact behavior of the Defendants. (Motion 21:20-21.) Defendants argue that Plaintiffs have not alleged any breach of the contract as written. The Court disagrees. It does not "appear beyond doubt" that Plaintiffs can prove no set of facts to support their claims.

[17] For example, Plaintiffs demonstrate that the loan contract states, "I will pay Principal and interest by making a payment every month."(Complaint 24:15-16.) This could easily be understood to mean that, if Plaintiffs made payments every month, their payments would be applied to both principal and interest. Plaintiffs have alleged that they were led to understand the contract in that way, and that Defendants breached that contract. Thus, Plaintiffs have sufficiently alleged that the terms of the contract were ambiguous.

Accordingly, the Motion to Dismiss is DENIED as to Plaintiffs' fourth and fifth claims for relief.

### *DISPOSITION*

Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

C.D.Cal.,2008.
Reyes v. Downey Savings and Loan Ass'n, F.A.
--- F.Supp.2d ----, 2008 WL 867722 (C.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.