**E-FILED on**   3/15/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRIAN O'DONNELL; MICHAEL VAN BELLEGHEM; and PATRICIA VAN BELLEGHEM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION a.k.a. BANK OF AMERICA, N.A.; and DOES 1 through 10 inclusive,<br><br>Defendants. | No. C-07-04500 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' STATE LAW CLAIMS IN THIRD AMENDED COMPLAINT<br><br>**[Re Docket No. 58]** |

Defendant Bank of America, National Association ("Bank of America") moves to dismiss the state law claims asserted in plaintiffs' Third Amended Complaint. For the reasons set forth below, the court grants the motion to dismiss.

## I. BACKGROUND

The court previously dismissed plaintiffs' state law claims for breach of contract, fraudulent omissions, and unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") except to the extent that the UCL claim was based on a violation of the Truth in Lending Act ("TILA") as a predicate offense. The court granted leave to amend, and plaintiffs filed a Third

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' STATE
LAW CLAIMS IN THIRD AMENDED COMPLAINT—C-07-04500

Amended Complaint ("TAC"), which in large part merely repeats their previous claims.  Defendant Bank of America now moves to dismiss the state law claims in the TAC.  In addition to the arguments made previously, Bank of America asserts that plaintiffs' state tort claims are preempted by the National Bank Act, 12 U.S.C. § 21 et seq. ("NBA"), and its implementing regulations promulgated by the Office of the Comptroller of the Currency ("OCC").

## II.  ANALYSIS

### A.  Breach of Contract

Plaintiffs' fourth cause of action for breach of contract in the TAC essentially alleges, as did the Second Amended Complaint ("SAC"), that Bank of America breached its agreements by failing "to apply Plaintiffs' . . . monthly payments to both principal and interest on a fully-amortizing basis." TAC ¶ 98.  The court previously rejected this claim, finding that the loan documents attached to the complaint were not reasonably susceptible to the interpretation that plaintiffs sought to ascribe to them.  March 20, 2009 Order at 18.  Specifically, the court rejected plaintiffs' argument that the statement in the note that "I will pay principal and interest by making payments every month" could be read as a promise by Bank of America to apply plaintiffs' monthly payments to principal and interest even if the payments were equal to, or less than, that required to cover the interest due for those months.  *Id.*  As pointed out by the court, just a few lines below the sentence on which plaintiffs rely, the note advises that "[e]ach monthly payment will be applied as of its scheduled due date and will be applied first to current interest, then to prior unpaid interest, and the remainder to Principal." *Id.*  Accordingly, the court held that "there can be no breach of contract claim." *Id.*

The court again concludes for the same reasons as before that plaintiffs fail to state a breach of contract claim on the theory that Bank of America failed to apply plaintiffs' monthly payments to both principal and interest on a fully-amortizing basis.  Other courts dealing with similar provisions have reached the same conclusion.  *See, e.g., Plascencia v. Lending 1st Mortg.*, 583 F.Supp 2d. 1090, 1100-01 (N.D. Cal. 2008); *Amparan v. Plaza Home Mortg., Inc.,* 2008 WL 5245497, at *13 (N.D. Cal. Dec. 17, 2008).

United States District Court
For the Northern District of California

Plaintiffs also allege that defendants breached the loan agreements because they "switched the interest rate charged on the loans to a much higher rate than the one they promised to Plaintiffs and Class Members as a 'yearly rate.' They also demanded payments in amounts that exceeded those permitted by the Notes." TAC ¶ 99.  Although the interest rates that could be charged were arguably not "clearly and conspicuously" set forth as required by TILA, a careful reading of the loan documents reveals that they did explain how interest rates would be charged and payments credited. Nowhere in the parties' loan documents did Bank of America promise that plaintiffs' payments would be sufficient to cover both principal and interest, such that no negative amortization could occur.

Section 1 of the notes signed by the named plaintiffs sets forth the borrower's promise to pay, with the principal amount borrowed for each plaintiff filled in.  O'Donnell's principal amount was $468,000; van Belleghem's principal amount was $300,000.  TAC Exs. 1, 2 § 1.  Section 2 of the notes provides for the initial yearly interest rate for the loan and states that "[t]he interest rate I will pay will change in accordance with Section 4 of this Note."  *Id.* at § 2.  The interest rate specified for O'Donnell in Section 2 was 1%; the interest rate specified for van Belleghem was 1.125%. *Id.*

Section 3 of the notes sets forth the borrower's payments.  The borrower promises, "I will pay principal and interest by making a payment every month."  Section 3 specifies the amount of the initial monthly payments, stating immediately thereafter "[t]his amount may change," and also sets forth the date on which the borrower is to start making the payments.  It provides that "[t]he Note holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note."  *Id.* at § 3(C).

Section 4 of the notes is titled "Interest Rate and Monthly Payment Changes" and sets forth the parameters for the interest rate to change and for the changes to the monthly payment.  This section states that the interest rate the borrower will pay under the note "may change" on the "Rate Change Date."  The "Rate Change Date" is defined as "each date on which my interest rate could change."  *Id.* at § 4(A).  For both O'Donnell and van Belleghem, the first Rate Change Date is a little over a month after the date of the note, and subsequent Rate Change Dates are "on the first date of

every month thereafter." *See id.* (O'Donnell: Note Date of 6/8/05, first Rate Change Date of 8/1/05; van Belleghem: Note Date of 5/25/06, first Rate Change Date of 7/1/06).

Section 4 next states that on the first Rate Change Date, "my adjustable rate will be based on an Index" and defines the Index as equal to the LIBOR Annual Monthly Average. It then sets forth that before each Rate Change Date, the interest rate will be recalculated by adding a specified percentage to the Index. *See id.* at § 4(C) (O'Donnell: 2.125%; van Belleghem: 2.250%). The loans are subject to an interest rate limit. *See id.* at § 4(D) (O'Donnell: "My interest rate will never be greater than 9.950%"; van Belleghem: "My interest rate will never be greater than 10.075%"). In addition, Section 4 provides for a "Payment Change Date" which occurs annually. *Id.* at § 4(E). Except as set forth in § 4(G), the monthly payment that the borrower must make will not increase or decrease by more than 7.5% from the prior payment amount. This constitutes an "Annual Payment Cap." *Id.* Section 4(F), which is captioned "Principal Balance Adjustment—Deferred Interest (Negative Amortization)," warns: "If my monthly payment is less than the amount necessary to pay the full amount of interest for that month, the portion of interest that is unpaid will be added to the principal balance of my loan as of the due date for such payment and will accrue interest at the rate in effect from time to time in accordance with this Note." The Annual Payment Cap remains in effect until the first "Reamortization Date," which is a payment due date on which the principal balance on the loan increases to an amount that equals or exceeds 115% of the original principal balance. *Id.* at § 4(G). When the Reamortization Date occurs, the Annual Payment Cap no longer applies, and the payments due may jump dramatically. Section 4(G) states:

> I understand that the changes in the interest rate that occur during the final five years of my loan term may make my monthly payments insufficient to pay off my loan over the remaining term in equal installments unless I elect to make fully amortizing payments during that period, as provided in Section 4(H) below. As agreed in Section 3(A) above, I will pay off all amounts still owing under this Note on or before the Maturity Date even if this requires a substantially higher payment on the Maturity Date than the immediately preceding payment amounts. Lender is under no obligation to refinance the loan at that time. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender . . . willing to lend me money.

*Id.*

Finally in Section 4(H), the notes set forth three "Payment Options":

> I will have up to three monthly payment options for my loan. I may always make the monthly payment required under Sections 3(B), 4 (E) or 4(G), as applicable ('the required payment'). If the Required Payment is insufficient to fully amortize my loan as a result of the application of the Annual Payment Cap or principal balance adjustments, I will have the option to make a fully amortizing payment, which is an amount sufficient to pay off my loan in substantially equal payments over its remaining term at its then interest rate. If the Required Payment is not sufficient to pay all of the interest owed for that month, which would result in negative amortization, I also will have the option to make an interest-only payment, which will be sufficient to pay the monthly interest and avoid negative amortization, but will not reduce the principal balance. Even if these options are available, I may still elect to make only the Required Payment.

*Id.* at § 4(H).

Per Section 5, plaintiffs are allowed to prepay their loans without paying any prepayment penalty. *Id.* at § 5.

The Truth in Lending Disclosure Statement ("TILDS") provided to each plaintiff sets forth the annual percentage rate ("APR") for the loan ("[t]he cost of your credit as a yearly rate"), the amount financed ("[t]he amount of credit provided to you or on your behalf"), the finance charge ("[t]he dollar amount that the credit will cost you"), and the total of payments ("[t]he amount you will have paid after you have made all payments as scheduled"). TAC Ex. 1 at 7, Ex. 2 at 12. The disclosure also sets forth the payment schedule for the loan. *Id.* The payment schedule shows payments increasing annually. The disclosure also specifies for both O'Donnell and van Belleghem that the loan has a variable rate feature and that there is no prepayment penalty if the loan is repaid early. *Id.*

Since plaintiffs do not assert a viable claim that Bank of America failed to comply with the terms of the notes, the breach of contract claim is dismissed without leave to amend. Plaintiffs have had several opportunities to amend their breach of contract claim, and it seems clear they cannot do so.

**B.     Unfair Competition and Fraudulent Omissions Claims**

Plaintiffs' second cause of action for alleged fraudulent omissions and their third claim for violation of the UCL are preempted by the NBA and the regulations of the Office of the Comptroller of Currency ("OCC"). Congress has specifically authorized national banks to make, arrange, and deal in loans secured by interests in real estate. "Any national banking association may make,

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' STATE
LAW CLAIMS IN THIRD AMENDED COMPLAINT—C-07-04500
5

arrange, purchase or sell loans or extensions of credit secured by liens on interests on real estate, subject to . . . such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order." 12 U.S.C. § 371 ("Section 371"). The OCC has specifically authorized national banks to make, arrange, and deal in adjustable rate mortgage ("ARM") loans secured by interests in real estate, without interference from state law. *See* 12 C.F.R. § 34.21(a) ("A national bank and its subsidiaries may make, sell, purchase, participate in, or otherwise deal in ARM loans and interests therein without regard to any State law limitations on those activities."). Pursuant to OCC regulation, a national bank may make real estate loans without regard to state law limitations concerning:

> (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments . . . .
>
> * * *
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit related application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
>
> * * *
>
> (12) Rates of interest on loans.

12 C.F.R. § 34.4(a).

Plaintiffs seek through their fraud and unfair competition claims to regulate Bank of America's disclosures for its ARM loans and to require it to make additional disclosures about negative amortization, applicable interest rates, and payment schedules. All of plaintiffs' claims are essentially predicated on the allegation that Bank of America did not adequately disclose the "actual" interest rate and the certainty of negative amortization. TAC ¶ 1. As plaintiffs state, this case "is based on Defendant's failures to disclose important material facts related to the Option ARM loans Defendant sold to Plaintiffs and all others." Opp'n at 1. The OCC's regulations, however, expressly preempt plaintiffs' ability to use state law to reach Bank of America's "disclosures" about its Option ARM loans and the "amortization of [the Option ARM] loans," including how the amortization and interest rate features are disclosed. *See* 12 C.F.R. §

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' STATE
LAW CLAIMS IN THIRD AMENDED COMPLAINT—C-07-04500
6

34.4(a)(4),(9), (12). Section 34.4(a) compels the conclusion that plaintiffs' fraudulent omissions and UCL claims are preempted. Therefore, plaintiffs' second and third causes of action, which essentially allege that Bank of America sold its Option ARM loans to retail consumers nationwide by failing to adequately disclose the features of the "actual" interest rate and the certainty of negative amortization, are preempted. Other courts have come to a similar conclusion. *See, e.g., Reyes v. Downey Sav. & Loan Ass'n, FA*, 541 F.Supp. 2d 1108, 1111-16 (C.D. Cal. 2008); *Nava v. VirtualBank*, 2008 WL 2873406, at *3-6 (E.D. Cal. July 16, 2008).

This holding does not mean that state laws of general application, such as fraud and UCL claims, are necessarily preempted if applied to a national bank. Rather, a state law is preempted only if it requires affirmative action by a national bank in an area covered by a national bank regulation. For example, a state law would be preempted if it required disclosures regarding the terms of loans different from those prescribed by TILA, or if it mandated that TILA disclosures had to be stated in a particular way in order to be clear and conspicuous. *See Reyes*, 541 F. Supp. 2d at 1116. However, if a loan document provided for a rate of 5% and the bank insisted on collecting 6%, a state law claim for breach of contract would stand. Similarly, if a bank deliberately represented that it would not charge a prepayment penalty for early pay-off of a loan though it intended to charge a prepayment penalty, the NBA would not preempt a state action for deceit. *See, e.g., Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 982 (9th Cir. 2005); *In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1208-10 (S.D. Cal. 2009).

Here, plaintiffs' state law claims for fraudulent omissions and unfair competition are preempted because they seek to impose disclosure obligations other than those mandated by TILA. As stated in *Silvas v. E*Trade Mortg. Corp.*, in which the court reviewed the preemptive effect of a regulation governing federal thrifts, "[w]hen analyzing the status of state laws under [the regulation], the first step will be to determine whether the type of law in question is listed in [a provision of the regulation]. If so, the analysis will end there; the law is preempted." 514 F. 3d 1001, 1005 (9th Cir. 2008); *see also Aguayo v. U.S. Bank*, 658 F.Supp. 2d 1226, 1234-35 (S.D.Cal. 2009). Since the court finds that plaintiffs' fraudulent omissions and UCL claims are preempted, it need not reach the question of whether such claims would otherwise be viable under state law.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' STATE LAW CLAIMS IN THIRD AMENDED COMPLAINT—C-07-04500

### III. ORDER

Defendant Bank of America's motion to dismiss the state law claims asserted in plaintiffs' Third Amended Complaint is granted.

DATED: 3/15/10

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| David M. Arbogast | darbogast@law111.com |
| Christopher A. Seeger | cseeger@seegerweiss.com |
| Jeffrey K Berns | jberns@law111.com |
| Jonathan Shub | jshub@shublaw.com |
| Michael C Eyerly | eyerly@kbla.com |
| Michael J. Quirk | mquirk@wcblegal.com |
| Patrick DeBlase | deblase@kbla.com |
| Paul R. Kiesel | Kiesel@kbla.com |

**Counsel for Defendants:**

| | |
|---|---|
| Michael John Agoglia | magoglia@mofo.com |
| Wendy M. Garbers | wgarbers@mofo.com |
| Cathleen Ellis Stadecker | cstadecker@mofo.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 3/15/10                                  CCL
                                                    **Chambers of Judge Whyte**